**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| PHILIP R. HUBACEK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ON SEMICONDUCTOR CORPORATION, HASSANE EL-KHOURY, THAD TRENT, and SIMON KEETON,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS**
**OF THE FEDERAL SECURITIES LAWS**

Plaintiff Philip R. Hubacek ("Plaintiff"), by and through his counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of regulatory filings made by ON Semiconductor Corporation ("onsemi" or the "Company") with the United States Securities and Exchange Commission ("SEC"), press releases, presentations, and media reports issued by and disseminated by the Company, analyst and media reports concerning onsemi, and other public information regarding the Company.

I.    **NATURE OF THE ACTION AND OVERVIEW**

1.    This securities class action is brought on behalf of all persons or entities that purchased or otherwise acquired shares of onsemi common stock between May 1, 2023, and October 27, 2023, inclusive (the "Class Period"). The claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5,

promulgated thereunder, and are alleged against onsemi and certain of the Company's senior executives, including Hassane El-Khoury ("El-Khoury") (the Company's President and Chief Executive Officer, and a Company director); Thad Trent ("Trent") (the Company's Executive Vice President, Chief Financial Officer, and Treasurer); and Simon Keeton ("Keeton") (the Company's Executive Vice President and General Manager of the Company's Power Solutions Group) (collectively, and together with onsemi, "Defendants").

2.     Headquartered in Scottsdale, Arizona, onsemi manufactures and sells semiconductor components for various electronic devices worldwide, including power and sensing solutions, and technologies for the electrification of the automotive industry.  Critical to the Company's long-term growth and success is its strategy to focus on the development, manufacture, and sale of a variety of products incorporating silicon carbide ("SiC").  A substantial portion of onsemi's SiC products are necessary components of a number of systems used in the production of electric vehicles ("EVs").  This matter arises from Defendants' repeated misrepresentations to investors regarding the "stability" and "visibility" of the demand for onsemi's SiC and other products, and the sustainability of onsemi's revenue growth, by overstating the impact of the Company's long-term supply agreements ("LTSAs") on the achievability of its revenue streams.

3.     The Class Period begins on May 1, 2023, to coincide with onsemi's release of its first quarter 2023 earnings and accompanying investor earnings call with equity analysts.  During that call, Defendants spoke extensively on the growth of onsemi's SiC business, and Defendant El-Khoury touted the fact that the Company has "more and more confidence" in its claim that it would reach $1 billion in annual revenue for its SiC products in 2023.  Specifically, Defendant El-Khoury explained that the Company's outlook was "actually very, very predictable," which was

"the benefit that we've been talking about with the LTSAs that have us really, with our customers, align on pricing and volume through the duration of the LTSAs."

4.      Two weeks later, at the Company's Financial Analyst Day held on May 16, 2023, Defendants presented an even more bullish picture of the Company's prospects—particularly in SiC products for the EV industry.  For example, Defendants touted that the Company had over $17 billion of LTSAs, $9 billion of which were for SiC products.  Discussing the significance of the LTSAs and directly addressing onsemi's SiC products, Defendant Trent emphasized the "really good visibility and tight integration into our customers," and Defendant El-Khoury touted $1 billion in target sales for SiC products in 2023.  Additionally, Defendant El-Khoury emphasized that "[w]e have established a very strong infrastructure and a very strong foundation . . . with the $1 billion in '23 and LTSAs moving forward, and we're going to sustain that."  Defendant El-Khoury further unequivocally stated that, "from the LTSA perspective, our LTSA is . . . multiyear in duration, where both volume and pricing is locked in," effectively guaranteeing that the revenues relating to the LTSAs would be achieved.

5.      Throughout the Class Period, Defendants continued to tout the Company's sales of SiC products, particularly to EV manufacturers.  Defendant El-Khoury lauded the Company's LTSAs for the "extended visibility" and the "very, very clear view of where demand is," aiding Defendants in their ability to effectively manage changing macroeconomic conditions and sustain the Company's revenue growth targets.  Indeed, Defendants consistently disclosed increasing expected revenue figures for every new LTSA the Company had signed with customers and assured investors that the LTSAs built "a more strategic relationship and partnership" with the Company's customers.  Thus, Defendant El-Khoury told investors that, if onsemi's customers

"have . . . softness in their market and they have an LTSA, we're going to get the call 6 months in advance."

