David B. Rosenbaum (009819)
Joseph N. Roth (025725)
Alexandria N. Karpurk (037029)
OSBORN MALEDON PA
2929 N. Central Ave., Ste. 2000
Phoenix, Arizona 85012
(602) 640-9000
drosenbaum@omlaw.com
jroth@omlaw.com
akarpurk@omlaw.com

Mark R.S. Foster (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
(650) 470-4500
Mark.Foster@skadden.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey S. Lew, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ON Semiconductor Corporation; Hassane El-Khoury; and Thad Trent,<br><br>Defendants. | **CLASS ACTION**<br><br>CASE NO.: 2:24-cv-00594-SMB<br><br>**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Oral Argument Requested |

# **TABLE OF CONTENTS**

Page

Table of Authorities...................................................................................................ii

Table of Abbreviations ............................................................................................. v

I.  PRELIMINARY STATEMENT................................................................. 1

II.  BACKGROUND........................................................................................ 3

III.  PLAINTIFF FAILS TO STATE A SECTION 10(b) CLAIM ................... 5

    A.  Plaintiff Fails to Plead a Materially False or Misleading Statement ......................................................................................... 6

        1.  The challenged statements are not actionable......................... 6

        2.  Plaintiff has not shown that the challenged statements were materially misleading when made................................. 7

            (a)  Plaintiff does not attempt to plead subjective falsity................................................................. 7

            (b)  Plaintiff does not plead any facts showing objective falsity. ....................................................... 7

    B.  Plaintiff Also Fails to Plead Facts Giving Rise to a Strong Inference that Any Defendant Acted with Scienter ...................... 12

        1.  Plaintiff does not satisfy the PSLRA's "actual knowledge" test.................................................................. 13

        2.  The lack of alleged motive undermines any scienter inference................................................................. 13

        3.  Plaintiff fails to allege particularized facts giving rise to any scienter inference ....................................... 13

        4.  onsemi's change to its risk warnings shows no scienter....... 16

        5.  Holistically, Plaintiff's scienter allegations fail.................. 16

IV.  PLAINTIFF FAILS TO STATE A SECTION 20(a) CLAIM.................... 17

V.  THE SAC SHOULD BE DISMISSED WITH PREJUDICE .................... 17

i

## **TABLE OF AUTHORITIES**

### **CASES**

*Berson v. Applied Signal Technology, Inc.*,
  527 F.3d 982 (9th Cir. 2008)..................................................................... 15

*Bodri v. GoPro, Inc.*,
  252 F. Supp. 3d 912 (N.D. Cal. 2017) ............................................... 3, 17

*In re Cisco Systems Inc. Securities Litigation*,
  No. C 11-1568 SBA, 2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) ................... 17

*City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*,
  856 F.3d 605 (9th Cir. 2017)............................................................... 1, 7

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
  No. 18-cv-04844-BLF, 2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ................ 14

*In re Cutera Securities Litigation*,
  610 F.3d 1103 (9th Cir. 2010)........................................................... 3, 13

*Dobson Bay Club II DD, LLC v. La Sonrisa De Siena, LLC*,
  393 P.3d 449 (Ariz. 2017) ..................................................................... 10

*Espy v. J2 Global, Inc.*,
  99 F.4th 527 (9th Cir. 2024) ................................................................. 10

*Kipling v. Flex Ltd.*, No. 18-CV-0,
  2706-LHK, 2020 WL 2793463 (N.D. Cal. May 29, 2020)............................. 6, 9

*In re Lexar Media, Inc. Securities Litigation*,
  No. C–04–2013 SC, 2005 WL 1566534 (N.D. Cal. July 5, 2005) ..................... 17

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008)................................................................... 6

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020)....................................................... 3, 10, 13

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
  575 U.S. 175 (2015) ............................................................................... 7

*Oregon Public Employees Retirement Fund v. Apollo Group Inc.*,
  774 F.3d 598 (9th Cir. 2014)..................................................... 11, 13, 17

*Palm Harbor Special Fire Control & Rescue District Firefighters Pension Plan v. First Solar Inc.*,
  No. CV-22-00036-PHX-MTL, 2023 WL 4161355 (D. Ariz. June 23, 2023) ....... 15

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014)..................................................... 10, 14, 15

*Prodanova v. H.C. Wainwright & Co.*,
    993 F.3d 1097 (9th Cir. 2021) ............................................................... 3, 13, 14

*In re Read-Rite Corp.*,
    335 F.3d 843 (9th Cir. 2003) ................................................................. 7, 8, 9, 10

*Retail Wholesale & Dept't Store Union Local 338 Retirement Fund. v. Hewlett-*
    *Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017) ..................................................................... 1, 6

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
    697 F.3d 869 (9th Cir. 2012) ....................................................................... 13

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ........................................................... 5, 7, 8, 9, 13

*In re Silicon Graphics Inc. Securities Litigation*,
    183 F.3d 970 (9th Cir. 1999) ......................................................................... 5

*SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*,
    499 F. Supp. 3d 49 (D. Del. 2020), *aff'd*, No. 20-3427, 2022 WL 3442353
    (3d Cir. Aug. 17, 2022) .............................................................................. 6

*In re Sorrento Therapeutics, Inc. Securities Litigation*,
    97 F.4th 634 (9th Cir. 2024) ............................................................... 2, 6, 8, 12

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
    282 F.R.D. 216 (D. Ariz. 2012) ................................................................... 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................... 3, 12, 16

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ........................................................ 16

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ....................................................................... 13

*Welgus v. TriNet Group, Inc.*,
    No. 15-cv-03625-BLF, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd*,
    765 F. App'x 239 (9th Cir. 2019) ................................................................ 16

