LEVI & KORSINSKY, LLP
Shannon L. Hopkins (admitted *pro hac vice*)
(State of Connecticut Juris No. 435545)
Gregory M. Potrepka (admitted *pro hac vice*)
(State of Connecticut Juris No. 437326)
David C. Jaynes (to be admitted *pro hac vice*)
(State of California Juris No. 338917)
P. Cole von Richthofen (to be admitted *pro hac vice*)
(State of Connecticut Juris No. 444159)

1111 Summer Street, Suite 403
Stamford, CT 06905
shopkins@zlk.com
gpotrepka@zlk.com
Telephone: 203-992-4523

*Lead Counsel for Lead Plaintiff Jeffery S. Lew*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffery S. Lew, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>ON Semiconductor Corporation; Hassane El-Khoury; and Thad Trent,<br><br>Defendants. | No. CV-24-00594-PHX-SMB<br><br>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT |

DATED this 22nd day of November, 2024.

*/s/ Gary A. Gotto*
Gary A. Gotto
Liaison Counsel for Lead Plaintiff

**Table of Contents**

Table of Abbreviations ................................................................................................... vii

STATEMENT OF FACTS .............................................................................................. 1

    I.  Onsemi Introduces LTSAs to Make Cancellation Losses "A Thing of the Past" .... 1

    II.  In 2022, Defendants Amend Onsemi's Risk Warnings and Repeatedly Assure Investors LTSAs Prevent Losses from Unilateral, Customer Cancellations ............ 2

    III. Customers Delay Orders Indefinitely Without an Offsetting Win for Onsemi ........ 2

    IV. Defendants Reveal the Truth Regarding The LTSAs' Illusory Protection .............. 3

ARGUMENT ................................................................................................................ 4

    I.  The SAC Adequately Alleges Defendants Made Material Misstatements .............. 4

        A.  Defendants Misled Investors Regarding LTSAs' Ability to Force "Wins" ........ 4

        B.  Defendants' Misstatements Were Not Immaterial Puffery ................................. 8

        C.  Defendants' Misstatements Were Not Inactionable Opinions ........................... 8

        D.  Defendants' Truth-on-the-Market Argument Fails ............................................ 10

        E.  The PSLRA Safe Harbor Does Not Apply to the Alleged Misstatements ........ 12

        F.  The SAC's CW Allegations Are Sufficiently Detailed and Corroborated ........ 12

    II.  The Complaint Alleges a Strong Inference of Scienter ......................................... 14

CONCLUSION .............................................................................................................. 17

### Table of Authorities

**Cases**

*Alich v. Opendoor Techs. Inc.*,
  2024 WL 839146 (D. Ariz. Feb. 28, 2023) ................................................................. 7, 8

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,
  2023 WL 1769810 (S.D. Cal. Feb. 2, 2023). ................................................................ 11

*Evanston Police Pension Fund v. McKesson Corp.*,
  411 F. Supp. 3d 580 (N.D. Cal. 2019) ......................................................................... 15

*Flynn v. Sientra, Inc.*,
  2016 WL 3360676 (C.D. Cal. June 9, 2016) ................................................................ 16

*Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*,
  63 F.4th 747 (9th Cir. 2023) ................................................................................. 4, 8, 13

*In re Allstate Life Ins. Co. Litig.*,
  2013 WL 5974916 (D. Ariz. Nov. 5, 2013) ................................................................... 9

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) .......................................................................................... 14

*In re Apollo Grp. Inc. Sec. Litig.*,
  395 F. Supp. 2d 906 (D. Ariz. 2005) ............................................................................. 7

*In re Apple Inc. Sec. Litig.*,
  2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ................................................... 15, 16, 17

*In re BioMarin Pharm. Inc. Sec. Litig.*,
  2022 WL 164299 (N.D. Cal. Jan. 6, 2022) ................................................................... 17

*In re Facebook, Inc. Sec. Litig.*,
  87 F.4th 934 (9th Cir. 2023) ........................................................................................ 4, 8

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ..................................................................................... 11

*In re LUCID Grp., Inc. Sec. Litig.*,
  2024 WL 3745605 (N.D. Cal. Aug. 8, 2024) ................................................................. 9

*In re MannKind Sec. Actions*,
  835 F. Supp. 2d 797 (C.D. Cal. 2011) ......................................................................... 12

iii

*In re Mattel, Inc. Sec. Litig.*,
    2021 WL 1259405 (C.D. Cal. Jan. 26. 2021) ............................................................. 14

*In re Quality Sys.*,
    865 F. 3d 1130 (9th Cir. 2017) ............................................................... 8, 12, 13

*In re QuantumScape Secs. Class Action Litig.*,
    580 F. Supp. 3d 714 (N.D. Cal. 2022) .................................................................. 8, 17

*In re VeriFone Holdings, Inc., Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012) ............................................................................ 14

*Jackson v. Microchip Tech. Inc.*,
    2020 WL 1170843 (D. Ariz. Mar. 11, 2020) ................................................................ 4

*Jaeger v. Zillow Grp., Inc.*,
    644 F. Supp. 3d 857 (W.D. Wash. 2022) .................................................................. 7

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) .............................................................................. 4

*Kipling v. Flex Ltd.*,
    2020 WL 2793463 (N.D. Cal. May 29, 2020) ............................................................. 13

*Kui Zhu v. Taronis Techs. Inc.*,
    2020 WL 1703680 (D. Ariz. Apr. 8, 2020) ............................................................. 4, 7

*Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*,
    2024 WL 3708800 (D. Ariz. Aug. 7, 2024) ........................................................ 14, 16

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016) .............................................................................. 5

*Longo v. OSI Sys., Inc.*,
    2021 WL 1232678 (C.D. Cal. Mar. 31, 2021) ........................................................... 17

*Lowthorp v. Mesa Air Grp. Inc.*,
    2021 WL 3089118 (D. Ariz. July 22, 2021) .............................................................. 9

*Luo v. Spectrum Pharms., Inc.*,
    2024 WL 4443323 (D. Nev. Oct. 7, 2024) ................................................................ 17

*Maverick Fund, L.D.C. v. First Solar, Inc.*,
    2018 WL 6181241 (D. Ariz. Nov. 27, 2018) ............................................................. 10

