David B. Rosenbaum (009819)
Joseph N. Roth (025725)
Alexandria N. Karpurk (037029)
OSBORN MALEDON PA
2929 N. Central Ave., Ste. 2000
Phoenix, Arizona 85012
(602) 640-9000
drosenbaum@omlaw.com
jroth@omlaw.com
akarpurk@omlaw.com

Mark R.S. Foster (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
(650) 470-4500
Mark.Foster@skadden.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey S. Lew, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ON Semiconductor Corporation; Hassane El-Khoury; and Thad Trent,<br><br>Defendants. | **CLASS ACTION**<br><br>CASE NO.: 2:24-cv-00594-SMB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Oral Argument Requested |

## **TABLE OF CONTENTS**

Page

Table of Authorities................................................................................................ ii

Table of Abbreviations .......................................................................................... iv

I.    PRELIMINARY STATEMENT................................................................... 1

II.   PLAINTIFF FAILS TO STATE A SECTION 10(b) CLAIM ..................... 1

    A.   Plaintiff Fails to Plead a Materially False or Misleading
         Statement ........................................................................................... 1

         1.   The challenged statements are not actionable......................... 1

         2.   Plaintiff has not shown that the challenged statements
              were materially misleading when made.................................. 2

    B.   Plaintiff Also Fails to Plead Facts Giving Rise to a Strong
         Inference That Any Defendant Acted With Scienter ......................... 7

         1.   Plaintiff does not satisfy the PSLRA's actual
              knowledge test....................................................................... 8

         2.   Plaintiff fails to allege facts showing scienter. ...................... 8

         3.   The lack of an alleged motive undermines an inference
              of scienter. ............................................................................ 9

         4.   Plaintiff's litany of "must have known" allegations
              fail. ........................................................................................ 9

         5.   Holistically, Plaintiff's scienter allegations fail................... 11

III.  THE SAC SHOULD BE DISMISSED WITH PREJUDICE ..................... 11

i

## TABLE OF AUTHORITIES

Page(s)

### CASES

*In re Apollo Group Inc. Securities Litigation*,
395 F. Supp. 2d 906 (D. Ariz. 2005)................................................................. 5

*In re Apple Inc. Securities Litigation*,
No. 19-cv-02033-YGR, 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020)................. 10

*Berson v. Applied Signal Technology, Inc.*,
527 F.3d 982 (9th Cir. 2008).......................................................................... 11

*In re Century Aluminum Co. Securities Litigation*,
729 F.3d 1104 (9th Cir. 2013).......................................................................... 7

*In re Cloudera, Inc. Securities Litigation*,
121 F.4th 1180 (9th Cir. 2024).......................................................................... 4

*In re Cutera Securities Litigation*,
610 F.3d 1103 (9th Cir. 2010).......................................................................... 8

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) ....................................................................................... 11

*Espy v. J2 Global, Inc.*,
99 F.4th 527 (9th Cir. 2024)............................................................................. 6

*Evanston Police Pension Fund v. McKesson Corp.*,
411 F. Supp. 3d 580 (N.D. Cal. 2019) ........................................................... 10

*Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*,
63 F.4th 747 (9th Cir. 2023)............................................................................. 7

*Homyk v. ChemoCentryx, Inc.*,
No. 21-cv-03343-JST, 2023 WL 3579440 (N.D. Cal. Feb. 23, 2023).............. 2

*Kipling v. Flex Ltd.*,
No. 18-CV-02706-LHK, 2020 WL 2793463 (N.D. Cal. May 29, 2020)......... 1, 6

*Kui Zhu v. Taronis Technologies Inc.*,
No. CV-19-04529-PHX-GMS, 2020 WL 1703680 (D. Ariz. April 8, 2020).......... 5

*Laborers District Council Construction Industry Pension Fund v. Sea Ltd.*,
No. CV-23-01455-PHX-DLR, 2024 WL 3708800 (D. Ariz. Aug. 7, 2024) ......... 10