6.      Notwithstanding Defendants' assurances, on October 30, 2023, before the market opened, investors began to learn the truth about the purported benefits of the Company's LTSA strategy and the achievability of projected revenue from the Company's products subject to LTSAs, when onsemi announced its third quarter 2023 financial results.  During the investor earnings call held that day, Defendant El-Khoury disclosed to investors that the Company was "taking a very cautious approach" with its SiC products due to signs of a weakening demand in the Company's automotive business segment (which generates between 75% and 90% of the Company's SiC revenues), while also revealing that the Company would miss its $1 billion 2023 SiC revenue target by approximately $200 million.  Defendant El-Khoury claimed that the approximately 20% reduction in the Company's expected SiC revenue was solely attributable to one customer (identified by many analysts as Tesla, Inc.).  Defendant Trent added, however, that the Company expects "greater sequential declines in industrial and other end markets" as well.

7.      On this news, the price of onsemi common stock plummeted $18.18 per share, or nearly 22%, from a close of $83.52 per share on October 27, 2023, to close at $65.34 per share on October 30, 2023.

8.      The class was significantly harmed as a result of Defendants' false and misleading statements and material omissions.  During the Class Period, onsemi's market capitalization value reached a high of $46.6 billion on August 1, 2023, before falling to $28.2 billion on October 30, 2023.

## II.    <u>JURISDICTION AND VENUE</u>

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because onsemi is incorporated in this District.

11.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.    <u>PARTIES</u>

12.     As indicated in the certification submitted herewith, Plaintiff Philip R. Hubacek purchased shares of onsemi common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

13.     Defendant onsemi manufactures and sells semiconductor components for various electronic devices worldwide.  Incorporated in Delaware, onsemi maintains its corporate headquarters in Scottsdale, Arizona.  onsemi's common stock trades on The Nasdaq Stock Market under the ticker symbol "ON."

14.     Defendant El-Khoury is the President, Chief Executive Officer, and a director of onsemi.

15.     Defendant Trent is the Executive Vice President, Chief Financial Officer, and Treasurer of onsemi.

16.     Defendant Keeton is the Executive Vice President and General Manager of the Power Solutions Group of onsemi.

17.     Defendants El-Khoury, Trent, and Keeton are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with onsemi, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the Company's reports, presentations, and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

IV.     **SUBSTANTIVE ALLEGATIONS**

   A.     **Background**

18.     onsemi manufactures and sells semiconductor components for various electronic devices worldwide and serves original equipment manufacturers ("OEMs"), distributors, and electronic manufacturing service providers.

19.     onsemi operates in three segments: Power Solutions Group ("PSG"), Advanced Solutions Group ("ASG"), and Intelligent Sensing Group ("ISG").

20.     The PSG segment offers semiconductor products for several applications, such as power switching, power conversion, signal conditioning, circuit protection, signal amplification, and voltage regulation functions.  Many of onsemi's PSG customers are in the automotive industry, and the EV sector in particular.

21.     The ASG segment designs and develops analog, mixed-signal, advanced logic, Wi-Fi, and other products for the electric power industry.

22.     The ISG segment offers metal oxide semiconductors image sensors; proximity sensors; image signal processors; radars; and actuator drivers for autofocus and image stabilization for a range of customers in automotive, industrial, medical, aerospace/defense, communications, networking, wireless, consumer, and computing markets.

23.     On October 28, 2021, prior to the start of the Class Period, onsemi acquired GT Advanced Technologies Inc. ("GTAT")—an SiC producer.  GTAT had significant experience in crystalline growth, including SiC.  SiC is a key material for semiconductors that provide technical benefits in SiC power switching devices, significantly improving system efficiency in EVs, EV charging, and energy infrastructure.

**B.     Defendants' False and Misleading Statements**

24.     The Class Period begins on May 1, 2023, to coincide with onsemi's release of its first quarter 2023 earnings and accompanying investor earnings call.  During that call, Defendant El-Khoury spoke extensively on the growth of onsemi's SiC business and touted the fact that the Company has "more and more confidence" in its claim that the Company would reach $1 billion in annual revenue for its SiC products in 2023.  Specifically, Defendant El-Khoury explained that the Company's outlook was "actually very, very predictable," which was "the benefit that we've been talking about with the LTSAs that have us really, with our customers, align on pricing and volume through the duration of the LTSAs."

25.     Two weeks later, at the Company's Financial Analyst Day held on May 16, 2023, Defendants El-Khoury, Trent, and Keeton, as well as other onsemi management, presented on, among other things, the Company's products, business plan, and financial performance. Defendant Keeton focused his presentation on the Company's SiC products and discussed the

Company's "confiden[ce] on the path to the first $1 billion in [SiC]."  Specifically, Defendant

Keeton remarked that onsemi has "LTSAs with literally hundreds of devices on a single LTSA for

a single customer" and that "[t]he onsemi manufacturing machine is firing on all cylinders."