*Weston Family Partnership LLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) ........................................................... 1, 2, 6, 9, 11, 14

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...................................................... 2, 9, 10, 11, 12, 14, 15, 17

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................ 17

15 U.S.C. § 78u-5(c)(1)(B)(i) ........................................................................ 3, 13

iii

1

## Other Authorities

2

24 *Williston on Contracts* § 65:1 (4th ed. 2018) .............................................................. 10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### TABLE OF ABBREVIATIONS

| Abbreviation | Unabbreviated Term |
|---|---|
| ¶ | SAC paragraph number, unless otherwise specified |
| 1Q23 | First Quarter (1Q23 is the first quarter of FY23 ending March 30) |
| 2Q23 | Second Quarter (2Q23 is the second quarter of FY23 ending June 30) |
| 3Q23 | Third Quarter (3Q23 is the third quarter of FY23 ending Sept. 29) |
| 4Q23 | Fourth Quarter (4Q23 is the fourth quarter of FY23 ending Dec. 31) |
| CEO | Chief Executive Officer |
| CFO | Chief Financial Officer |
| Class Period | Between May 1, 2023 and October 27, 2023 |
| Company | ON Semiconductor Corporation |
| CW1 | Confidential Witness |
| Defendants | onsemi, El-Khoury, and Trent |
| Doc. | Document filed on PACER in this action |
| El-Khoury | Individual Defendant Hassane El-Khoury |
| Ex. | Exhibits attached to the Declaration of Mark R.S. Foster |
| Exchange Act | Securities Exchange Act of 1934 |
| FAC | First Amended Complaint (Doc. 32) |
| FRCP | Federal Rules of Civil Procedure |
| FY | Fiscal Year |
| KPI | Key Performance Indicator |
| LTSA | Long-Term Supply Agreement |
| onsemi | ON Semiconductor Corporation |
| PSLRA | Private Securities Litigation Reform Act |
| SAC | Second Amended Complaint (Doc. 39) |
| SEC | Securities and Exchange Commission |
| SiC | Silicon Carbide |
| Trent | Individual Defendant Thad Trent |

1   Defendants move to dismiss the Second Amended Complaint ("SAC") under
2   FRCP 12(b)(6) and the PSLRA.

## I.   **PRELIMINARY STATEMENT**

4       In this purported securities fraud class action, Plaintiff asserts that onsemi misled
5   investors between May 1, 2023 and October 27, 2023 (the "Class Period") about the
6   viability of its Long-Term Supply Agreements ("LTSAs") with customers purchasing its
7   silicon carbide ("SiC") chips.  Plaintiff originally claimed that onsemi led investors to
8   believe that the LTSAs were "non-cancellable." (*See* FAC.)  Plaintiff, however, was forced
9   to amend his complaint when Defendants' prior motion to dismiss showed that onsemi
10  repeatedly disclosed that LTSAs were subject to cancellation or modification if "mutually
11  agreed." (Doc. 37 at 4-6.)  The SAC's fraud theory also collapses when scrutinized.

12      *First*, Plaintiff relies on alleged misstatements that Plaintiff cannot show were
13  materially misleading when made.  Plaintiff claims that onsemi lied to investors when it
14  characterized LTSAs as "ironclad" and said it would "only allow renegotiation [of an
15  LTSA] if it would result in a 'win-win' for both onsemi and the customer." (¶ 75.)  These
16  are the very type of vague statements of corporate optimism that the Ninth Circuit has held
17  to be non-actionable because they are "inherently aspirational" and not "capable of
18  objective verification." *Retail Wholesale & Dept't Store Union Loc. 338 Ret. Fund. v.*
19  *Hewlett-Packard Co.*, 845 F.3d 1268, 1275-76 (9th Cir. 2017).[1]

20      And, even if potentially actionable, these statements obviously reflect statements of
21  belief about LTSAs.  But to state a claim based on statements of belief, Plaintiff must plead
22  both "subjective falsity" (that Defendants did not believe their opinions) and "objective
23  falsity" (that their beliefs were "objectively untrue"). *City of Dearborn Heights Act 345*
24  *Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-19 (9th Cir. 2017).

25      The SAC does neither.  Plaintiff does not even attempt to show subjective falsity.
26  As for objective falsity, Plaintiff does not plead any particularized facts that "directly

27  _____

28  [1] All emphases are added to, and all citations, brackets, original alterations, footnotes, and internal quotation marks are omitted.  Any subsequent case histories are noted in the Table of Authorities.

contradict what the defendant knew at the time" of each challenged statement. *Weston Fam. P'ship LLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022). Instead, the SAC points to a so-called revelation of fraud when onsemi updated its forecast for investors on October 30, 2023, explaining that "for the full year [ending December 31, 2023], a single automotive OEM's ***recent reduction*** in demand will impact our $1 billion target and we now expect to ship more than $800 million of silicon carbide in 2023." (¶ 90.) onsemi explained that "we're able to recover the business in a different mix, not with that OEM, but with others." (¶ 98.) On its face, this "recent reduction" (¶ 90) could not "contradict" what onsemi "knew at the time" when making the win-win statements. Under *Twitter*, this lack of contemporaneous falsity is fatal on its own.

The SAC's alleged misstatements also fail to form a valid claim when considered "in context," as required. *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024). That is because onsemi's disclosures were clear about what a "win-win" might look like: getting greater market share of a customer's total prospective business, getting qualified on other products, extending the LTSA's duration, or a situation where onsemi can "redirect" the product and "ship that to somebody else." (¶ 83.)