*McCune v. JD Towing LLC*,
2022 WL 16635373 (D. Ariz. Nov. 2, 2022) ............................................................. 12

*Middlesex Ret. Sys.v. Quest Software Inc.*,
527 F. Supp. 2d 1164 (C.D. Cal. 2007)...................................................................... 16

*Miller v. Thane Int'l, Inc.*,
519 F.3d 879 (9th Cir. 2008)................................................................................... 5, 7

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020).................................................................................... 13

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004)................................................................................... 16

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015).................................................................................................... 9

*Orbis Glob. Equity Fund Ltd. v. NortonLifelock Inc.*,
2023 WL 1800963 (D. Ariz. Feb. 7, 2023)................................................................. 8

*Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First
Solar Inc.*,
2023 WL 4161355 (D. Ariz. June 23, 2023).............................................................. 16

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014)................................................................................... 13

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021)................................................................................... 14

*Purple Mountain Tr. v. Wells Fargo & Co.*,
432 F. Supp. 3d 1095 (N.D. Cal. 2020) .................................................................... 15

*S. Ferry LP #2 v. Killinger*,
687 F. Supp. 2d 1248 (W.D. Wash. 2009).................................................................. 10

*Scheller v. Nutanix, Inc.*,
2020 WL 5500422 (N.D. Cal. Sep. 11, 2020)............................................................ 15

*SEC v. Platforms Wireless Int'l Corp.*,
617 F.3d 1072 (9th Cir. 2010)................................................................................... 10

*Shankar v. Imperva, Inc.*,
2016 WL 2851859 (N.D. Cal. May 16, 2016) ........................................................... 10

*Shapiro v. Matrixx Initiatives, Inc.*,
    2011 WL 13047298 (D. Ariz. Sept. 26, 2011) ............................................................. 12

*Shenwick v. Twitter, Inc.*,
    282 F. Supp. 3d 1115(N.D. Cal. 2017)......................................................................... 15

*Sylebra Cap. Partners Master Fund Ltd., v. Everbridge, Inc.*,
    2024 WL 2107383 (C.D. Cal. Mar. 18, 2024) ............................................................. 17

*Tellabs, Inc. v. Makor Issues & Rts. Ltd.*,
    551 U.S. 308 (2007)...................................................................................................... 14

*Thomas v. Magnachip Semiconductor Corp.,*
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) ....................................................................... 16

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
    2013 WL 2247394 (C.D. Cal. May 9, 2013) ................................................................ 10

*Washtenaw Cty. Emples. Ret. Sys. v. Celera Corp.*,
    2012 WL 3835078 (N.D. Cal. Sep. 4, 2024) ................................................................ 17

*Weston Family P'Ship LLLP v. Twitter, Inc.*,
    29 F.4th 611, 615 (9th Cir. 2022) ................................................................................... 6

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)......................................................................................... 13

**Table of Abbreviations**

| Abbreviation or Acronym | Definition |
| --- | --- |
| ¶ | Paragraphs in the Second Amended Complaint |
| 2023 Q3 Earnings Call | Onsemi's Earnings Call on October 30, 2023 at 9:00 am E.T. |
| Class | All persons or entities who purchased or otherwise acquired Onsemi common stock during the Class Period (¶1) |
| Class Period | May 1, 2023 through October 27, 2023, inclusive |
| Company | ON Semiconductor Corporation |
| CW | Confidential Witness |
| El-Khoury | Defendant Hassane El-Khoury, CEO of Onsemi |
| EV | Electric Vehicle |
| KPI | Key Performance Indicator |
| Lead Plaintiff or Plaintiff | Lead Plaintiff Jeffery S. Lew |
| LTSA | Long Term Supply Agreement |
| MTD or Motion | Defendants' Motion to Dismiss Second Amended Complaint, filed October 10, 2024 (ECF 43) |
| OEM | Original Equipment Manufacturer |
| Onsemi | ON Semiconductor Corporation |
| Order Cancellation and Demand Uncertainty Risk Warnings | Risk warnings published in the 2019 Form 10-K and the 2020 Form 10-K regarding uncertainties in the timing and amount of customer orders (¶30) |
| SAC | Plaintiff's Second Amended Complaint, filed on September 6, 2024 (ECF 39) |
| SEC | U.S. Securities and Exchange Commission |
| SiC | Silicon Carbide |
| Trent | Defendant Thad Trent, CFO of Onsemi |

The SAC alleges Defendants knowingly or recklessly fostered a misimpression regarding the durability of Onsemi's customer contracts—the LTSAs.[1] Years before the Class Period, Defendants introduced Onsemi's LTSA as a uniform, take-or-pay agreement where order volume and pricing was locked in. By 2023, the market for semiconductors retreated from a pandemic boom and analysts routinely questioned the LTSAs' value and strength. Throughout the Class Period, Defendants misleadingly assured that LTSAs were "ironclad" and that during any renegotiation on volumes, the LTSAs' "structure" forced a "win" for the Company. Defendants' main argument in the MTD is to sow confusion about the meaning of a "win." However, Defendants admit that at least one massive LTSA customer's committed 2023 orders were "took [] out of" Onsemi's forecasts and not assumed "to recover in 2024." The SAC alleges facts regarding another LTSA customer who was permitted to indefinitely delay placing purchase orders quarter-after-quarter without repercussion. By any measure of a "win," the facts alleged in the SAC contradict Defendants' misstatements, including El-Khoury's statement that "we're not going to be left holding the bag." Investors agreed, asking "What Happened to LTSAs?" and noting a "Big Step Back In Confidence/Credibility[.]" The MTD also challenges scienter. However, the SAC alleges an overwhelming inference that Defendants knew or recklessly disregarded the contents and durability of LTSAs, anchored by Defendants' repeated admissions of the same. Thus, the MTD fails on each ground asserted and should be denied.