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002).......................................................................... 10

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008).......................................................................... 5

*Nguyen v. Endologix*,
        962 F.3d 405 (9th Cir. 2020)............................................................................ 1, 6

*In re NVIDIA Corp. Securities Litigation*,
        768 F.3d 1046 (9th Cir. 2014)................................................................................ 8

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
        575 U.S. 175 (2015) ................................................................................... 2, 3, 4

*Oregon Public Employees Retirement Fund v. Apollo Group Inc.*,
        774 F.3d 598 (9th Cir. 2014)........................................................................ 2, 7, 9

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*,
        759 F.3d 1051 (9th Cir. 2014).......................................................................... 9, 11

*Prodanova v. H.C. Wainwright & Co.*,
        993 F.3d 1097 (9th Cir. 2021)................................................................................ 9

*Retail Wholesale & Department Store Union Local 338 Retirement Fund v.
        Hewlett-Packard Co.*,
        845 F.3d 1268 (9th Cir. 2017)................................................................................ 2

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
        697 F.3d 869 (9th Cir. 2012)................................................................................. 3

*Ronconi v. Larkin*,
        253 F.3d 423 (9th Cir. 2001)......................................................................... 3, 5, 6, 8

*Shenwick v. Twitter, Inc.*,
        282 F. Supp. 3d 1115 (N.D. Cal. Oct. 16, 2017)...................................................... 10

*SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*,
        499 F. Supp. 3d 49 (D. Del. 2020) ......................................................................... 1

*In re Sorrento Therapeutics, Inc. Securities Litigation*,
        97 F.4th 634 (9th Cir. 2024)................................................................................. 4

*South Ferry LP, No. 2 v. Killinger*,
        542 F.3d 776 (9th Cir. 2008)............................................................................... 11

*Tellabs v. Makor Issues & Rights, Ltd.*,
        551 U.S. 308 (2007) ......................................................................................... 11

*Webb v. SolarCity Corp.*,
        884 F.3d 844 (9th Cir. 2018)....................................................................... 1, 8, 11

*Weston Family Partnership LLLP v. Twitter, Inc.*,
        29 F.4th 611 (9th Cir. 2022)........................................................................... 3, 11

*Zucco Partners, LLC v. Digimarc Corp.*,
        552 F.3d 981 (9th Cir. 2009)..................................................................... 6, 7, 9, 12

**STATUTES**

15 U.S.C. § 78u-5 ....................................................................................................... 8

iii

**TABLE OF ABBREVIATIONS**

| Abbreviation | Unabbreviated Term |
|---|---|
| ¶ | SAC paragraph number, unless otherwise specified |
| Class Period | Between May 1, 2023 and October 27, 2023 |
| CW1 | Confidential Witness |
| Defendants | onsemi, El-Khoury, and Trent |
| Doc. | Document filed on PACER in this action |
| El-Khoury | Individual Defendant Hassane El-Khoury |
| Ex. | Exhibits attached to the Declaration of Mark R.S. Foster |
| FY | Fiscal Year |
| LTSA | Long-Term Supply Agreement |
| MTD | Defendants' Motion to Dismiss (Doc. 43) |
| onsemi | ON Semiconductor Corporation |
| Opp. | Plaintiff's Opposition to Defendants' Motion to Dismiss (Doc. 45) |
| PSLRA | Private Securities Litigation Reform Act |
| SAC | Second Amended Complaint (Doc. 39) |
| SEC | Securities and Exchange Commission |
| SiC | Silicon Carbide |
| Trent | Individual Defendant Thad Trent |

I.    **PRELIMINARY STATEMENT**

Plaintiff dodges dispositive arguments, ignores controlling cases, and fails to answer the critical question: what constitutes a "win-win" renegotiation of an "iron-clad" LTSA? Without providing concrete definitions, Plaintiff cannot support his claim that the challenged "win-win" statements were objectively false and cannot credibly claim that such statements were any more than non-actionable, vague, and aspirational statements.