26.     Moreover, in praising onsemi's "160% annual growth rate for the past 2 years and

this year," Defendant Keeton noted that the Company's "extremely high growth [was] driven by

customer wins and LTSAs with optimized solutions."   In finishing his prepared remarks,

Defendant Keeton stated that his presentation was "[a] lot of talk, but actions speak louder than

words and our customer actions prove that we have value with $9 billion of [SiC] LTSAs in

electrification and energy infrastructure" over the next three to five years.

27.     During the presentation, Defendant Trent discussed the Company's recent financial

performance and similarly touted that the Company's LTSAs provide onsemi with "really good

visibility and tight integration into our customers on how do we align with them."  In discussing

onsemi's product mix, Defendant Trent further stated that, "last quarter, 79% of our business was

auto and industrial" and that "over the time horizon, you're looking at auto and industrial being

north of 85% of the total company."

28.     During the question-and-answer portion of the presentation, an analyst with BofA

Securities inquired about the Company's $1 billion SiC target for 2023 and the competitive

landscape for SiC over the next several years, to which Defendant El-Khoury responded by

reassuring investors that the Company's growth is "supported by the LTSAs, which extend through

that period of time" and that "[w]e have established a very strong infrastructure and a very strong

foundation . . . with the $1 billion in '23 and LTSAs moving forward, and we're going to sustain

that."  Defendant El-Khoury further unequivocally stated that "from the LTSA perspective, our

LTSA is . . . multiyear in duration, where both volume and pricing is locked in," effectively guaranteeing that the revenues relating to the LTSAs would be achieved.

29.     Additionally, Defendant El-Khoury rejected the prospect presented by an analyst with Truist Securities, Inc. that onsemi would see any "meaningful correction on the path to 2027," and reassured investors that "we're going to manage very, very tightly agnostic of where we are in up or down years from an industry perspective, we're going to use [SiC inventory] as a tool for our own business as we want to run it and as we see it with the LTSAs, which is a very, very clear view of where demand is."

30.     The following week, on May 23, 2023, Defendants El-Khoury and Trent presented at an industry conference hosted by JPMorgan Chase & Co.  During the presentation, Defendant El-Khoury attributed the Company's "very good position" to "solid LTSA or revenue committed by customer[s]," and claimed that "[o]ur strategy is solid" and "has been stressed with the macro environment, and it's sustainable."  Defendant El-Khoury also reiterated that the current LTSA commitment "is at a $9 billion lifetime revenue for [SiC]."

31.     Defendants' optimism continued throughout the Class Period.  On July 31, 2023, onsemi held its investor earnings call for the second quarter of 2023.  During the call, Defendant El-Khoury praised the Company for "sign[ing] more than $3 billion of new [SiC] LTSAs" and raising the Company's committed SiC revenue to "over $11 billion."  Defendant El-Khoury also continued to tout the benefit of onsemi's LTSAs in providing "extended visibility" and "stability in pricing and volume commitments."

32.     When analysts questioned the strength of the automotive and industrial markets because, according to Defendant El-Khoury, the Company's SiC LTSA mix is "[a]bout 90% [in]

auto, about 10% [in] industrial," Defendant El-Khoury reassured investors that the automotive and industrial markets remain "healthy" and that the "strength in these markets is sustained."

33.     On August 30, 2023, Defendants El-Khoury and Trent attended an industry conference hosted by Deutsche Bank AG.  In response to the host's question about the current demand environment for onsemi's business segments, Defendant El-Khoury emphasized that onsemi "designed our own soft landing" by actively managing the Company's inventory and reducing its manufacturing utilization, making onsemi's yearly outlook "very predictable." Defendant Trent followed-up these comments by declaring that onsemi's automotive and industrial segments are "steady" and "strong."  Critically, Defendant El-Khoury revealed that, even in a softer market, onsemi is "in a much better position with the visibility of our business than a lot of our peers" because, if onsemi's customers "have . . . softness in their market and they have an LTSA, we're going to get the call 6 months in advance."

34.     The following week, on September 7, 2023, Defendants El-Khoury and Trent attended an industry conference hosted by Citigroup Inc.  During the presentation, the host inquired as to why the "downturn is hitting everybody else, why isn't [it] hitting [onsemi]?" Defendant Trent responded that "the LTSA coverage that we have is actually protecting us and we're building the LTSAs."