Plaintiff also points to an allegation from a former employee (CW1) that an unidentified military customer was allegedly not "penalized" in 1Q23 (January 1 through March 31) when it deferred an order for $5 million of some unspecified product before the Class Period started on May 1. Again, this allegation is not contemporaneous with any challenged statement and thus fails under *Twitter*. Further, onsemi never said its LTSAs had penalty provisions, which makes sense given that penalties are by definition unenforceable under contract law. CW1's statement thus has no bearing on whether LTSAs were enforced, enforceable, or modified to achieve win-wins. The allegation falls far short of pleading particularized facts that "directly contradict what the defendant knew at the time," *Twitter*, 29 F.4th at 619. CW1 had no role in negotiating LTSAs and left onsemi in July 2023, meaning he lacked visibility into what type of win-win onsemi may have negotiated with that customer during the Class Period. Courts discount allegations

1  from witnesses who lack first-hand knowledge, report hearsay, and are not employed at
2  relevant times.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995-96 (9th Cir.
3  2009).  This Court should too.

4       *Second*, in addition to Plaintiff's failure to plead falsity, the SAC should also be
5  dismissed because it fails to plead any particularized facts giving rise to a "strong inference
6  of scienter." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314, 317-18 (2007).
7  Plaintiff challenges forward-looking statements about future and hypothetical win-win
8  renegotiations, but pleads no facts showing that El-Khoury (CEO) and Trent (CFO) had
9  "actual knowledge" at the time they made each statement, or that they would not obtain
10  win-win solutions in modifying LTSAs, as required by the PSLRA's Safe Harbor provision
11  for forward-looking statements.  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-12 (9th Cir.
12  2010); 15 U.S.C. § 78u-5(c)(1)(B)(i).  Nor does Plaintiff allege any facts showing any
13  intent to deceive here.

14       Plaintiff does not assert that Defendants had any motive to commit securities fraud.
15  The lack of "motive certainly makes it much less likely that plaintiff can show a strong
16  inference of scienter." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th
17  Cir. 2021).  Further negating scienter: onsemi repurchased over $620 million of its own
18  stock between April 29, 2023 and October 27, 2023, a fact that has supported dismissal in
19  other cases.  *See, e.g. Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 933 (N.D. Cal. 2017).
20  What kind of fraudster pumps up its own stock and then buys it at the allegedly inflated
21  stock prices to its detriment?  It makes no sense.  Dismissal with prejudice is warranted
22  where a claim "has no basis in logic or common experience." *Nguyen v. Endologix, Inc.*,
23  962 F.3d 405, 408 (9th Cir. 2020).  That is exactly what this Court should do here.

24  ## II.   **BACKGROUND**

25       onsemi is a leading semiconductor company based in Scottsdale that manufactures
26  and sells cutting-edge semiconductors.  (¶¶ 16, 21.)  El-Khoury and Trent serve as CEO
27  and CFO, respectively.  (¶¶ 17-19.)  In FY23, onsemi generated over $8.25 billion in
28  revenue.  (Ex. 1 at 34.)

In recent years, onsemi ramped up its production of SiC chips (one of its business lines) and increased its focus on automotive and industrial markets. (¶¶ 23-24.) At the Class Period's start (May 1, 2023), onsemi reported financial results for 1Q23, ending March 30, 2023. During an earnings call, onsemi set a target of $1 billion in SiC revenue for FY23. On that call, and throughout the Class Period (as well as before), onsemi underscored the importance of LTSAs to its business and explained how LTSAs worked.

LTSAs are contracts with customers who agree to purchase certain amounts of SiC-based products and other semiconductors for specified price terms over a multi-year period. (¶¶ 37-39.) For customers, LTSAs ensure that their supply needs are met on a long-term basis, whereas onsemi benefits from greater visibility into potential customer demands over a multi-year period and can allocate manufacturing capacity and capital expenditures to efficiently meet these demands. (*Id.*) onsemi described the LTSAs as "legally binding agreements" (¶ 56) that were "not subject to cancellation unless mutually agreed." (¶ 49; Ex. 2 at 10.)

Defendants repeatedly disclosed to investors that they would accommodate customer requests to modify LTSAs in situations where there were shifts in customer demand, provided the modification would result in a "win-win." (¶ 83.) El-Khoury stressed that, if a customer "is not interested in a win-win, but a win/lose, that's where [LTSAs are] ironclad." (¶ 87.) Defendants defined a "win-win" as a modification that was a "net benefit to the Company." (¶ 58.) Defendants gave non-exhaustive examples of what a "win-win" renegotiation might look like: for example, taking "10% fewer purchase orders of one product if, in exchange, the customer was willing to give onsemi a greater share of the customer[']s total business" or "extend the LTSA for 2 years." (*Id.*) Another example would be where onsemi could "redirect" the ordered product to another customer "[s]o somebody gets more supply to meet their demand, and somebody [else] is not going to get oversupply that's going to sit in inventory." (¶ 83.)

On October 30, 2023, after the Class Period's end, onsemi announced 3Q23 financial results. It reported quarterly revenue of $2.18 billion that exceeded the midpoint

of its previously issued guidance, representing a 4% increase from the previous quarter. (Ex. 3 at 4, 6.)  Notwithstanding these impressive results, onsemi announced it was adjusting its previously announced FY23 revenue target for SiC products, from $1 billion to $800 million, because of "a single automotive OEM's recent reduction in demand." (*Id.* at 5.)  This customer's demand reduction was not alleged to have violated any specific term of an LTSA contract; nor does Plaintiff allege facts showing that onsemi did not obtain a "win-win" solution.  Indeed, stock analysts noted onsemi suggested it had "extracted value in other aspects of its relationship w[ith] the customer."  (Ex. 4 at 1.)  When asked for details about the OEM customer, El-Khoury explained that "we're able to recover the business in a different mix, not with that OEM, but with others . . . [so] the outlook remains the same."  (¶ 98.)  That was consistent with earlier disclosures that a "win-win" renegotiation could result in shipping product to other customers where needed.  (¶ 85.)