## STATEMENT OF FACTS

**I.    Onsemi Introduces LTSAs to Make Cancellation Losses "A Thing of the Past"**

Historically, Onsemi did not enter long-term supply agreements, hindering its ability to predict end-user demand and subjecting Onsemi to risk of cancellations on short notice. ¶¶29-30. Defendants warned investors of these risks in SEC filings. ¶30. During the chip

---

[1] Capitalized terms and abbreviations have the same meaning as set forth in the Table of Abbreviations above and the SAC. Unless otherwise stated, all emphasis is added and all internal citations, quotation marks, brackets, ellipses, and footnotes are omitted.

shortage in 2020, customers' procurement strategies artificially inflated demand signal in the semiconductor industry which caused financial and operational harm to semiconductor suppliers like Onsemi when redundant orders were cancelled. ¶36.

In 2021, Defendants introduced LTSAs to mitigate short-notice customer cancellations and increase demand visibility. ¶¶38-46. Defendants represented Onsemi's LTSAs as "take-or-pay" contracts that were "multiyear in duration, where both volume and pricing is locked in[.]" ¶39. Defendants did not caveat or carve out exceptions for particular customers when describing the LTSAs' terms to investors. *Id*. Instead, Defendants insisted that the LTSAs uniformly rendered the uncertainty in end-user demand and the cancellation of customer purchase orders that previously occurred "a thing of the past." ¶42.

**II.     In 2022, Defendants Amend Onsemi's Risk Warnings and Repeatedly Assure Investors LTSAs Prevent Losses from Unilateral, Customer Cancellations**

After introducing LTSAs, Onsemi ceased publishing Order Cancellation and Demand Uncertainty Risk Warnings in annual SEC filings. ¶¶47-48. Instead, Defendants made representations in Forms 10-K filed on February 14, 2022, and February 6, 2023, that the risks previously warned of were no longer risks, such as: "our current agreements, including orders subject to minimum purchase commitments under our longer-term supply arrangements, are not subject to cancellation, unless otherwise mutually agreed." ¶¶48-49.

Some investors were skeptical that LTSAs would "hold" during renegotiations when end-user demand was low. ¶51. Defendants assured that LTSAs were "legally binding" and that Onsemi's customers were liable for agreed-upon pricing and volumes. ¶52. Defendants continued to tout throughout 2022 that the LTSAs were "legal binding agreements with take-or-pay for volume and price" that guaranteed any renegotiation of purchase commitments would include a benefit for Onsemi that would "offset" concessions. ¶¶53-58. In other words, any LTSA renegotiation "has to be a win-win[.]" ¶65.

**III.    Customers Delay Orders Indefinitely Without an Offsetting Win for Onsemi**

Prior to the Class Period, Onsemi's LTSA customers were already unilaterally

2

cancelling or delaying volumes without mutual agreement and Defendants were not always obtaining a "win-win." ¶¶67-74. CW1, a former Onsemi employee with a 30-year tenure, worked as a Project Manager in the Advanced Solutions Group division in 2022 and 2023 supporting aerospace and defense customers. ¶67. CW1 recalled developing a product with a military customer in late 2022 that was scheduled to ramp up production in 2023 pursuant to an LTSA. ¶¶68-69. CW1, whose responsibilities included meeting with customers weekly to develop and qualify new products and establish production schedules for those products, stated that the bulk of the military customer's orders were scheduled to be ordered in February and March of 2023, but that "a quarter before" (*i.e.*, Q4 2022), Onsemi received notice the orders would not be placed. ¶¶68-71. CW1 alerted management to the situation, including a superior who reported directly to El-Khoury. ¶72. CW1 recalled that the response from management was "crickets" and described management as "shrugging their shoulders" at the situation in hopes that the order would come in 2024. *Id*. When CW1 left the Company months later, in July 2023, the military customer still had not placed the purchase orders required under the LTSA. *Id*. Before leaving Onsemi, CW1 reviewed Onsemi's LTSA and observed that, contrary to Defendants' assertions that the LTSA was watertight, "it doesn't hold water" because that there were no enforcement provisions that would force a customer to purchase the agreed upon volumes. ¶73.

**IV.    Defendants Reveal the Truth Regarding The LTSAs' Illusory Protection**

On October 30, 2023, Defendants shocked investors when revealing that LTSAs were not as durable and enforceable as previously described. ¶¶89-97. That day, El-Khoury stated that a SiC automotive OEM would not be taking delivery of $200 million of product in 2023 contemplated by an LTSA. ¶90. He further revealed that Onsemi's LTSAs allowed extension of the timeline for customers' performance under the LTSAs over an "longer term" of unspecified (even perpetual) duration. ¶92. When questioned about the SiC OEM, Defendants refused to provide further information as to when investors should expect the "win-win" that they previously represented occurred during every LTSA renegotiation.

3

¶92. This information corrected the false impression regarding the purported strengths of LTSAs that Defendants' materially false and misleading statements created, leading analysts to excoriate Defendants' transparency and revise their price targets downward. ¶¶96, 148-52. As a result, Onsemi's stock price dropped significantly, losing nearly 22% in a single trading day. ¶¶97, 155. Defendants later acknowledged Onsemi did not receive any corresponding "win" for the SiC OEM's 2023 order reduction—the order was simply "derisk[ed]" and Onsemi "took it out" of future forecasts. ¶¶98-99.

## ARGUMENT

The SAC plausibly alleges (1) materially false and misleading statements, and (2) a strong inference of scienter, with particularity. Because these are the only substantive elements of Plaintiff's claims that the Motion challenges (MTD at 6-17), it must be denied.[2] *See Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 778 (9th Cir. 2023) ("Falsity is subject to a particularity requirement and the *reasonable inference* standard of plausibility set out in *Twombly* and *Iqbal*, and scienter is subject to a particularity requirement and a *strong inference* standard of plausibility.") (Emphasis in original).

### I.    The SAC Adequately Alleges Defendants Made Material Misstatements

"[S]tatements and omissions are actionabl[e]" if "they directly contradict what the defendant knew at that time, or create an impression of a state of affairs that differs in a material way from the one that actually exists[.]" *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 948 (9th Cir. 2023); *Kui Zhu v. Taronis Techs. Inc.*, 2020 WL 1703680, at *4 (D. Ariz. Apr. 8, 2020) (same). Defendants who "tout positive information…are bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information[.]" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008-09 (9th Cir. 2018).