The two customer orders Plaintiff points to actually contradict his fraud allegations. In one, an adjustment to the order resulted in shipment of ordered product to a different customer—just the type of "win-win" that Defendants described during the Class Period. The other, involving a customer's delayed $5 million order, adds nothing. Although Plaintiff emphasizes that there was no "penalty" for the customer's delayed order, Plaintiff ignores that penalties are legally impermissible remedies and that the $5 million order is an immaterial fraction of onsemi's $2 billion quarterly reported revenue. Plaintiff also never says what ultimately happened with the order. Beyond these two examples, the Opposition presses decontextualized, conclusory, and straw man arguments while quoting stray lines from an onslaught of distinguishable cases that show no falsity here.

Plaintiff's scienter allegations are even more deficient. Plaintiff's primary assertion—that Defendants were aware of LTSAs—is undisputed but irrelevant. Plaintiff's scienter allegations are insufficient because they plead no particularized, contemporaneous facts showing Defendants knew their LTSA statements were lies. In cases like *Endologix* and *Webb*, the Ninth Circuit has been suspicious where a motive is lacking. This Court should be too and dismiss the case with prejudice.

II.    **PLAINTIFF FAILS TO STATE A SECTION 10(b) CLAIM**

   A.    **Plaintiff Fails to Plead a Materially False or Misleading Statement**

      1.    **The challenged statements are not actionable.**

The MTD cited on-point cases holding that "iron-clad" and "win" statements are too vague to be actionable. (MTD at 6:20-26 (citing *Kipling v. Flex Ltd.*, 2020 WL 2793463, at *13 (N.D. Cal. May 29, 2020) (win) (citing cases)); *SLF Holdings, LLC v.*

1

*Uniti Fiber Holdings, Inc.*, 499 F. Supp. 3d 49, 65 (D. Del. 2020) (iron-clad).    The Opposition ignores these analogous cases.  Instead, it cites other cases dealing with other words. (Opp. at 8:13-18.)  Those cases have no bearing on the statements challenged here.

Nor does the Opposition explain how the words "iron-clad" and "win-win" are "capable of objective verification," as the Ninth Circuit requires.  *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017).   In sports, a win is obvious based on scores and rules.  Here, Plaintiff avoids definitions, facts, principles, or on-point case law to guide the inquiry.  For good reason, the Ninth Circuit rejects securities fraud claims predicated on "vague," "inherently aspirational" statements like this.  *Id.* at 1276; *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014).  The Court should dismiss on this ground alone.

> **2.      Plaintiff has not shown that the challenged statements were materially misleading when made.**

Plaintiff's claim also fails because the challenged statements express opinions that are not actionable under *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015).  (MTD at 7:3-7.)  Plaintiff resists *Omnicare*, saying that the challenged statements are not opinions because they lack "'opinion-qualifying language' like 'I think or I believe.'"  (Opp. at 8:25.)  He is wrong.

Common sense, experience, and law belie Plaintiff's argument.  An opinion is "'a belief[,] a view,' or a 'sentiment which the mind forms of persons or things.'"  *Omnicare*, 575 U.S. at 183.  People opine all the time without using the magic words "I think or I believe."   That is why courts do not require any magic words to identify opinions as opinions.  *See, e.g.*, *Homyk v. ChemoCentryx, Inc.*, 2023 WL 3579440, at *14 (N.D. Cal. Feb. 23, 2023) (characterizing statement that drug's safety profile was "very acceptable" as an opinion—even without opinion-qualifying language).  That is the case here.

**(a) Plaintiff does not even attempt to plead subjective falsity.**

The obvious reason why Plaintiff resists the challenged statements analyzed as opinions is that he indisputably does not attempt to plead subjective falsity.  If the

2

statements are opinions, then Plaintiff's case fails on this ground alone under *Omnicare*, as he alleges no facts showing that "defendants believed that they made false or misleading statements." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 883 (9th Cir. 2012).