35.     During the presentation, Defendant El-Khoury similarly highlighted the Company's greater visibility into customer demand than onsemi's competitors, touting that "[w]e pegged it to LTSAs" and that, "given that most of our business is under LTSA, we're getting that visibility."  Defendant El-Khoury further explained the visibility and stability benefits of LTSAs:

> If I get one thing from the LTSA, I'm going to get a phone call, as soon as the customer sees softness.  That's it.  I want a phone call because that's the conversation I want to have.  Historically, backlog disappeared 30 days before I ship it, and you're left holding the bag.

> So [with] the LTSAs, somebody is going to get the bat phone and
> call and say, we got a problem, 6 months, 9 months from now, let's
> have a conversation.  So we'll have the conversation, but it has to be
> a win-win.

36.     The statements set forth above in ¶¶ 24-35 were materially false and misleading and failed to disclose material adverse facts about the Company's business and operations. Specifically, Defendants misrepresented that: (1) revenues from billions of dollars in reported LTSAs were "committed" and "locked in," and were effectively certain to be obtained by the Company when, in fact, the Company could and would abrogate the LTSAs at a customer's request; (2) LTSAs provided "predictable" and "sustainable" performance to drive the Company's growth, even in tough macroeconomic conditions, when, in fact, they would be modified or eliminated as conditions changed; and (3) Defendants had "good visibility" into customer demand when, in fact, demand could be reduced on short notice, even where LTSAs were in effect.  As a result of the foregoing, Defendants' positive statements about onsemi's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

### C.     The Truth Emerges

37.     On October 30, 2023, investors learned the truth about the purported benefits of the Company's LTSA strategy and the achievability of projected revenue from the Company's products subject to LTSAs, when onsemi announced its third quarter 2023 financial results. During the accompanying investor earnings call held that same day, Defendant El-Khoury, in his opening remarks, revealed that onsemi would miss its $1 billion SiC 2023 revenue target by approximately $200 million—roughly 20% of the Company's expected SiC revenue for the year— due to "a single automotive OEM's recent reduction in demand."

38.     Likewise, Defendant Trent disclosed to investors that, despite previous statements that onsemi's LTSAs provided visibility into customer demand and effectively guaranteed revenue

for the Company, it now expected "a mid-single digit decline in automotive given the softness in Europe that [Defendant El-Khoury] described, with greater sequential declines in industrial and other end markets." Defendant Trent explained that the LTSAs were not as "locked in" as the Company had touted because "we are allowing some pushouts as long as there's a win-win for both companies in that situation" and "[w]e don't want to overship natural demand." Defendant El-Khoury further expanded:

> I will comment on the LTSAs. So the LTSAs are legally binding. Therefore, for us to agree or even acknowledge that pushout or even the demand in general, outside of [SiC] Q4, there has to have been, which there is, a win-win for us and the customer. We've always said, if anything, the LTSAs give us a phone call. We get the phone call way ahead of time in certain areas when the customer knows that it's coming. And we're able to manage with the customer for a win-win, whether that win-win is a quarter later or a year later or a longer term that depends on case by case. So we manage it with the customer because what we don't want is, of course, enforce the LTSA at the expense of just shipping inventory if demand is lower. So we take it very cautiously.

39.     Notwithstanding the claim that LTSAs would only be modified in the event of a "win-win," analysts understood that the SiC reduction in its expectations for the fourth quarter revealed the true state of affairs—that LTSAs did not provide the type of "locked[-]in" revenue stream the Company had touted. BofA Securities put it bluntly regarding the basis for the Company's stock valuation: "[b]y guiding down Q4 [onsemi] has created doubts about the durability of its [SiC LTSAs], a key part of the bull thesis." UBS Securities LLC likewise noted that "[t]he bloom is 'off the rose' with respect to [onsemi's] [LTSAs]" and that it was "cutting [their] C2024 [earnings per share]," while Goldman Sachs & Co. LLC concluded that the disclosure "brings into question . . . the viability of LTSAs."

40.     Similarly, analysts with TD Cowen opined that "[w]e think the stock's -22% reaction today is due to . . . an injection of uncertainty in its SiC business which was viewed as

having a clear growth trajectory covered by LTSAs."  Analysts at William Blair & Company, L.L.C. also addressed the disclosure regarding the failure of the LTSAs in detail, noting that:

> **What Happened to LTSAs**?  The management team has been very confident in its LTSA strategy providing visibility and preventing demand surprises.  We have questioned the efficacy of these LTSAs when push comes to shove, because if your customer cannot use the product, it is bad business to make them take it, and even worse business to sue your customer over contract fulfillment.  We have seen "iron-clad" LTSAs fall apart in cyclical downturns . . . . If an LTSA with Tesla is fallible, how should investors interpret the LTSAs with four of the top five Chinese EV players?

Emphasis in original.