On October 31, onsemi's stock prices fell but recovered steadily and fully within a few months, as illustrated in Appendix A.  In the wake of the temporary stock drop, Plaintiff asserted claims under Sections 10(b) and 20(a) of the Exchange Act.  Plaintiff challenges statements made on four dates in 2023: May 1, May 23, August 30, and September 7.  (¶¶ 78, 81, 83, 84, 87.)  The SAC's gravamen is that Defendants misled investors by describing LTSAs as "ironclad" and setting the expectation that LTSAs "would only allow a renegotiation if it would result in a 'win-win' for [o]nsemi and the customer."  (¶ 75.)

## III.    PLAINTIFF FAILS TO STATE A SECTION 10(b) CLAIM

The PSLRA was enacted "to deter opportunistic private plaintiffs from filing abusive securities fraud claims," specifically, "by raising the pleading standards for private securities fraud plaintiffs." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 973 (9th Cir. 1999).  Congress enacted these heightened pleading standards because securities claims "can extort a great deal of undeserved settlement money if the courts do not filter out the unfounded ones early enough to avoid huge litigation expenses." *Ronconi v. Larkin*, 253 F.3d 423, 428 (9th Cir. 2001).  Thus, Plaintiff's Section 10(b) claim must satisfy the

PSLRA's "formidable pleading requirements" to avoid dismissal under FRCP 12(b)(6). *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008). Plaintiff must allege that Defendants made (A) a material misstatement or omission (B) with scienter. *See id.* at 1061. Plaintiff has failed to do either, let alone both.

### A.    Plaintiff Fails to Plead a Materially False or Misleading Statement

"The PSLRA has exacting requirements for pleading falsity." *Metzler*, 540 F.3d at 1070. It "prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Id.* at 1061. For a statement to be false or misleading, "it must directly contradict what the defendant knew at the time" or "omit material information." *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022). Courts examine each challenged statement "in context" and give it a "fair reading." *Sorrento*, 97 F.4th at 641.

### 1.    The challenged statements are not actionable

Plaintiff challenges Defendants' statements about the "iron clad" and "predictable" nature of LTSAs and Defendants' belief that any modification of LTSAs would result in a "win-win" solution. (¶¶ 78, 81, 83, 84, 87.) These are the very type of statements that are non-actionable as a matter of law. The Ninth Circuit has explained that they are the type of "vague," "inherently aspirational" statements that are not "capable of objective verification." *Retail Wholesale*, 845 F.3d at 1275-76. Applying this rule, courts have held that statements characterizing "wins" are not actionable. *See, e.g.*, *Kipling v. Flex Ltd.*, 2020 WL 2793463, at *13 (N.D. Cal. May 29, 2020) (citing cases). The same goes for statements characterizing matters as "iron-clad." *See SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, 499 F. Supp. 3d 49, 65 (D. Del. 2020) ("[S]tatements describing the 'iron-clad' nature of [a] dividend, and . . . "stable" lease payments . . . constitute nonactionable 'puffery.'") And for good reason: there would be no way to show these inherently subjective statements were objectively false when made.

6

**2.    Plaintiff has not shown that the challenged statements were materially misleading when made.**

Even if actionable (they are not), the challenged statements about LTSAs being "iron clad," "predictable," and renegotiable to obtain "win-wins" are statements of belief. To show falsity of statements of such opinions is "no small task for an investor." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015).    The *Omnicare* test requires Plaintiff to allege both subjective falsity—"that the speaker did not hold the belief she professed"—and objective falsity—"that the belief is objectively untrue." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-17 (9th Cir. 2017).    Plaintiff shows neither, let alone both.

**(a)    Plaintiff does not attempt to plead subjective falsity.**

Here, Plaintiff does not even attempt to show that El-Khoury and Trent did not believe that LTSAs were "iron clad," "predictable," or that any LTSA modifications would not result in "win-win" outcomes.    The lack of subjective falsity allegations is fatal. *Id.*[2]

**(b)    Plaintiff does not plead any facts showing objective falsity.**

Plaintiff fails to show that the challenged statements were objectively false when made. *See id.*    This requires Plaintiff to plead "contemporaneous statements or conditions" showing the "misleading nature of the statements when made." *Ronconi*, 253 F.3d at 432. The particularized facts must be "necessarily inconsistent" with the challenged statements. *In re Read-Rite Corp.*, 335 F.3d 843, 848 (9th Cir. 2003).    Plaintiff principally attempts to show falsity based on vague allegations about two orders: one OEM automative customer and one unspecified military customer.

***OEM Customer***.    Plaintiff alleges that onsemi's statements were false in light of the supposed "admission" after the Class Period.    (*See, e.g.*, ¶¶ 79(e), 82(e), 85(e), 88(e).) Plaintiff points to the October 30, 2023 earnings update where onsemi announced that "for

---

[2] Where an "omissions" theory is asserted, a complaint must "allege facts going to the basis for the issuer's opinion whose omission makes the opinion . . . misleading to a reasonable person reading the statement fairly and in context." *Align*, 856 F.3d at 616.    Plaintiff here does not attempt to allege anything about the "facts going to the basis" of the challenged opinions.    Plaintiff's claim fails for this additional reason.

the full year [ending December 31, 2023], a single automotive OEM's **recent reduction** in demand will impact our $1 billion target and we now expect to ship more than $800 million of silicon carbide in 2023." (¶ 90.)  onsemi subsequently explained "we're able to recover the business in a different mix, not with that OEM, but with others." (¶ 98.)  This alleged "admission" is not an admission and does not show falsity for at least two reasons.