#### A.    Defendants Misled Investors Regarding LTSAs' Ability to Force "Wins"

Defendants' Class Period statements were materially false and misleading. To

---

[2] Defendants' Section 20(a) arguments are derivative of their 10(b) arguments and likewise fail. *Jackson v. Microchip Tech. Inc.*, 2020 WL 1170843, *12 (D. Ariz. Mar. 11, 2020).

understand why requires consideration of the period preceding the Class Period—context that Defendants improperly ignore. *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008) (statements "can become, through their context and manner of presentation, devices which mislead investors."); *see also Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) ("The veracity of a statement or omission is measured…by its ability to accurately inform rather than mislead prospective buyers.").

Historically, Defendants' SEC filings referenced Order Cancellation and Demand Uncertainty Risk Warnings containing a litany of detailed risks of not having LTSAs. ¶30. Such risks included that "customers may change their inventory practices on short notice for any reason" and that Onsemi could be left on the hook for customer "cancellation or deferral of product orders[.]" *Id*. In Onsemi's Form 10-Ks for 2022 and 2023, Defendants ceased issuing the Order Cancellation and Demand Uncertainty Risk Warnings. ¶¶47-49. Moreover, beginning in May 2021 and continuing through the Class Period, El-Khoury and Trent launched a multi-year campaign of touting to investors at conference after conference that Onsemi's susceptibility to demand risk was radically transformed by LTSAs. ¶¶38-46, 51-66. According to Defendants, LTSAs were "take or pay" and Onsemi was "not going to be left holding the bag." ¶¶39, 57, 61, 65. Defendants described Onsemi's LTSAs as uniform and did not carve out exceptions for particular customers. ¶39. Defendants repeatedly touted the LTSAs' purported strengths even in response to direct investor scrutiny (¶¶41-42, 51, 58, 78, 81, 83-84, 87) and even in the face of an acknowledged macroeconomic downturn for semiconductors (¶52, 66, 81, 84).

Defendants' campaign created a misimpression regarding the protection afforded by LTSAs that materially differed with reality. According to CW1, who personally read an Onsemi LTSA, there were no provisions that would require customers to "place its expected purchase orders" if the customer did not want to. ¶72. In fact, that undisclosed risk had already materialized ***before the Class Period***. Onsemi was informed "a quarter before" (Q4 of 2022) a customer subject to an LTSA deferred purchase orders scheduled

5

for 1Q23. ¶71. CW1 escalated this situation in "early" 2023 and was met with "crickets." By July 2023—*three quarters later*—the LTSA customer had still not placed any orders. ¶72. Accordingly, the LTSA's durability was illusory. Defendants' end-of-Class Period admissions corroborate CW1's observations. During the 2023 Q3 Earnings Call, El-Khoury blanketly described the process for when any of "the LTSAs" were renegotiated and admitted that, unbeknownst to investors, Onsemi's LTSAs allowed the timeline for customers' performance to be extended over an indefinite (even perpetual) "longer term[,]" making it illusory. ¶92. This articulation of Onsemi's renegotiation process had never been communicated to investors previously and was at loggerheads with Defendants' messaging that Onsemi *always* negotiated a win-win because of the LTSAs' supposed "ironclad" provisions. ¶87. Defendants' admissions revealed that, on a discretionary "case by case" basis, Defendants could and would cede a "win" for Onsemi during renegotiations. ¶92.

Thus, the following statements were materially false and misleading when made:[3]

- ¶78 (El-Khoury, May 1, 2023): Misstating that LTSAs made automotive revenues "very, very predictable" because the LTSA included "benefit" and "align[ment]" on purchase "volume through the duration of the LTSAs.";

- ¶81 (Trent, May 23, 2023): "If we can create a win-win with that customer, we'll try and help that customer. And there's got to be a win for both companies.";

- ¶83 (El-Khoury, Aug. 30, 2023): Misstating that Onsemi would only "take some [volumes] down and amend [an LTSA]" when "net-net, it's a win-win[;]" and misattributing that purported flexibility to "what the LTSAs have provided us[,]" namely, "the structure we put in" the LTSA which "forced" any amendment to the LTSA to put Onsemi "in a much better spot than we would have otherwise been.";

- ¶84 (El-Khoury, Aug. 30, 2023): Misstating that "[b]ecause the customer is legally liable" for committed volumes, that LTSAs ensured a "win-win" because customers "have a small bag to carry also, not just ON Semi."; and

---

[3] The alleged misstatements in the SAC do not resemble the statements in Defendants' preferred case. MTD at 4, 10 (citing *Weston Family P'Ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 615, 620 (9th Cir. 2022) (no duty to disclose immediately because earlier statements were "qualified," "factually true" and "vague")).

6

- ¶87 (El-Khoury, Sept. 7, 2023): In response to a question of "[h]ow iron clad are" the LTSAs, misstating that renegotiated purchase volumes under an LTSA "has to be a win-win." Further, "So all of these are win-win. Now, if the customer is not interested in a win-win, but a win/lose, that's where it's ironclad. It's a legally binding agreement that both parties in a win-win will renegotiate an amendment. But net of that, we're not going to be left holding the bag."

*See Kui Zhu*, 2020 WL 1703680, at *4 (statement actionably misleading where it "may create in the minds of a reasonable juror the impression of a durable long-term, majority-type relationship."); *In re Apollo Grp. Inc. Sec. Litig.*, 395 F. Supp. 2d 906, 921 (D. Ariz. 2005) (falsity alleged where statements "painted a picture that was contrary to the facts").