The Opposition tries to excuse his failure to plead subjective falsity, saying that the SAC relies on an "omissions" theory of liability "if the alleged misstatements were opinions." (Opp. at 9:4-19.)  If he is right that the challenged statements are not opinions, his point is irrelevant.  If he is wrong, it is fatal because the SAC does not attempt to satisfy *Omnicare*'s requirement that he "identify particular (and material) facts going to the basis for the [defendant's] opinion—facts about the inquiry the [defendant] did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context," which "is no small task for an investor."  575 U.S. at 194.  The Opposition says that the SAC alleges that Defendants "signed," "monitored," and "reviewed" things. (Opp. at 9:22-10:4.)  These conclusory and vague allegations are not "particular and material facts" underlying Defendants' challenged opinions.  This failure is dispositive.

**(b) Plaintiff also does not plead contemporaneous facts of objective falsity.**

Regardless of whether the statements are opinions, Plaintiff must also show "objective falsity." (MTD at 7:7-10.)  To be objectively false, a statement "must directly contradict what the defendant knew at that time" or "omit material information." (MTD at 6:9-12 (quoting *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022))).  The PSLRA requires pleading particularized facts showing "contemporaneous statements or conditions" that demonstrate "misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001).  Plaintiff does not do so.

The crux of Plaintiff's claim is that Defendants allegedly "misled investors regarding LTSA's ability to force 'wins.'" (Opp. at 4:24.)  Analyzing this claim necessarily requires the Court to consider what a "win-win" could look like, and whether such statements were false when made on May 1, May 23, August 30, and September 7, 2023.

Start with the meaning of "win-win."  Plaintiff nowhere explains what the term

3

means.  That matters because, as the Ninth Circuit recently ruled, plaintiffs have the burden to plead "a contemporaneous definition or explanation" of what the challenged term means in context.  *In re Cloudera, Inc. Sec. Litig.*, 121 F.4th 1180, 1188-89 (9th Cir. 2024).  Here, Plaintiff fails to "'plead facts' supporting his definitions of th[e] term[ ]." *Id.*  That is fatal.

Worse yet, Plaintiff asks this Court to ignore the defining examples which Defendants repeatedly provided to investors.  (Opp. at 10:23-11:17.)  Defendants offered examples of what a "win-win" renegotiation of a LTSA could look like, contemporaneously with the challenged statements and throughout the Class Period:

- A modification which was a "net benefit to the Company" (¶ 58);
- "Redirecting" the ordered product to another customer "so somebody gets more supply to meet their demand, and somebody is not going to get oversupply that's going to sit in inventory" (¶ 83); or
- Taking "10% fewer purchase orders of one product if, in exchange, the customer was willing to give onsemi a greater share of the customer[']s total business" ***or "extend the LTSA for 2 years"*** (¶ 58).

Plaintiff does not identify a single LTSA modification that did not result in a "win-win" under these definitions.  That is why Plaintiff says Defendants are making an improper, factual truth-on-the-market defense.  (Opp. at 10:19-22.)  That is a straw man argument.  Defendants are not asserting a "truth-on-the-market" defense here.  Rather, they are putting the statements "in context" as required.  *Omnicare*, 575 U.S. at 194; *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024).  The reason Plaintiff urges the Court not to consider context is obvious: it exposes his claim as baseless.

Plaintiff's vague allegations about two customer orders fare no better in trying to show Defendants misled investors about LTSAs' "ability to force wins." (Opp. at 4:24.)

***OEM Automotive Customer.***  Plaintiff principally relies on onsemi's disclosure after the Class Period that it was reducing its *going-forward* (i.e., not contemporaneous with the Class Period) projections for FY 2023 revenue target for SiC products from $1 billion to $800 million, because of a "single automotive OEM's recent reduction in demand."  From this, Plaintiff concludes that all LTSAs were "illusory."  (Opp. at 6:3.)