41.    On this news, the price of onsemi common stock plummeted $18.18 per share, or nearly 22%, from a close of $83.52 per share on October 27, 2023, to close at $65.34 per share on October 30, 2023.

42.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other members of the Class (as defined below) have suffered significant losses and damages.

## V.    PLAINTIFF'S CLASS ACTION ALLEGATIONS

43.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities that purchased or otherwise acquired the publicly traded common stock of onsemi during the Class Period (the "Class").  Excluded from the Class are Defendants, their agents, directors and officers of onsemi, and their families and affiliates.

44.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

45.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of onsemi common stock;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damage sustained by Class members and the appropriate measure of damages.

46.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

47.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

48.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## VI.     APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

49.     At all relevant times, the market for onsemi common stock was an efficient market for the following reasons, among others:

 (a)     onsemi common stock met the requirements for listing, and was listed and actively traded on The Nasdaq Stock Market, a highly efficient and automated market;

 (b)     As a regulated issuer, onsemi filed periodic public reports with the SEC and Nasdaq;

 (c)     onsemi regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

 (d)     onsemi was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

50.     As a result of the foregoing, the market for onsemi common stock promptly digested current information regarding onsemi from all publicly available sources and reflected such information in the price of onsemi common stock.  Under these circumstances, all purchasers

of onsemi common stock during the Class Period suffered similar injury through their purchase of onsemi common stock at artificially inflated prices and the presumption of reliance applies.

51.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are also grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding onsemi's business operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of revenue from onsemi's LTSAs, that requirement is satisfied here.

## VII.   NO SAFE HARBOR

52.     Defendants' "Safe Harbor" warnings accompanying Defendants' forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of onsemi who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## VIII.   LOSS CAUSATION/ECONOMIC LOSS

53.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of onsemi common stock and operated as a fraud or deceit on the Class.  Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of onsemi common stock fell precipitously as the prior artificial inflation came out of the price over time.  As a result of their purchases of onsemi common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## IX.   SCIENTER ALLEGATIONS

54.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of Company common stock during the Class Period.

## X.   CLAIMS AGAINST DEFENDANTS

### COUNT I

**Violations of Section 10(b) of the Exchange Act and
SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

55.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

56.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase onsemi common stock at artificially inflated prices.

57.     Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for onsemi common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

58.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

59.     During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

60.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal onsemi's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

61.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for onsemi common stock.  Plaintiff and the Class would not have purchased onsemi common stock at the prices they paid, or at all, had they been

aware that the market prices for onsemi common stock had been artificially inflated by Defendants' fraudulent course of conduct.

62.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

63.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## <u>COUNT II</u>

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

64.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

65.     The Individual Defendants acted as controlling persons of onsemi within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about onsemi, the Individual Defendants had the power and ability to control the actions of onsemi and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## XI.   PRAYER FOR RELIEF

66.   **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)   Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)   Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon; and

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees.

## XII.   JURY TRIAL DEMANDED

67.   Plaintiff hereby demands a trial by jury.

Dated: December 13, 2023

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

*Of Counsel:*

*/s/ Gregory V. Varallo*
Gregory V. Varallo (DE Bar ID #2242)
Andrew Blumberg (DE Bar ID #6744)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
greg.varallo@blbglaw.com
andrew.blumberg@blbglaw.com

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Naumon A. Amjed (DE Bar ID #4481)
Ryan T. Degnan
Jonathan Z. Naji
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com
jnaji@ktmc.com

*Counsel for Plaintiff Philip R. Hubacek*

*Counsel for Plaintiff Philip R. Hubacek*

20

## CERTIFICATION

I, Philip R. Hubacek, declare that:

1.      I have reviewed the facts and allegations of the Class Action Complaint for Violations of the Federal Securities Laws and authorize its filing.

2.      I did not purchase and/or acquire the security that is the subject of this action at the direction of my counsel nor in order to participate in any private action under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including giving testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Certification.

4.      My Class Period purchase and sale transaction(s) in ON Semiconductor Corporation securities that are the subject of this action are attached in Schedule A. I have complete authority to bring a suit to recover for investment losses for all securities set forth in Schedule A.

5.      During the three years prior to the date of this Certification, I have not sought to serve nor served as a representative party for a class in an action filed under the federal securities laws.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   12/9/2023

DocuSigned by:

*Philip R. Hubacek*

04773F2A18F04B3...

Philip R. Hubacek

**SCHEDULE A**

| Security | Buy/Sell | Date | Quantity | Price |
|---|---|---|---|---|
| Common Stock | Buy | 9/5/2023 | 13 | $99.62 |
| Common Stock | Sale | 9/14/2023 | 10 | $96.28 |