*First*, announcing a "recent reduction" on October 30, 2023 is not a "contemporaneous statement[ ] or condition[ ]" that shows "the misleading nature" of the May 1, May 23, August 30, or September 7 statements, (¶¶ 78, 81, 83, 84, 87).  *See Ronconi*, 253 F.3d at 432.  This is reason enough to reject the allegation.

*Second*, onsemi's ability to "recover the business . . . with others" is entirely consistent with the type of solution it would view as a "win-win."  Long before the October 30 disclosure, El-Khoury explained that a "win-win" could be a situation where "I can ship that [product] to somebody else that I've been under shipping to," so "we're going to redirect it.  So somebody gets more supply to meet their demand, and somebody is not going to get oversupply that's going to sit in inventory." (¶ 83.)  In another instance, he similarly explained potential win-win solutions like this:

> [W]e're not here to "shove inventory."  If the customer has a concern on demand or they say, okay, 6 months from now, it's not going to be where I thought it was going to be . . . we can manage our manufacturing.  So you don't have [a Work in Progress] that's going to end up in inventory . . . If I can move that capacity elsewhere because we're oversubscribed, that's even better for us and the customer.

(Ex. 5 at 6.)  Far from being "necessarily inconsistent" with the challenged statements, *Read-Rite*, 335 F.3d at 848, the alleged "admission" from October 30 is **entirely consistent** with onsemi's prior disclosures about what a "win-win" could look like.  When put into its proper context, *see Sorrento*, 97 F.4th at 641, Plaintiff does not plead falsity.

***Unspecified Military Contract***.  Next, Plaintiff points to allegations from CW1 who asserts that a "significant" military customer did not place its $6 million order for 50,000 semiconductor wafers in February and March 2023, as required by a LTSA. (¶¶ 69, 79(a), 82(a), 85(a), 88(a).)  This allegation fails out of the gates because an order in February and

1  March 2023 is not "contemporaneous" with any of the statements made in the Class Period

2  spanning May 1 through October 27, 2023.  That is fatal under *Ronconi*, *Read-Rite*, and

3  *Twitter*.  Yet this is not the only problem with CW1's allegations.

4      The allegations attributed to CW1 also fail the test articulated by the Ninth Circuit

5  in *Zucco*: i.e., that a complaint must allege "with sufficient particularity to support the

6  probability that a person in the position occupied by the source would possess the

7  information alleged."  *Zucco*, 552 F.3d at 995.  This requires evaluating "the level of detail

8  provided by the confidential sources, the corroborative nature of the other facts alleged

9  (including from other sources), the coherence and plausibility of the allegations, the

10  number of sources, the reliability of the sources, and similar indicia."  *Id.*

11      Here, CW1 supposedly was employed by onsemi for 30 years, most recently as a

12  "Project Manager in the Advanced Solutions Group business unit," before departing in July

13  2023 (¶ 20), almost four months before the Class Period's end.  CW1 was purportedly on

14  a team "that developed products for military and aerospace customers."  (*Id.*)

15      Plaintiff has not shown that CW1 has any personal knowledge of the legal effect of

16  LTSAs or of discussions between onsemi and any customer regarding LTSAs.  Plaintiff

17  concedes that CW1 was a relatively low-level employee, removed from El-Khoury by at

18  least four degrees, in a "business" rather than a legal role.  (¶ 20.)  And, by Plaintiff's

19  allegations, it was El-Khoury and Trent (not CW1) who were "responsible for negotiating,

20  signing, executing, and managing the LTSAs with customers."  (¶ 7.)  In other words,

21  Plaintiff fails to allege CW1 was in a position to have personal knowledge of LTSAs,

22  particularly from a legal perspective.  *See, e.g.*, *Kipling*, 2020 WL 2793463, at *16

23  (confidential witness' allegations were unreliable because they addressed matters outside

24  of witness' "firsthand knowledge" (citing cases)).  Nor does Plaintiff allege any other facts,

25  let alone any that "corroborat[e]" CW1's account.  *Zucco*, 552 F.3d at 995.

26      What's more, CW1 undermines himself as a reliable source.  He claims that his

27  understanding regarding the LTSA at issue comes from "speaking with colleagues in sales

28  and the business unit for the customer"—i.e., his knowledge is based on what he heard

9

from others, not his own direct knowledge. (¶ 72.)  The Ninth Circuit rejects this type of "vague hearsay" as unreliable.  *Zucco*, 552 F.3d at 997.

Further, CW1's allegations that LTSAs do not "hold water" (¶88(b)) and that management's response was "crickets" are likewise insufficient because the Ninth Circuit does not credit allegations that are "high on alarming adjectives" but "short on the facts," *Endologix*, 962 F.3d at 416, or that are simply a "negative opinion" about business practices, *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 537 (9th Cir. 2024).  CW1's allegations "hardly support[ ] a claim" where, as here, they are "vague" and contain "only snippets of information, not a view of the company's overall health."  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014).

Nor is the fraud claim supported by CW1's belief that "there was no penalty" under the LTSA if a customer failed to place an order.  (¶ 72; *see also* ¶¶ 79(a)-(b), 82(a)-(b), 85(a)-(b), 88(a)-(b).)  For one thing, the absence of a "penalty" is not "necessarily inconsistent" with any challenged statement.  *Read-Rite*, 335 F.3d at 848.  In none of the challenged statements did onsemi ever state that customers would be "penalized" for an alleged LTSA breach.  Without inconsistency, there is no fraud.  *See id.*

Further, CW1's penalty allegation also highlights the minimal "coherence and plausibility of the allegations." *Zucco*, 552 F.3d at 995.  It is blackletter law that contractual penalty provisions are "generally unenforceable"—"even where the provision is negotiated in good faith, at arms' length and between parties of equal bargaining power."  *See* 24 *Williston on Contracts* § 65:1 (4th ed. 2018).  The same is true under Arizona law: "[C]ontractual penalty provisions—even when agreed upon by sophisticated parties—[are] unenforceable as a matter of public policy."  *Dobson Bay Club II DD, LLC v. La Sonrisa De Siena, LLC*, 393 P.3d 449, 456 (Ariz. 2017).  The absence of a penalty thus has no bearing on whether LTSAs were enforceable, enforced, or renegotiated for a "win-win."