Crucially, the misleading nature of Defendants' statements is borne out by analyst reaction. ¶¶79(e), 82(e), 85(e), 88(e). Indeed, "the perceptions of analysts are an acceptable measure of what reasonable investors would have understood[.]" *Alich v. Opendoor Techs. Inc.*, 2024 WL 839146, *7 (D. Ariz. Feb. 28, 2023), *vacated in part*, 2024 WL 2153529 (D. Ariz. May 14, 2024); *Jaeger v. Zillow Grp., Inc.*, 644 F. Supp. 3d 857 (W.D. Wash. 2022); *accord Miller*, 519 F.3d at 886 (statement's misleadingness demonstrated by "[t]he fair and reasonable implication an ordinary investor would derive from" it). Here, analysts were gravely misled by Defendants' statements, as evidenced by their surprise and confusion when Defendants disclosed that Onsemi's LTSA renegotiations were handled on a "case by case" basis that was not always "win-win," including a $200 million reduction in FY 2023 LTSA revenues. *E.g.*, ¶¶92, 148 (UBS: "**You guys had always talked** about LTSAs being legally binding and it didn't seem like they would be subject to any changes in EV ramps. **It** [Defendants' misstatements] **sounded like a little bit of a higher bar than what we hear from others** [in the industry]."); ¶149 (William Blair: "protection from LTSAs is in question" and "yesterday's surprise brings the power of LTSAs back down to earth."); ¶150 (Truist analyst reporting that "the [revenue] miss **contrasts [management's] confident messaging**" and "LTSAs are proving not bulletproof."); ¶152 (UBS: "[t]he bloom is 'off the rose' with respect to ON's long term supply agreements" and "this Q shows the very limited value of LTSAs[.]"). Thus, the alleged misstatements "create[d] an

7

impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *In re Facebook, Inc.*, 87 F.4th at 948.

### B.    Defendants' Misstatements Were Not Immaterial Puffery

Defendants argue that the alleged misstatements are inactionably "vague" and "aspirational"—*i.e.*, that the statements are immaterial puffery. MTD at 6. However, the statements (*e.g.*, that LTSAs ensured "there's got to be a win for both companies[;]" if customers want "a win/lose, that's where it's [*i.e.*, the LTSA] ironclad[;]" and that because of LTSAs, "we're not going to be left holding the bag[,]" *etc.*) were capable of objective evaluation. Indeed, CW1 confirmed that nothing in the LTSAs required customers to place purchase orders (¶73) and Defendants admit they wrote off $200 million in 2023 LTSA revenue from a SiC OEM, conceding there was no "win" during renegotiation (¶¶98-100). Defendants' misstatements are far more concrete than statements found sufficiently alleged elsewhere. *See In re Quality Sys.*, 865 F. 3d 1130, 1143-44 (9th Cir. 2017) (statements that pipeline was "very consistent," "deep," and "keeps growing" actionable); *Alich*, 2024 WL 839146, *6, *8 (that algorithm can "dynamically adjust," "really works," was "responding very quickly" not puffery); *Orbis Glob. Equity Fund Ltd. v. NortonLifelock Inc.*, 2023 WL 1800963, at *18 (D. Ariz. Feb. 7, 2023) (assertion that "strong business activity" was driving deferred revenue not puffery). Also, unlike in Defendants' cases (MTD at 6), the misstatements here were made "during earnings calls" "in response to specific questions asked by financial analysts" and thus, "cannot be" puffery. *Glazer*, 63 F.4th at 770-71. Indeed, the analysts *were* materially deceived by Defendants' misstatements. ¶¶147-52.

### C.    Defendants' Misstatements Were Not Inactionable Opinions

*First*, the alleged misstatements are not "opinions" (MTD at 7) as they all "express certainty" regarding LTSAs' purported benefits to customer renegotiation and *not one* of the alleged misstatements uses "opinion-qualifying language" like "I think or I believe." *In re QuantumScape Secs. Class Action Litig.*, 580 F. Supp. 3d 714, 739 (N.D. Cal. 2022) (statements that company "has addressed" and "can address" problems, "has released"

8

data, tests were not "compromised," product had "high energy density but low cost" that functions at "much higher" temperature and were "faster" than competitors and "capable of performing under uncompromised test conditions" were not opinions).

Second, even if the alleged misstatements were "opinions" (they are not), Defendants' argument fails as it evaluates the statements' misleadingness under the wrong standard. See MTD at 7 (advancing subjective/objective falsity test). Defendants' standard concerns misrepresentations of professed belief. Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 575 U.S. 175, 185 (2015) (subjective/objective falsity test applies to statements like "I believe our TVs have the highest resolution available"). Plaintiff's theory is not that Defendants published opinions they did not subjectively believe, but that the statements created a misimpression of the LTSAs' strengths and weaknesses. That is quintessentially an "omissions" theory. See In re LUCID Grp., Inc. Sec. Litig., 2024 WL 3745605, at *13 (N.D. Cal. Aug. 8, 2024) ("A statement is misleading by omission if it affirmatively creates an impression" that materially differs from reality). "Omissions" opinions are evaluated under a different standard. See Lowthorp v. Mesa Air Grp. Inc., 2021 WL 3089118, at *10 (D. Ariz. July 22, 2021) ("when a plaintiff relies on a theory of omission, the plaintiff must allege facts going to the basis for the issuer's opinion whose omission makes the opinion statement at issue misleading" when read fairly and in context). Having argued the wrong standard, Defendants cannot argue a new one on reply.[4]

Third, Plaintiff alleges the "facts going to the basis" of Defendants' purported "opinion[s]" whose "omission makes the opinion … misleading" in fair context. Id. Specifically, Plaintiff alleges that Defendants admitted early and often their intimate knowledge of every facet of the LTSAs and their performance. ¶103 (El-Khoury admits he, Trent, or Head of Sales signs each North American LTSA); ¶109 (El-Khoury admits to "monitor[ing]" all of "the LTSAs that customers are signing, which includes volume");

---

[4] Recitation of a legal test without exposition (MTD at 7 n. 2), waives the argument. In re Allstate Life Ins. Co. Litig., 2013 WL 5974916, at *1 (D. Ariz. Nov. 5, 2013).