The Opposition retreats from Plaintiff's allegation that onsemi announced it was

4

"able to recover the business in a different mix, not with that OEM, but with others." (¶ 98.) That is entirely consistent with the type of LTSA modification Defendants earlier said could constitute a "win-win"—where they could "redirect" supply to other customers and "move that capacity elsewhere" such that it is "better for us and the customer."  (¶¶ 83, 139; Ex. 5 at 6.)  This dispositive argument is ignored.  (MTD at 8:3-4, 17-20.)

Plaintiff falls back to generalities suggesting that any doubt cast on the "durability" of LTSAs—whatever that means—makes out a fraud claim.  (Opp. at 6:3-7:8.)  Plaintiff's favored case on this point, *Kui Zhu v. Taronis Techs. Inc.*, 2020 WL 1703680 (D. Ariz. April 8, 2020) (Opp. at 4:20-21; 7:5), illustrates why he is wrong.  In *Kui*, a company issued a press release announcing a "major city contract" with San Diego in order to prop up the stock price and avoid NASDAQ from delisting its flagging stock.  *Id.* at *1.  The City of San Diego promptly demanded that the press release be "immediately removed" from the company's website and publicly stated that it "does not have any procurement contract" with the company.  *Id.* at *2.  That showed a direct contradiction and a fraud.  Nor is this case like *In re Apollo Grp., Inc. Sec. Litig.*, 395 F. Supp. 2d 906, 921 (D. Ariz. 2005) (Opp. at 7:7-8), where defendants allegedly misled investors about a government investigation.

Beyond his hindsight arguments about the OEM customer, Plaintiff tries to argue that onsemi must have known about the customer's reduction in demand when it made the challenged statements earlier, on May 1, May 23, August 30, and September 7, 2023.  (Opp. at 11:23-26.)  His argument is irrelevant in light of the "win-win" achieved (as discussed) and, in any event, is also speculative.  During the Class Period, Defendants said the binding nature of LTSAs would logically incentivize customers to call "6 or 9 months" ahead of any demand challenges to renegotiate the LTSAs before it was too late, i.e., when product was ready to ship and subject to payment.  (*See*, *e.g.*, ¶¶ 57, 83.)  Plaintiff asks the Court to assume this OEM therefore must have called onsemi six or nine months before the October 30, 2023 announcement.  (Opp. at 11:23-26.)  He pleads no contemporaneous facts showing whether that call actually happened, which is fatal under *Twitter* and *Ronconi*. His "unwarranted inferences" do not pass muster.  *Metzler Investment GMBH v. Corinthian*

*Colleges, Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008).  Plus, here again, he ignores context.  The October 2023 announcement lowered *future revenue guidance* based on this customer's "recent reduction," i.e., orders that would have shipped six or nine months after October 2023.  Why else would onsemi have lowered its estimate of *future revenues* as stated in the disclosure?  (¶ 117.)  Plaintiff does not say.  His silence speaks volumes.

Finally, Plaintiff argues that analyst reports written after the October 30 disclosure show the "misleading nature" of the LTSA statements.  (Opp. at 7:9-10.)  Plaintiff's cases stand for the proposition that analyst perceptions help show what investors understood about disclosures, but none do so in the context of analyzing falsity, let alone allowing retrospective analyst reports to substitute for contemporaneous facts showing falsity.

***Unspecified Military Contract.***  The only other order that Plaintiff raises in the SAC is a military contract with an unspecified customer who, according to CW1, allegedly did not purchase $5-6 million in product in early 2023.  An order from January or February 2023 (¶¶ 69, 79(a)) is not contemporaneous with any statement made in the Class Period spanning May 1 to October 27, 2023.  Again, this is fatal under *Twitter* and *Ronconi.*

Even putting that defect aside, CW1's vague allegations are not reliable for multiple reasons.  CW1 says that he read the military customer's LTSA and, in his opinion, "it doesn't hold water."  (¶¶ 6, 73.)  This is the sort of meaningless, hollow criticism—"alarming adjectives" and a CW's "negative opinion" that is "short on the facts"—that Ninth Circuit precedent holds cannot support valid fraud claims.  (MTD at 10:3-7 (quoting *Nguyen v. Endologix*, 962 F.3d 405, 416 (9th Cir. 2020); *Espy v. J2 Global, Inc.*, 99 F.4th 527, 537 (9th Cir. 2024).)  The Opposition ignores these controlling authorities.