What CW1 does not say is also important.  He does not address whether onsemi obtained a "win-win" with that one customer.  And CW1's ability to weigh in on the subject is undercut by the fact that he left onsemi in July 2023.  The Ninth Circuit discounts

allegations from confidential witnesses who were not present during the relevant times during a class period.  *See, e.g.*, *Zucco*, 552 F.3d at 996.  Given CW1's departure from onsemi, CW1 is not a reliable source to opine on whether a "win-win" was achieved (or not) during the Class Period for that one particular customer.

Finally, CW1's statements are not reliable because he characterized an LTSA involving "50,000 semiconductor wafers worth about $6 or $7 million," in 1Q23 as being of "significant" value to onsemi.  (¶¶ 69-70.)  Plaintiff must show any misstatements "were material in light of the company's overall financial position," *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 609 (9th Cir. 2014), which he cannot do here: onsemi reported almost $1.96 billion in revenue in 1Q23.  (Ex. 6 at 1.)[3]

**Other Alleged "Admissions."**  Finally, Plaintiff relies on purported post-Class Period "admissions" by El-Khoury that: LTSAs did not "lock[ ] in" volumes (¶¶ 79(c), 82(c), 85(c), 88(c)); and onsemi's acceptance of lower volumes on a "case by case" basis, and the corresponding benefit to onsemi, could be realized over a "longer term" (¶¶ 79(d), 82(d), 85(d), 88(d).)  None of these other purported admissions "contradict" any of the challenged Class Period statements.  *Twitter*, 29 F.4th at 619.  Indeed, they are entirely consistent with onsemi's disclosures during the Class Period about potential "win-wins."

For example, on May 1, 2023, El-Khoury explained LTSAs provided "align[ment] on pricing and volume through the duration of the LTSAs," but also added that, because there were "no conversations about pricing," the "focus ha[d] always remained on supply." (Ex. 6 at 10.)  During the September 7, 2023 Citi Conference (¶ 86), an unidentified analyst asked: "How iron clad are [the LTSAs]?" (Ex. 8 at 13.)  After El-Khoury discussed LTSAs being renegotiable upon a "win-win," Trent elaborated: "[P]ricing is locked, right?  So it's not a pricing discussion.  **It can be a quantity discussion** . . . ." (*Id.* at 14.)  By way of illustration, El-Khoury explained: "[L]et's talk about revenue.  Let's talk about share gains.

---

[3] On amendment, Plaintiff attempts to bolster the "significance" of this characterization by quoting an onsemi executive who once characterized a different and unrelated data expansion opportunity as a "very significant growth opportunity" where it generated "$5 million of revenue per data center."  (¶ 69; Ex. 7 at 14.)  Not only is this argument decontextualized, it overlooks that onsemi is involved with 68 data centers, (Ex. 11 at 15), so "$5 million of revenue **per data center**" amounts to hundreds of millions of dollars.

Hey, maybe we can extend the LTSA and you bolt on more, let's put more products that you maybe are not buying from us, but we can qualify because we have a new product.  So, all of these are win-win."  (*Id.* at 13-14.)  onsemi's disclosures made clear that there were many permutations of what a "win-win" could look like relating to quantity, timing, product mix, and more—consistent with the business judgment brought to bear when commercial contracts are negotiated or modified in a dynamic and competitive industry.

The Class Period disclosures made clear that LTSAs were "legally" binding, which is what would cause a customer to "place the call at the first sign of softness," and which "makes the partnership a win-win as far as trying to find a solution."  (¶ 84.)  The lengthy discussion of when, and why, LTSAs were renegotiable—which Plaintiff acknowledges throughout the SAC—is at loggerheads with Plaintiff's core allegation that Defendants misrepresented the LTSAs.  Since it is beyond doubt that Defendants fully disclosed (and discussed) that LTSAs could, like any contract, be renegotiated, and the various forms of "win-win" that might be considered, Plaintiff's fraud claims fail when reviewed and considered "in context," as required.  *Sorrento*, 97 F.4th at 641.

### B.    Plaintiff Also Fails to Plead Facts Giving Rise to a Strong Inference that Any Defendant Acted with Scienter

The Court should dismiss the SAC for the additional, independent reason that Plaintiff also fails to "state with particularity facts giving rise to a strong inference that" Defendants acted with "scienter," which is "a mental state embracing intent to deceive, manipulate, or defraud."  *Tellabs*, 551 U.S. at 314, 319.  A plaintiff must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness."  *Zucco*, 552 F.3d at 991.  In "determining whether the pleaded facts give rise to a strong inference of scienter, the court must take into account plausible opposing inferences."  *Tellabs*, 551 U.S. at 323.  Courts will compare "malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference."  *Zucco*, 552 F.3d at 991.  To show corporate scienter,

12

Plaintiff's allegations must show that the Individual Defendants acted with scienter.  *See Apollo*, 774 F.3d at 607.