9

¶111, 132 (El-Khoury admitting he and Trent review "about 30 pages of KPIs" and that El-Khoury "personally review[s]" all metrics relating to SiC customers which "are 100% on LTSA"); ¶112 (El-Khoury admits he and Trent review detailed analytics on customer orders "more than once a week in order to make sure we don't miss anything"). Indeed, for scienter purposes "[w]hen the defendant is aware of the facts that made the statement misleading, he cannot ignore the facts and plead ignorance of the risk." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1094 (9th Cir. 2010); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1258-59 (W.D. Wash. 2009) (admitted "access to information" demonstrated source of "actual knowledge" of same); § II., *infra*. And falsity and scienter are treated "as a single inquiry[] because" both elements "are generally inferred from the same set of facts." *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2013 WL 2247394, at *11 (C.D. Cal. May 9, 2013). Thus, the SAC sufficiently alleges facts going to the basis of Defendants' understanding of what the LTSAs contained (and *did not contain*) and, thus, the unreasonableness of Defendants' misstatements that LTSAs could always generate a "win-win." *See Maverick Fund, L.D.C. v. First Solar, Inc.*, 2018 WL 6181241, at *8 (D. Ariz. Nov. 27, 2018) (statement that solar farms were "progressing very well" actionable "if Defendants knew the solar farms were not progressing well").

### D.    Defendants' Truth-on-the-Market Argument Fails

Defendants argue that other disclosures preceding the alleged misstatements inoculate any misimpression. MTD at 7-8, 11-12. This is an impermissible "truth on the market" defense which is "too fact-specific for resolution on a motion to dismiss." *Shankar v. Imperva, Inc.*, 2016 WL 2851859, at *8 (N.D. Cal. May 16, 2016). Moreover, the argument is wrong. Defendants chiefly assert that the loss of $200 million in 2023 LTSA-backed SiC orders was "entirely consistent" with a win-win. MTD at 8, 11. This is so, supposedly, because Onsemi disclosed that a win-win could take the form of "recover[ing] the business [] with others[,]" shipping product "to somebody else[,]" or "mov[ing] that capacity elsewhere[,]" and Onsemi purportedly was going to shift the OEM's SiC orders

10

"in [fiscal] '24 and the longer term" to other customers "in a different mix[.]" *Id.* at 8, ¶98. However, Defendants never stated that the OEM's **2023** orders were consumed by another customer, or that Onsemi had somehow negotiated some other win with the original OEM to account for those 2023 orders. Just the opposite. They admit that "we're not assuming that we're pushing it [the $200m in 2023 orders] out and it's going to recover….we just took it out of the number and the baseline is going to be just different." ¶98. Plaintiffs never allege that Onsemi had failed to achieve a win-win for the OEM's committed 2024 orders. Moreover, Defendants admitted there was no "win-win" from the SiC OEM in 2023. ¶92 (claiming Onsemi generally seeks "win-wins" "*outside of silicon carbide in Q4*").

Regardless, Defendants have the burden of proving earlier disclosures sufficed in "degree of intensity and credibility" to "effectively counterbalance any misleading impression created by [their] one-sided representations." *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 2023 WL 1769810, at *5 (S.D. Cal. Feb. 2, 2023). Defendants' misstatements belie the notion that a "win-win" would include renegotiations where $200 million is simply "derisk[ed]" and "[taken] out of" (¶98) forecasts. *E.g.*, ¶83 ("the structure we put in" LTSAs "forced" amendments to put Onsemi "in a much better spot"), ¶87 ("if the customer is not interested in a win-win, but a win/lose, that's where it's ironclad").

Defendants also ask the Court to accept their post-hoc, self-serving description of the SiC order loss as a "recent reduction." MTD at 8. This conflicts with allegations that Defendants repeatedly admitted always receiving warnings "6 months, 9 months" in advance of LTSA amendments. ¶140; ¶¶57, 83, 87 (same); *see also* ¶¶53, 63, 81, 84, 92, 138-39. They still admit this. MTD at 8, 12. Reasonable inferences must be drawn in Plaintiff's favor. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Here, that reasonable inference is that Defendants had 6 or 9 months advance notice from the OEM, but continued misleading investors about the LTSAs' durability by omitting that LTSA customers were cancelling or indefinitely delaying orders. ¶141. Additionally, Defendants' fixation on the timing of when the SiC OEM notified Onsemi is beside the

11

point. Defendants fail to grapple with the fact that the 2023 lost orders exposed the risks Defendants concealed regarding the LTSAs and their renegotiations. *See* ¶¶148-152.

### E.    The PSLRA Safe Harbor Does Not Apply to the Alleged Misstatements

Defendants challenge three statements as forward-looking. MTD at 13 (citing ¶¶81, 84, 87).[5] However, the PSLRA safe harbor is inapplicable because Plaintiff alleges that Defendants misstated the state of Onsemi's affairs existing at the time of the alleged statements. *See In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 817 (C.D. Cal. 2011) (These statements are not allegedly misleading because they failed to predict the future, but because "they concealed or downplayed known present risks") (citing cases); *Shapiro v. Matrixx Initiatives, Inc.*, 2011 WL 13047298, at *4 n.7 (D. Ariz. Sept. 26, 2011) (a misstatement is "not protected under the forward-looking statement defense, where it fails to disclose known risks material to the company"). Furthermore, contrary to Defendants' assertions (MTD at 13), the SAC alleged Defendants' actual knowledge of Onsemi's LTSAs. *See* Argument §§I.A., I.C., *supra*, §II, *infra*.

### F.    The SAC's CW Allegations Are Sufficiently Detailed and Corroborated

Defendants' argument—that CW1 "was [not] in a position to have personal knowledge of LTSAs" (MTD at 9)—is wrong. CW1 is a former Onsemi employee of 30 years (¶67), including as a Project Manager (¶68), that was employed for approximately half the Class Period, **who personally read the Company's LTSA** (¶73), and who regularly met with and worked with an LTSA customer to develop a production schedule

---

[5] Defendants therefore waive the safe harbor's application as to the other statements. *McCune v. JD Towing LLC*, 2022 WL 16635373, at *2 (D. Ariz. Nov. 2, 2022) (Brnovich, J.) (issues cannot be "raised for the first time" on reply). Moreover, the unchallenged statements contain explicitly backward or present-looking language. *See* ¶78 (describing LTSA benefits); ¶83 ("what the LTSAs *have provided* us" "the structure *we put in*, given that *it's a legally binding agreement, have forced* that…"); ¶84 ("the customer *is legally liable… they have* a small bag to carry also, not just ON Semi"); ¶87 (describing LTSAs in response to question asking "[h]ow iron clad are" they presently, including that "*it's ironclad*" and "*It's a legally binding agreement*"). All non-forward-looking aspects "are not protected by the safe harbor[.]" *Quality Sys.*, 865 F.3d at 1141-42.