Also, CW1 is not in a position to opine on these subjects in any case.  The Opposition does not dispute that he has no training in contract interpretation and was not involved in negotiating, renegotiating, or interpreting onsemi's contracts.  (MTD at 9:15-25.)  CW1 thus fails the CW reliability test articulated by the Ninth Circuit in *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).  *See also Kipling v. Flex Ltd.*, 2020 WL 2793463, at *16 (N.D. Cal. May 29, 2020) (finding CW allegations

6

unreliable where matters were beyond "firsthand knowledge") (ignored by Opp.).)

CW1 also fails *Zucco's* reliability test for other reasons. He reports vague hearsay (what others supposedly said about LTSAs) and left onsemi mid-Class Period. (MTD at 9:26-10:2); *Zucco*, 552 F.3d at 995-97. CW1 thus was not in a position to know whether onsemi and this unnamed customer had worked out some "win-win." (MTD at 9:15-22.)

The Opposition says that, according to CW1, the LTSA lacked provisions that would require customers to place orders. It is unclear what this conclusory allegation means beyond CW1's coupled allegation that "there was no penalty" where customers did not place orders. (¶ 72.) Defendants showed—and the Opposition does not dispute—that penalties are not enforceable as a matter of law, so their absence does not render LTSAs "illusory." (MTD at 10:11-25.) CW1's allegation about the absence of penalties (which are irrelevant) and orders not being placed by July 2023 (when he left onsemi) does not "exclude the possibility" of a "win-win," which is fatal under Rule 8. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). The allegations thus necessarily fall far short of the PSLRA's even more stringent pleading standards.

Plaintiff's reliance on cases like *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023) show what is missing. In *Glazer*, there were 20 corroborating CW accounts including the responsible salesperson with "personal knowledge that [the company] lost its largest customer in Texas" and another who provided insight about sales at a "company-wide level." *Id.* at 771. This case has one low-level CW who offers vague insights about one unnamed customer's relatively small order.

Finally, Plaintiff fails to show how that $5 million order was "material in light of the company's overall financial position," *Apollo*, 774 F.3d at 609, in a quarter where onsemi reported $1.96 billion in revenue. (MTD at 11.) Plaintiff does not respond to this point and thus concedes it. This is not a basis to infer a six-month securities fraud.

### B.    Plaintiff Also Fails to Plead Facts Giving Rise to a Strong Inference That Any Defendant Acted With Scienter

Plaintiff's claim fails for the additional, independent reason that he does not plead

7

a "strong inference" of scienter. (MTD at 12:18-17:12.) The pleading "bar set by *Tellabs* is not easy to satisfy." *Webb v. SolarCity Corp.*, 884 F.3d 844, 855 (9th Cir. 2018).

### 1. Plaintiff does not satisfy the PSLRA's actual knowledge test.

The MTD showed that the challenged "win-win" statements are forward-looking, which means Plaintiff must overcome the PSLRA's Safe Harbor by pleading facts showing each defendant had "actual knowledge . . . the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1)(B)(i); (MTD at 13:4-11). In response, the Opposition argues the "win-win" statements are not protected because Defendants supposedly "concealed or downplayed known present risks." (Opp. at 12:7-9.) Plaintiff does not specify what those supposedly known risks were, let alone plead facts which show Defendants knew of some undisclosed, materialized risks at the time they made each of the challenged "win-win" statements. His argument lacks merit and his cases are thus inapposite.