### 1.    Plaintiff does not satisfy the PSLRA's "actual knowledge" test

Most of the challenged statements are about prospective "win-win" renegotiations. These are classic forward-looking statements because they all contemplate hypothetical future negotiations of LTSA modifications.  (*See, e.g.*, ¶ 81 ("If we can create a win-win . . . we'll try . . ."); ¶ 84 ( "we're going to sit with the customer and we're going to find a win-win"); ¶ 87 ("we'll have the conversation, but it has to be a win-win.").)  Under the PSLRA's safe harbor provision for forward-looking statements, Plaintiff must plead facts showing that Defendants had "actual knowledge . . . that the statement was false or misleading" when made.  15 U.S.C. § 78u-5(c)(1)(B)(i); *Cutera*, 610 F.3d at 1111-12; *Ronconi*, 253 F.3d at 429.  Plaintiff not only fails to show that any LTSA during the Class Period was modified without a "win-win" (*see supra* at Section II.A.2.b), Plaintiff also does not attempt to allege Defendants had actual knowledge that, as of May 1, May 23, August 30, and September 7, LTSAs would be renegotiated in the future without obtaining a "win-win."  This is fatal to all claims regarding the "win-win" statements.

### 2.    The lack of alleged motive undermines any scienter inference

A "lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter."  *Prodanova*, 993 F.3d at 1108.  The SAC does not allege that Trent or El-Khoury "would have benefitted from any . . . fraudulent statements," which further undermines "an[y] inference of scienter."[4]  *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884-85 (9th Cir. 2012); *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) ("[A] lack of stock sales can detract from a scienter finding.").

### 3.    Plaintiff fails to allege particularized facts giving rise to any scienter inference

The PSLRA's "strong inference" requirement is an "exacting pleading obligation" that "has teeth" and "presents no small hurdle for the securities fraud plaintiff." *Endologix*,

---

[4] Plaintiff dropped his sole motive allegation after Defendants' last motion to dismiss showed that Plaintiff's allegations were baseless.  (*See* Doc. 37 at 12.)

962 F.3d at 414.  "Only where a complaint otherwise asserts compelling and particularized facts showing fraudulent intent or deliberate recklessness will [courts] overlook the failure to allege a plausible motive" for securities fraud.  *Prodanova*, 993 F.3d at 1108.  Here, Plaintiff has not alleged any such facts.

Start with CW1's allegations.  He does not claim to have ever spoken with El-Khoury or Trent.  (¶ 20.)  No inference of scienter can arise from witnesses who "lack first hand knowledge regarding what the individual defendants knew or did not know." *Intuitive Surgical*, 759 F.3d at 1063; *Zucco*, 552 F.3d at 995-96.  Without "direct contact," CW1 "cannot provide reliable insight into the Individual Defendants' states of mind." *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *19 (N.D. Cal. Dec. 17, 2019).

Plaintiff says that Defendants, "by their own admission, . . . received notice *before* the Class Period that a major automotive customer would not be purchasing $200 million of SiC products."  (¶¶ 141.)  There is no "admission" of fraud.  On October 30, onsemi reported financial results for 3Q23 (which ended September 29) and disclosed that "a single automotive OEM's ***recent reduction*** in demand will impact our $1 billion target, and we now expect to ship more than $800 million of silicon carbide in 2023."  (Ex. 3 at 5.)  Defendants discussed a "recent reduction" and disclosed it.  Plaintiff pleads no facts showing that Defendants knew that information well before October 30.  In any case: "While society may have become accustomed to being instantly in the loop about the latest news . . . , our securities laws to do not impose a similar requirement. . . .  Put another way, companies do not have an obligation to offer an instantaneous update of every internal development . . . ." *Twitter*, 29 F.4th at 620.

Moreover, Plaintiff does not connect the dots showing how a "recent reduction" renders earlier-made statements knowingly false when made.  Under Ninth Circuit law "it is simply not enough to assume or implausibly infer that defendants must have known about these issues [earlier] based on later facts or developments." *Twitter*, 29 F. 4th at 621. The Ninth Circuit's conclusion in *Twitter* applies with equal force here.

14

That leaves Plaintiff to fall back on the so-called "core-operations" inference.  To rely on a "core operations" theory, Plaintiff must plead particularized facts showing that "the information misrepresented [was] readily apparent" to management because it concerned "prominent facts" that were "obvious from the operations of the company." *Zucco*, 552 F.3d at 1000-01.  The "core operations" theory applies only in the "'rare circumstance' in which it would be 'absurd' to suggest" that defendants did not know information contradicting their statements.  *Intuitive Surgical*, 759 F.3d at 1062-63.

For example, in *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008), the court found it was absurd to suggest that executives, who had a direct role in the company's day-to-day operations, were unaware of a stop-work order that allegedly halted tens of millions of dollars of work and rendered the facilities a "ghost town."  *Id.* at 988 & n.5.  Plaintiff alleges nothing like that here and does not dispute that onsemi reported sequential revenue growth in 3Q23, (Ex. 3)—hardly an adverse fact, let alone like the one in *Berson*.  And Plaintiff acknowledges that onsemi was "able to recover the business in a different mix, not with that OEM" before the October 30 update.  (¶ 98.)  This is not a situation where the inventory went unsold or unshipped.  No wonder onsemi's stock price rebounded steadily after the October 30 update.  *See* Appendix A.

That Khoury and Trent spoke about, and allegedly "closely tracked," LTSAs does not give rise to any inference of an intent to defraud, as Plaintiff claims.  (¶¶ 130-31.)  This supports only one inference: that they were doing their jobs.  "At best, these facts support a mere inference of the defendants' knowledge of all core operations, not scienter." *Intuitive Surgical*, 759 F.3d at 1062.  There are no facts alleged from which the Court can infer Defendants knew material facts about LTSAs that contradicted their public statements on the subject.  Reaching that conclusion would require speculation.  For good reason, courts routinely reject these sorts of "vague allegations" of the "general importance" of an aspect of a company's business as insufficient to an intent to defraud.  *See Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First Solar Inc.*, 2023 WL 4161355, at *5 (D. Ariz. June 23, 2023) ("the law requires more in the form of specific

admissions or witness accounts").