12

pursuant to the LTSA's terms (¶¶68-69). CW1 attended quarterly meetings with El-Khoury and Trent where LTSAs were "all [El-Khoury] really spoke about." ¶107. Further, the SAC contains allegations that corroborate CW1's account that the LTSAs lacked enforcement mechanisms. *Compare* ¶¶71-72 (LTSA customer failing to place required purchase orders without consequence or win for the Company), *with* ¶¶90-91 (LTSA customer cancelling $200 million of purchases without consequence or offsetting benefit). *Glazer*, 63 F.4th at 767 ("corroborating facts" are factors to be considered). Thus, the SAC describes CW1 "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Quality Sys.*, 865 F.3d at 1145. That is all that is required. *Glazer*, 63 F. 4th at 771 (alleging CW's title, dates of employment, and job responsibilities as a Texas salesperson, sufficient to demonstrate "personal knowledge that [the company] lost its largest customer in Texas").[6]

Defendants' other criticisms of CW1 also fail. For example, Defendants criticize CW1's word choice of the term "penalty." MTD at 10. The Court can credit CW1's testimony that the LTSA "doesn't hold water," regardless of CW1's understanding of the phrase "penalty" as a term of art under contract law, because CW1 personally reviewed the LTSA and observed nothing therein preventing customers from indefinitely delaying purchase orders without consequence. Ironically, Onsemi's discarded Order Cancellation and Demand Uncertainty Risk Warnings described similar terms as "penalties." ¶30 ("cancellation or deferral…could result in…penalties"). Further, Defendants' belittling of CW1's tenure makes no sense. MTD at 10-11. CW1 described a state of affairs regarding

---

[6] Defendants' cases are inapposite. MTD at 9-10 (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995-98 (9th Cir. 2009)) (CWs not credited where "not positioned to know the information alleged," and reported only "triple hearsay"); *Kipling v. Flex Ltd.*, 2020 WL 2793463, at **15-17 (N.D. Cal. May 29, 2020) (discounting only CWs where *no information* described basis of knowledge, but crediting others); *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020) (CW left "well before" relevant period and "lacks *any* detail"); *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (no corroboration for statement that "100% that hospitals were cutting back").

the LTSAs' force and effect that manifested before all of the alleged misstatements.

## II.    The Complaint Alleges a Strong Inference of Scienter

To plead scienter, Plaintiffs must show "that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rts. Ltd.*, 551 U.S. 308, 314 (2007). This is established through alleging actual knowledge or "[r]ecklessly turning a blind eye to impropriety[.]" *In re VeriFone Holdings, Inc., Sec. Litig.*, 704 F.3d 694, 708 (9th Cir. 2012).[7] Defendants are deliberately reckless when they "had reasonable grounds to believe material facts existed that were misstated or omitted" but "failed to obtain and disclose such facts although [they] could have done so without extraordinary effort." *In re Mattel, Inc. Sec. Litig.*, 2021 WL 1259405, at *7 (C.D. Cal. Jan. 26. 2021). Plaintiffs' allegations must be "taken collectively" and "holistically." *Tellabs*, 551 U.S. at 326. An inference is "strong" if it is "at least as likely" as opposing ones. *Id*. at 324, 328-29. The inference "need not be irrefutable, *i.e.*, of the smoking-gun genre[.]" *Id.* at 324.

**Defendants' Numerous Admissions of LTSA Review and Renegotiation Support Scienter**: The SAC's allegations "may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information." *Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 2024 WL 3708800, at **15-16 (D. Ariz. Aug. 7, 2024) (scienter where defendants with "leadership roles" tracked metrics "on a granular basis"). Defendants admit they were responsible for executing LTSAs. ¶103; *see also Sea*, 2024 WL 3708800, at *16 (defendants "served as [] signatory"). Defendants also admit to monitoring all LTSAs because it was imperative to Onsemi's business. ¶109 ("the way I monitor that is, one, the LTSAs that customers are signing"). Defendants admit to meticulously scrutinizing customers' performance on their contracts—including SiC contracts, which were 100% LTSAs. ¶111 ("Thad [Trent] and I

---

[7] Plaintiff need not plead motive. *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 707 (9th Cir. 2021) ("stock sales" unnecessary); *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) (complaint lacking "motive allegation may still" survive).

14

look at about 30 pages of KPIs"), *id.* (regarding SiC, El-Khoury stated "I personally review those metrics" as both "a technology person," and as CEO); ¶112 (El-Khoury admitting, in response to question about cancellation visibility, "I have analytics to be able to see…both Thad and I review it more than once a week in order to make sure we don't miss anything"). Defendants also admit that they personally "get a call" from LTSA customers well in advance of any LTSA renegotiations and that they were intimately involved in those discussions. ¶¶53-55, 57-58, 81, 83-84, 138-41. CW1 corroborated that LTSAs required advance notice of customer cancellations, and that such notice was received. ¶¶71, 142.

Accordingly, the SAC alleges a strong inference that El-Khoury and Trent knew the contents of the LTSAs and the quantum of protection LTSAs afforded Onsemi during renegotiations. *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, at 601-02 (N.D. Cal. 2019) (finding scienter based on defendant CEO and CFO's "positions" where they "touted intimate knowledge" and tracked relevant data); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1147 (N.D. Cal. 2017) (defendant's statements "strongly imply that he had access to the disputed information"). This inference is bolstered further by the fact that Defendants' 2023 compensation was tied to SiC LTSA performance. ¶113. *Scheller v. Nutanix, Inc.*, 2020 WL 5500422, at *10 (N.D. Cal. Sep. 11, 2020) (bonuses' ties to certain metrics supported inference defendants "were aware of" those metrics).