Betraying the weakness of that argument, Plaintiff alternatively contends Defendants had "actual knowledge of [o]nsemi's LTSAs." But "actual knowledge" is obvious: Defendants spoke about LTSAs during the Class Period. That is not the same as "actual knowledge" that the statements were false when made. Plaintiff's claim fails. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-12 (9th Cir. 2010); *Ronconi*, 253 F.3d at 429.

### 2. Plaintiff fails to allege facts showing scienter.

Recognizing that the SAC lacks any facts showing Defendants had "actual knowledge" of falsity with respect to the forward-looking statements, Plaintiff tries to dilute the standard for any challenged statements of present fact, equating it with simple "recklessness." (Opp. at 1:1-2; 14:7-9.) The Ninth Circuit's controlling rule requires more: either an "intent to deceive" or "*deliberate* recklessness," which "reflects some degree of intentional or conscious misconduct.'" *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014) (emphasis in original). Plaintiff's claim fails under this test.

The MTD showed the SAC lacks any allegations directly bearing on El-Khoury's or Trent's state of mind, let alone showing intentional or conscious misconduct. CW1 is not alleged to have spoken to either one, which is fatal under Ninth Circuit cases ignored

8

by Plaintiff. (MTD 14:5-11.) The Opposition retorts that CW1 "attended quarterly meetings with El-Khoury and Trent where LTSAs" were discussed. (Opp. at 13:1-2.) Such "generalized allegations" do not show scienter. *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1109 (9th Cir. 2021). Were those the same "quarterly meetings" where these individuals spoke to investors? If not, when were those meetings? What was said? The lack of "specificity about these meetings" means there is no factual basis to infer Defendants knew they lied. *Apollo*, 774 F.3d at 608.

### 3.    The lack of an alleged motive undermines an inference of scienter.

The MTD also showed that, under Ninth Circuit law, a "lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter." (MTD at 13:18-19 (quoting *Prodanova*, 993 F.3d at 1108).) In response, Plaintiff states in a footnote that he "need not plead motive" and then points to generic allegations about Defendants' compensation that are routinely rejected. (Opp. at 14 n.7, 15:15-18.) Ninth Circuit case law is clear on this point: "the bare assertion that executive-level bonuses were 'based in part' on . . . financial performance[,] . . . without more, [is] inadequate to meet the heightened pleading requirements." *Zucco,* 552 F.3d at 1005 (citation omitted).

Without a motive, why would Defendants risk their reputations and careers and subject themselves to potentially ruinous liability? Plaintiff has no answer. Courts will "overlook the failure to allege a plausible motive" in a case "[o]nly where a complaint otherwise asserts compelling and particularized facts showing fraudulent intent or deliberate recklessness." *Prodanova*, 993 F.3d at 1108. None are pled here.

### 4.    Plaintiff's litany of "must have known" allegations fail.

Without pled facts showing scienter, Plaintiff rests his fraud case on "must have known" allegations that courts routinely reject. The Opposition argues that Defendants had "actual access to the disputed information." (Opp. at 14:15-19.) What "disputed information"? The Opposition does not specify. For good reason, the Ninth Circuit has long rejected allegations about "access" to information where the allegedly contradictory information is not specified. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759

9

F.3d 1051, 1062-63 (9th Cir. 2014); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) ("[A]llegations of negative internal reports and . . . [access to] data are insufficient to demonstrate deliberate or conscious recklessness.").

Plaintiff's cases do not help him. For example, in *Laborers District Council Construction Industry Pension Fund v. Sea Ltd.*, 2024 WL 3708800 (D. Ariz. Aug. 7, 2024), management knew a product's performance was in "sharp decline" but still assured the public it was stable. *Id.* at *7-8. In *Evanston Police Pension Fund v. McKesson Corp.*, management claimed to have "intimate knowledge" about product prices and then misstated information about product prices. 411 F. Supp. 3d 580, 602 (N.D. Cal. 2019). In *Shenwick v. Twitter, Inc.*, management emphasized the importance of monitoring the number of active users and then misrepresented the number of active users. 282 F. Supp. 3d at 1146-47. This kind of direct misrepresentation of corporate performance is not analogous where Plaintiff is making a conclusory fraud claim—Defendants lied about LTSAs—based on conclusory allegations (LTSAs were "illusory").