#### 4.   onsemi's change to its risk warnings shows no scienter

Plaintiff also alleges that changes to onsemi's risk warnings raise a strong inference of scienter.   Plaintiff claims that, prior to the Class Period, onsemi had included risk warnings related to "[o]rder [c]ancellation" and "[d]emand [u]ncertainty" in their public filings but, during the Class Period, onsemi had removed these risk warnings to "convince investors that LTSAs would eliminate previously experienced risks."   (¶¶ 122, 125.) Plaintiff's speculation about the reasons for the changes do not give rise to any inference of scienter.   Companies understandably update their risk warnings as information evolves and as circumstances warrant, for "if the law viewed a company's editing or removal of language from an SEC filing as a tacit admission that the language was false when made, no public company would ever remove disclosures from its filings."   *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *8 (N.D. Cal. Dec. 18, 2017); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 816 (N.D. Cal. 2019) (same).   In any case, the updated risk factors were entirely consistent with onsemi's disclosures during the Class Period that LTSAs were "not subject to cancellation, ***unless otherwise mutually agreed***."   (Ex. 2 at 10.)   The updated risk factors echoed what onsemi had disclosed during the Class Period.

#### 5.   Holistically, Plaintiff's scienter allegations fail

In the separate "holistic[ ]" review of scienter allegations mandated by *Tellabs*, 551 U.S. at 326, Plaintiff's allegations also fail.   Their statements, reviewed as a whole, show that Defendants did not mislead investors about LTSAs.   They were transparent about the possibility that LTSAs could be subject to modification by "mutual agreement" and repeatedly discussed the circumstances in which onsemi would use the leverage of having "ironclad" and enforceable LTSAs to work with customers to arrive at "win-win" solutions when customers needed assistance in light of shifting demand.   Plaintiff does not allege any facts showing that any booked revenue was lost or that onsemi did not arrive at a "win-win" solution with respect to any LTSA modifications during the Class Period.   Not only does the absence of any apparent motive negate Plaintiff's scienter allegations, so too does

1    onsemi's repurchase of over $620 million of its stock between April 29 and October 27,

2    2023.  (Exs. 1, 9 & 10; *see also* Foster Decl. ¶ 15.)  "[I]t is illogical that [onsemi] would

3    have been repurchasing its shares had it been aware of facts that would indicate the price

4    would fall."  *Bodri v. GoPro*, *Inc.*, 252 F. Supp. 3d 912, 933 (N.D. Cal. 2017); *see also In*

5    *re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *8 (N.D. Cal. Mar. 29, 2013).

6            onsemi's transparency also cuts against scienter.  It revised its SiC FY23 revenue

7    target downwards in October—months before FY23 ended.  Giving investors timely

8    updates is honesty, not fraud: "Under the logic put forth by Plaintiff[ ], every time the stock

9    market digested a new forecast that resulted in a steep fall in a company's stock price, the

10   executives of [the] company would be liable for securities fraud.  That simply is not how

11   our securities markets function."  *In re Lexar Media, Inc. Sec. Litig.*, 2005 WL 1566534,

12   at *3 (N.D. Cal. July 5, 2005).

13   **IV.    PLAINTIFF FAILS TO STATE A SECTION 20(a) CLAIM**

14           Plaintiff's Section 20(a) claim likewise fails.  He "cannot establish control person

15   liability because [he] ha[s] not adequately alleged violations of section 10(b)."  *Apollo*, 774

16   F.3d at 610.

17   **V.    THE SAC SHOULD BE DISMISSED WITH PREJUDICE**

18           In the face of Defendants' prior motion to dismiss, Plaintiff retreated.  He dropped

19   claims and theories that were demonstrably baseless, (*see* Doc. 37 at 1:8-10, 1:22-24, 5:10-

20   20, 12:1-12), and potentially sanctionable under the PSLRA's mandatory Rule 11

21   sanctions review, *see* 15 U.S.C. § 78u-4.  Yet, even on amendment, Plaintiff still has not

22   stated a claim.  Plaintiff's "repeated failure to cure deficiencies by amendments previously

23   allowed," combined with the "futility of amendment," warrant dismissal of the SAC with

24   prejudice.  *Zucco*, 552 F.3d at 1007.  Where, as here, "the plaintiff fails to set forth any

25   additional facts that could save the complaint, . . . dismissal with prejudice is appropriate."

26   *Teamsters Loc. 617 Pension and Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 236

27   (D. Ariz. 2012).

28

DATED this 10th day of October, 2024.

OSBORN MALEDON, P.A.

By s/ Joseph N. Roth
   David B. Rosenbaum
   Joseph N. Roth
   Alexandria N. Karpurk
   2929 North Central Avenue, Suite 2000
   Phoenix, Arizona 85012

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
   Mark R.S. Foster (admitted *pro hac vice*)
   525 University Avenue
   Palo Alto, California 94301

*Attorneys for Defendants*

18

1

**APPENDIX A**[i]

2

3



4

5

6

7

8

9

10

11

12

13

14

---

15  [i] This stock chart graphically illustrates the Yahoo! Finance data contained in Exhibit 15 of the Declaration of Mark R.S. Foster (Foster Decl. ¶ 17) and provides a complete picture
16  of the relevant stock price history that Plaintiff selectively presents in his SAC.  (*See* ¶ 155, Fig. 2.)

17

18

19

20

21

22

23

24

25

26

27

28