**El-Khoury's Admission That LTSA Renegotiations Could Generate Illusory "Wins" Supports Scienter**: After the Class Period, Defendants admitted the LTSAs afforded discretion, on a "case by case" basis, to extend the timeline for customer performance (*i.e.*, Onsemi's "win") over an undefined "longer term," making it illusory. ¶92. This supports scienter. *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at **6, 10 (N.D. Cal. Nov. 4, 2020) (scienter inferred from "an 'I knew it all along' type of admission"); *Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020) (scienter pleaded where defendants "later admitted they knew about problems" when statements were made); *Thomas v. Magnachip Semiconductor Corp.,* 167 F. Supp. 3d

15

1029, 1043 (N.D. Cal. 2016) (similar); *Middlesex Ret. Sys.v. Quest Software Inc.,* 527 F. Supp. 2d 1164, 1189 (C.D. Cal. 2007) ("a later statement may suggest that a defendant had…knowledge of the falsity" where inconsistent with defendant's earlier statement).

Defendants' admissions sharply contrast with misstatements, made approximately two months before the end of the Class Period, that misled investors to believe LTSAs were "ironclad" and never "win-lose." ¶¶83-84, 87. Especially when Defendants admittedly received notice 6 to 9 months in advance of cancellations. ¶¶138-44. This further bolsters a scienter inference. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1232-33 (9th Cir. 2004) (reasonable to "infer from these admissions that, even as it was making optimistic statements to the public, Oracle had known" contradictory facts); *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *15 (C.D. Cal. June 9, 2016) ("Temporal proximity of an allegedly fraudulent statement or omission and a later disclosure can be circumstantial evidence of scienter."); *Apple*, 2020 WL 6482014, at *11 ("magnitude and timing of the decline bolsters the [scienter] inference").

**The Core Operations Doctrine Supports Scienter**: Defendants' "primary focus" and "core business" was "automotive" and SiC business and "obtaining" LTSAs. ¶¶131-33. Indeed, committed LTSA revenue in 2023 was double Onsemi's 2022 revenue. ¶130; ¶¶134-35 (half was SiC, and 20% of SiC was OEM who cancelled its 2023 orders). Further, CW1 had "direct contact" (MTD at 14) with El-Khoury and Trent and confirmed El-Khoury "talked about [LTSAs] all the time…that's all he really spoke about." ¶107. CW1's account is corroborated by the SAC which alleges Defendants' incessant discussion about LTSAs and their detailed familiarity with them. ¶¶38-46, 51-55, 116-18.[8]   Under these circumstances, it "would be absurd" to infer Defendants did not understand the LTSAs' contents and whether they could guarantee a win-win. *See Sea*, 2024 WL 3708800, at *16

---

[8] *Contra* MTD at 15-16 (citing *Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First Solar Inc.*, 2023 WL 4161355, at *5 (D. Ariz. June 23, 2023) (allegations "merely emphasize[] the importance of the [issues]" without more)).

16

(scienter pleaded where defendants admitted detailed involvement in core business); *Longo v. OSI Sys., Inc.*, 2021 WL 1232678, at *9 (C.D. Cal. Mar. 31, 2021) (scienter adequately pled where defendants "were intimately familiar" with turnkey business and "regularly made statements touting" same). The SAC's scienter inference is especially strong since Defendants' misstatements were abjectly false and frequently repeated. *QuantumScape*, 580 F. Supp. 3d at 741 (statements "completely at odds with reality" "made over and over" supported scienter); *In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, at *13 (N.D. Cal. Jan. 6, 2022) (defendants plausibly knew statements "were not true by their nature"); *Washtenaw Cty. Emples. Ret. Sys. v. Celera Corp.*, 2012 WL 3835078, at *3 (N.D. Cal. Sep. 4, 2024) (Defendants' wording "suggests they understood what was going on").

**Holistic Analysis**: Here, the SAC alleges that during a market downturn, when Defendants knew the LTSAs' ability to stem order losses was material to investors (¶51), and Defendants' credibility was tied to Onsemi's LTSAs which they had extolled for years, the Defendants knowingly or recklessly overstated the LTSAs' ability to always generate a "win." "[C]oncealing bad news in the hope that it will be overtaken by good news" presents a strong inference of scienter. *Luo v. Spectrum Pharms., Inc.*, 2024 WL 4443323, at *15 (D. Nev. Oct. 7, 2024). The competing inference—that Onsemi's CEO and CFO were clueless as to the LTSAs' terms and ability to shape renegotiations (despite signing them)—is beyond belief. Defendants' improper invocation of stock repurchases never alleged does not alter that analysis (especially since no insider sales are alleged). *Apple*, 2020 WL 6482014 at *12 (stock repurchases of $1billion did not negate scienter and distinguishing Defendants' cases (MTD at 16-17)).

**CONCLUSION**

Wherefore, the Court should deny Defendants' Motion to Dismiss the SAC.[9]

---

[9] If the Court grants any aspect of the Motion, Plaintiff respectfully seeks leave to amend. *Sylebra Cap. Partners Master Fund Ltd., v. Everbridge, Inc.*, 2024 WL 2107383, at *10 (C.D. Cal. Mar. 18, 2024) (granting leave to file third amended complaint after dismissal).

DATED: November 22, 2024            Respectfully submitted,

                                    /s/ *Gary A. Gotto*

                                    **KELLER RORHBACK L.L.P**
                                    Gary A. Gotto
                                    3101 North Central Avenue, Suite 1400
                                    Phoenix, AZ 85012
                                    Tel: 602-484-0088
                                    Lax: 602-284-2822
                                    ggotto@kellerrohrback.com

                                    *Local Counsel for Lead Plaintiff*
                                    *Jeffery S. Lew and the Class*

                                    **LEVI & KORSINSKY, LLP**
                                    Shannon L. Hopkins (admitted *pro hac vice*)
                                    (State of Connecticut Juris No. 435545)
                                    Gregory M. Potrepka (admitted *pro hac vice*)
                                    (State of Connecticut Juris No. 437326)
                                    David C. Jaynes (to be admitted *pro hac vice*)
                                    (State of California Juris No. 338917)

                                    1111 Summer Street, Suite 403
                                    Stamford, CT 06905
                                    Tel.: (203) 992-4523
                                    Email: shopkins@zlk.com
                                    Email: gpotrepka@zlk.com
                                    Email: djaynes@zlk.com
                                    Email: cvrichthofen@zlk.com

                                    *Lead Counsel for Lead Plaintiff*
                                    *Jeffery S. Lew and the Class*

18