Nor are the alleged "admissions," in fact, admissions. (MTD at 14:12-19.) Plaintiff argues that El-Khoury's statement that LTSAs were evaluated on a "case by case" basis is an "admission that LTSA renegotiations could generate illusory 'wins.'" (Opp. at 15:19-22.) How so? Evaluating a contract modification on a "case by case" basis is precisely how one can negotiate a "win-win." Defendants repeatedly disclosed that LTSAs could be renegotiated individually, discussing different types of "win-win" solutions, not a one-size-fits-all modification. Furthermore, none of the purported admissions "contradict" any of the challenged Class Period statements. *Twitter, Inc.*, 29 F.4th at 619; (MTD 14:12-28). This case is thus readily distinguishable from Plaintiff's cited cases where, unlike here, there were specific "I knew it all along" types of admissions. (Opp. at 15:23-16:3 (quoting *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *6, *10 (N.D. Cal. Nov. 4, 2020).)

The Opposition persists in arguing that changes to onsemi's risk factors support scienter, but ignores Defendants' argument and authority supporting the logical idea that no company would ever update disclosures if removal served as a tacit admission that the

10

language was false.  (MTD at 16:3-13 (citing cases).)  Plus, the risk disclosures stated LTSAs could be renegotiated if "mutually agreed."  (¶ 49; MTD at 16:14-16; Ex. 2 at 10.) That they could be, and were, modified is consistent with the disclosures.  That is not fraud.

Finally, Defendants cannot meet their burden to show scienter by relying on the core operations theory.  "Proof under this theory is not easy," *Intuitive Surgical*, 759 F.3d at 1062, and cases that rely on the core operations theory, without more, are "exceedingly rare," *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th Cir. 2008).  *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008) is the leading precedential case where the theory was satisfied by allegations that executives would certainly have known that their largest contract had been canceled when their factory was a "ghost town" and 80% of the company's revenue was in jeopardy.  *Id.* at 988.  The Opposition dodges *Berson*, which highlights what is missing here, while ignoring that onsemi indisputably grew its automotive revenue (driven by SiC) sequentially and year-over-year.  It never turned into a "ghost town" or anything close to that.  The core operations theory does not give Plaintiff a free pass under the PSLRA here.  That leaves Plaintiff with nothing.

### 5.    Holistically, Plaintiff's scienter allegations fail.

Under a separate, "holistic[ ]" review of Plaintiff's scienter allegations, as mandated by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007), the SAC and Opposition fail to demonstrate that Defendants misled investors about LTSAs.  Plaintiff fails to show Defendants knew facts contradicting their statements, but instead relies on generic, conclusory allegations.  Plaintiff pleads no motive and fails to offer a cogent "narrative of fraud."  *Webb*, 884 F.3d at 858.  This exposes the case for what it is: an attempt to "convert Rule 10b–5 into a scheme of investor's insurance," which the Supreme Court has prohibited.  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

## III.    <u>THE SAC SHOULD BE DISMISSED WITH PREJUDICE</u>

Plaintiff has now filed three complaints—each of which has failed to state a claim. These attempts demonstrate a "repeated failure to cure deficiencies" and the "futility of amendment."  *Zucco,* 552 F.3d at 1007.  Dismissal with prejudice is appropriate here.

RESPECTFULLY SUBMITTED this 20th day of December, 2024.

OSBORN MALEDON, P.A.


By  s/ Joseph N. Roth
    David B. Rosenbaum
    Joseph N. Roth
    Alexandria N. Karpurk
    2929 North Central Avenue, Suite 2000
    Phoenix, Arizona 85012

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
    Mark R.S. Foster (admitted *pro hac vice*)
    525 University Avenue
    Palo Alto, California 94301

*Attorneys for Defendants*