David B. Rosenbaum (009819)
Joseph N. Roth (025725)
Alexandria N. Karpurk (037029)
OSBORN MALEDON PA
2929 N. Central Ave., Ste. 2000
Phoenix, Arizona 85012
(602) 640-9000
drosenbaum@omlaw.com
jroth@omlaw.com
akarpurk@omlaw.com

Mark R.S. Foster (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
(650) 470-4500
Mark.Foster@skadden.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey S. Lew, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ON Semiconductor Corporation, Hassane El-Khoury and Thad Trent,<br><br>Defendants. | **CLASS ACTION**<br><br>CASE NO.: 2:24-cv-00594-SMB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

## I.    PRELIMINARY STATEMENT

All twelve of the exhibits referenced in Defendants' Motion to Dismiss (Doc. No. 43) ("MTD"), identified in Defendant's Request for Judicial Notice (Doc. No. 44) ("RJN"), and attached to the Declaration of Mark R.S. Foster (Doc. No. 43-2) ("Foster Declaration"), are the types of documents which courts routinely consider when ruling on motions to dismiss purported securities class actions.  That consideration of documents follows the Supreme Court's instruction to "consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

The reasons courts consider these documents on a motion to dismiss is simple: it allows "reading the statement fairly and in context."  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 176 (2015).  And that is important because courts need to evaluate a challenged statement the way that investors do: "in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information," along with "customs and practices of the relevant industry."  *Id.* at 190.  The Ninth Circuit has agreed, finding that incorporation by reference allows courts to examine public disclosures to be considered "in context" so as to give the challenged statements a "fair reading." *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024).

Documents routinely considered by courts in these types of cases include SEC filings, earnings call transcripts, and stock price history.  *See, e.g.*, *Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (notice of "reported stock price history and other publicly available financial documents, including a number of Corinthian's SEC filings . . . was proper"); *Bajjuri v. Raytheon Techs. Corp.,* 641 F. Supp. 3d 735, 745 (D. Ariz. 2022) (taking judicial notice of several SEC filings, two earnings call transcripts, and a month and a half of stock price history); *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 1010 (D. Ariz. 2015) (taking judicial notice of stock prices, company Forms 8-K and 10-Ks filed with the SEC, press releases on the company website, and excerpts from earnings calls), *aff'd sub nom. Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018);

1

*Dreiling v. Am. Express Co.,* 458 F.3d 942, 946 n.2 (9th Cir. 2006) (a court "may consider . . . any matter subject to judicial notice, such as SEC filings"); *Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1008 (D. Ariz. 2017) (courts "routinely take judicial notice of such things as public SEC filings"); *Kampe v. Volta Inc.*, 2024 WL 308262 at *7 (N.D. Cal. Jan. 26, 2024) (noting that, upon request for judicial notice of "SEC filings[,] . . . transcripts of calls with, or presentations to, analysts and investors[,] press releases[,] and historical price data for Volta's stock[,] . . . . [i]t is routine for a Court to take judicial notice of those types of documents for the purpose of determining what information was available to the market").

Plaintiff's Opposition argues that none of Defendants' exhibits are subject to incorporation by reference or judicial notice. Plaintiff accuses Defendants of "manufactur[ing] a bespoke record by introducing cherry-picked documents." (Opp. to RJN at 1:14.) Yet Plaintiff omits portions of the very documents he references in the Second Amended Complaint (Doc. No. 39) ("SAC") (which cut against his claims) and seeks to prevent the Court from learning the full extent of information that was publicly available (and not disputed) during the Class Period.

Thus, Defendants respectfully request that the Court consider Exhibits 1 through 12 to the Foster Declaration because each document is either (A) incorporated by reference in, and integral to, the SAC (Exs. 2-8) and/or (B) subject to judicial notice under Rule 201 of the Federal Rules of Evidence (Exs. 1-12).

## II.    EXHIBITS 2, 3, 4, 5, 6, 7, AND 8 ARE SUBJECT TO BOTH JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

Plaintiff concedes that documents are incorporated in a complaint by reference where referred to extensively, or relied upon to form the basis of a claim. (Opp. to RJN at 2:23-25); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (holding that a court may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading"); *In re Cloudera, Inc.*, 121 F.4th 1180, 1188 (9th Cir. 2024) ("Although [plaintiff] did not attach the

[blog] post to his complaint, he provided a link to it, so the district court could treat it as incorporated by reference and consider its contents in ruling on the motion to dismiss.").

Once a document is incorporated by reference, courts will take judicial notice of its contents so as not to allow a plaintiff to "surviv[e] a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). In other words, Plaintiff cannot surgically extract statements and then exclude the remainder to prevent this Court from seeing what Defendants said contemporaneously in the very same source document. Consequently, as Exhibits 2 through 8 are incorporated by reference, this Court should take judicial notice thereof.[1]

### A.    <u>Exhibit 3</u>

Exhibit 3 is a 2023 earnings call transcript which Plaintiff references dozens of times in the SAC. (*See* SAC ¶¶ 79, 82, 85, 88-91, 93, 94, 98, 111, 141, 147-49, 152-53.) In fact, the thrust of Plaintiff's claim is based on his interpretation of statements made by Defendants during this earnings call, and Plaintiff cannot argue that Exhibit 3 is not "referred to extensively or is central to [ ] [P]laintiff's claim." (Opp. to RJN at 2:23-25; *see also* RJN at 2:21-23.)

Plaintiff argues that Defendants are attempting to "manufacture inferences designed to compete with the facts alleged in the SAC." (Opp. to RJN at 10:10-12.) But the purpose of the incorporation by reference doctrine is to allow parties to offer a holistic view of statements in their full context, as discussed above. And, when viewed in context, Exhibit 3 undermines Plaintiff's claim. Specifically, Plaintiff tries to argue that Exhibit 3 reveals LTSAs "lacked the durability that Defendants falsely represented" because Defendants announced a "single automotive OEM's recent reduction in demand," which was 20% less than previously forecast. (SAC ¶¶ 89-90.) However, Plaintiff glaringly omits that onsemi also reported sequential revenue growth in 3Q23 (MTD at 15:12-15; Ex. 3 at 4, 6), which is

---

[1]    Defendant's RJN mistakenly asserts that Plaintiff also relies upon Exhibit 1. While Exhibit 1 is not subject to incorporation by reference because it is not referenced by the SAC, it is still subject to judicial notice, as explained *infra* at 7-8 and in the RJN at 3:21-4:3.

consistent with a "win-win" for shareholders.  Moreover, nowhere in Exhibit 3 do Defendants admit or even suggest that this OEM automotive customer violated an LTSA.  (MTD at 5:5-6.)

There can be no dispute that Exhibit 3 has been incorporated by reference, yet the Court may take judicial notice of Exhibit 3 for an independent reason: earnings call transcripts are frequently the subject of judicial notice to show what information was available to the market at a given time.  (*See* RJN at 3:21-25); *see also Bajjuri,* 641 F. Supp. 3d at 745 (taking judicial notice of two earnings call transcripts); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1124 (N.D. Cal. 2017) (taking judicial notice of Twitter's earnings calls); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1058 (N.D. Cal. 2012) ("[E]arnings calls . . . are proper subjects of judicial notice"); *Hadian v. Fate Therapeutics, Inc.*, 2024 WL 4246083 at *10 n.10 (S.D. Cal. Sept. 19, 2024) (same).

**B.**     **Exhibits 4, 5, 6, and 8**

Exhibits 4, 5, 6, and 8 are transcripts from various conferences and presentations, which are also repeatedly cited by Plaintiff throughout the SAC.  In the Opposition, Plaintiff accuses Defendants of using these transcripts to "introduce factual theories to dispute the allegations in the SAC," "create an alternative factual narrative" and "introduce . . . an alternative set of facts."  (Opp. to RJN at 11:10-11, 12:9-10, 15:4.)  Nonetheless, Plaintiff cites no authority that would permit this Court to consider only his hand-selected portions of the transcripts.  Indeed, incorporation by reference "prevent[s] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  That is squarely what Plaintiff has attempted to do here.

For example, Plaintiff mentions the Exhibit 4 (a UBS Report) over a dozen times in the SAC (*see* SAC ¶¶ 79, 82, 85, 88, 92, 96, 98, 148, 152 (several mentions), 164), and uses this exhibit as part of his central allegation that Defendants ultimately exposed the "very limited value of LTSAs." (SAC ¶¶ 79(e), 85(e), 88(e), 152; *see also* SAC ¶¶ 96, 98, 148.)  Thus, again, it would be wholly unreasonable to argue that Exhibit 4 is not "referred to

extensively" or is not "central to [ ] [P]laintiff's claim." (Opp. to RJN at 2:24-25.) Plaintiff has cherry-picked quotes, such as "[t]he bloom is 'off the rose'" and the purported "limited value of the LTSAs," (SAC ¶ 152), without acknowledging that this same UBS report also notes that onsemi "extracted value in other aspects of its relationship w[ith] the customer." (MTD at 5:7-8; Ex. 4, at 1.) This is exactly the kind of selective misrepresentation that incorporation by reference is designed to overcome. Plaintiff cannot use Exhibit 4 to argue that LTSAs disadvantaged onsemi and then conveniently ignore that it also says onsemi was still able to extract value from the customer that is the focus of the fraud allegations.

Similarly, Plaintiff uses Exhibit 5 to argue that Defendants must have known LTSAs were not "ironclad" because El-Khoury admitted that he and Trent signed the LTSAs themselves. (SAC ¶ 103.) Plaintiff then aims to exclude the very next paragraph of Exhibit 5 where El-Khoury explains that LTSAs do provide some flexibility and, if a customer has an issue, rather than "shove inventory," onsemi can "manage [its] manufacturing" and "move that capacity elsewhere," resulting in an outcome that is "even better for [onsemi] and the customer." (MTD at 8:18-20; Ex. 5, at 6.) Again, this context is critical.

Consistently, Plaintiff is equally selective with Exhibits 6 and 8, attempting to pin down Defendants with particular language about the LTSAs without allowing the Court to see the entire document and understand the context of those statements. With Exhibit 6, Plaintiff claims that El-Khoury misrepresented that LTSAs provide "align[ment] on pricing and volume" but then omits the next sentence where he explains there were "no conversations about pricing" and the "focus ha[d] always remained on supply." (Ex. 6, at 10.)

Likewise, Plaintiff argues that in Exhibit 8, Defendants overrepresented that LTSAs must result in a "win-win." (SAC ¶¶ 86-88.) However, he selectively excludes key quotes from the same exhibit where El-Khoury says that a win-win can involve "a quantity discussion" or onsemi could "extend the LTSA" or even modify production "because [onsemi] ha[s] a new product." (MTD at 11:23-12:3 (emphasis omitted); Ex. 8, at 13-14.) As El-Khoury explains, "all of these are win-win" (Ex. 8, at 14), but Plaintiff tries to convince this Court otherwise by surgically extracting choice quotes. This is precisely why

incorporation by reference is necessary.  The context from Plaintiff's own exhibits dooms his claims.

Indeed, this is the very type of selective (and arguably sanctionable) selective quotation that Plaintiff attempted with his first complaint.  To recap, in the First Amended Complaint (Doc. 36) ("FAC"), Plaintiff repeatedly misquoted onsemi's 2022 10-K, claiming that it said LTSAs were "not subject to cancellation" (FAC ¶¶ 48-49 (emphasis omitted), 74, 86 (emphasis omitted), 108 (emphasis omitted), 154-55), when it really said LTSAs were "not subject to cancellation, unless otherwise mutually agreed." (Ex. 2, at 10.)  Defendants exposed the misquote in their Motion to Dismiss the FAC (Doc. No. 37 at 1:9-10, 2:19-20, 5:8-14, 16:19-20), which forced plaintiff to amend the FAC.  The SAC employs the same improper tactics.

Finally, "[o]nce a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court— are free to refer to any of its contents." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d at 1058 n.10 (citation omitted).  In other words, Defendants are not presenting an "alternative factual narrative" or "set of facts" to consider.  Once a document has been incorporated by reference, and the whole document is assumed to be true, there is *only* one complete set of facts comprising the document.  Any alternative interpretation of those facts presents a competing inference that legitimately undermines Plaintiff's purportedly "well-pleaded" SAC.

**C.    Exhibits 2 and 7**

Plaintiff argues that Exhibits 2 and 7 are irrelevant.  From Plaintiff's perspective, judicial notice or incorporation by reference is unnecessary because Defendants only seek notice of information contained in the SAC.  (Opp. to RJN at 8:12-9:17.)  Yet Defendants seek judicial notice of Exhibits 2 and 7 for more than simply the above-referenced information: The Court should be able to consider the context underlying Plaintiff's allegations and the extent of publicly available information.

Exhibit 2 is onsemi's 2022 Form 10-K.  According to Plaintiff, the 2022 Form 10-K removed "all risk warnings concerning the uncertainty of customer orders (and the potential

financial impact of such uncertainty), signal[ing] to investors that [o]nsemi's new practice of entering LTSAs eliminated the risk of loss that had previously existed."  (SAC ¶ 50.) Defendants seek judicial notice or incorporation of the rest of Exhibit 2 to show that *all* risk warnings were not removed from its public filings.  To the contrary, as explained in the MTD, Defendants had "repeatedly disclosed to investors that they would accommodate customer requests to modify LTSAs in situations where there were shifts in customer demand." (MTD at 4:15-17.)

Exhibit 7 is a transcript from an investor day conference that Plaintiff relies upon in an attempt to argue that $5 million was a "significant" sum to onsemi.  (SAC ¶ 69.)  Exhibit 7 should be deemed incorporated by reference for the quoted text in the SAC, as well as to show from the context that the comment about $5 million in revenue per data center was merely an offhand remark—not a "significant" sum.

## III.    EXHIBITS 1, 9, 10, 11 AND 12 ARE ALL SUBJECT TO JUDICIAL NOTICE

Plaintiff argues that Exhibits 1, 9, 10 and 11 cannot be judicially noticed because Defendants offer them to present impermissible alternative facts.  (Opp. to RJN at 4:16-8:11.) Similarly, Plaintiff attempts to exclude Exhibit 12 on the grounds that it is either irrelevant or subject to different interpretations.  (*Id.* at 16:1-17.)  There is nothing impermissible about the limited information Defendants have asked the Court to judicially notice, however.

### A.    Exhibits 1, 9 and 10

At the outset, Exhibits 1, 9, and 10 are SEC filings—which are regularly subject to judicial notice as a matter of course.  (*See* RJN at 3:19-4:3); *see also Dreiling*, 458 F.3d at 946 n.2 (noting that a court "may consider . . . any matter subject to judicial notice, such as SEC filings"); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (holding that notice of "publicly available financial documents, including a number of Corinthian's SEC filings . . . was proper"); *Hutton*, 264 F. Supp. 3d at 1008 (noting that courts "routinely take judicial notice of such things as public SEC filings"); *In re White Elec. Designs Corp. Sec. Lit.*, 416 F. Supp. 2d 754, 760 (D. Ariz. 2006) ("Judicial notice is appropriate for SEC filings . . . as they are 'capable of accurate and ready

7

determination by resort to sources whose accuracy cannot be reasonably questioned.'" (citation omitted)); *Smilovits*, 119 F. Supp. 3d at 1010 (taking judicial notice of company Forms 8-K and 10-Ks filed with the SEC). What's more, Defendants merely seek judicial notice of a single fact in the filings: that onsemi reported certain stock repurchase information. (RJN at 4:7-14.) Clearly, this limited (and uncontested) subject matter is appropriate for judicial notice.

Plaintiff wrongly claims that the stock repurchase information contained in Exhibits 1, 9 and 10 is not subject to judicial notice because it is reasonably disputed and outside the scope of the SAC. (Opp. to RJN at 6:1-10.) Plaintiff is mistaken for two reasons.

*First*, the fact that onsemi reported its stock repurchases is not subject to reasonable dispute, and as stated, this Court may rely on information contained in onsemi's SEC filings.

*Second*, the stock repurchase information is directly responsive to Plaintiff's allegations that Defendants closely tracked onsemi's "financial and strategic metrics." (*See, e.g.*, SAC ¶¶ 113-14.) Needless to say, such "financial and strategic metrics" would include the hundreds of millions of dollars that onsemi spent on stock repurchases.

Plaintiff also falsely claims that the above-referenced stock repurchase information is not relevant. (Opp. to RJN at 5:7-7:6.) This is demonstrably false. In the SAC, Plaintiff alleges that El-Khoury and Trent "carefully tracked [o]nsemi's customer relationships with LTSAs" and that their "compensation for 2023 was tied to the achievement of certain metrics in new product revenue, SiC product revenue ramp, design wins, and operating margin." (SAC ¶ 113.) Then, in the Opposition to Defendant's MTD, Plaintiff reiterates that "[t]his inference [of scienter] is bolstered further by the fact that Defendants' 2023 compensation was tied to SiC LTSA performance. (Opp. to MTD at 15:15-18.) Thus, the information is relevant.

And even if the Court does not consider the repurchases, it is obvious that Plaintiff alleges no motive, which undermines his claim for all the reasons set forth in the MTD. The repurchases merely further underscore how illogical Plaintiff's claim is. (MTD at 3:17-23, 16:28-17:2.)

8

**B.    Exhibit 11**

Defendants also properly seek judicial notice of Exhibit 11.  Exhibit 11 is an analyst report that shows what information was publicly available during the Class Period.  Again, as noted in the RJN, courts regularly "take judicial notice of publications introduced to indicate what was in the public realm at the time."  *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 960 (9th Cir. 2010) (citation omitted); *see also Heliotrope Gen., Inc. v. Ford Motor Co.,* 189 F.3d 971, 981 n.18 (9th Cir. 1999) (taking judicial notice of the fact "that the market was aware of the information contained in news articles submitted by the defendant[ ]"); *Hutton,* 264 F. Supp. 3d at 1008 (taking judicial notice of a press release not cited in the complaint and noting that courts "routinely take judicial notice of such things as public SEC filings, corporate press releases, and court proceedings").

Plaintiff argues that the relevant information in Exhibit 11 is subject to different interpretations.  (Opp. to RJN at 8:1-11.)[2]  Not so.  Defendants merely request that the Court consider this analyst report for the limited purpose of showing that information about the large volume of data centers was in the public realm during the Class Period.  Consequently, the public would have understood that a comment about $5 million in revenue per data center represents only a small fraction of onsemi's business.

**C.    Exhibit 12**

As explained in the RJN, Exhibit 12 lists onsemi's stock price history from April 3, 2023 through April 2, 2024.  (RJN at 5:25-6:6.)  It strains credulity to argue that the stock price on a given date is subject to different interpretations.  So Plaintiff argues the stock price history is irrelevant since it extends beyond the Class Period.

*First*, as a general matter, stock price history is squarely the kind of public information that courts will routinely take judicial notice of.  (*See* RJN at 5:27-6:4.)  *See In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 799 (9th Cir. 2017) (granting a motion for judicial

---

[2]    Separately, Plaintiff misquotes an onsemi executive in his Opposition to the RJN. (*Compare* Opp. to RJN at 7:15-8:1 ("a data center account worth $5 million was 'very significant'"), *with* MTD at 11 n.3; SAC ¶ 69; Ex. 7, at 14 (the account generated $5 million of revenue "*per data center*").  This fact is not subject to any other interpretation.

notice "because historical stock prices are 'not subject to reasonable dispute' and 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned'"); *Smilovits*, 119 F. Supp. 3d at 1010 (taking judicial notice of stock prices); *Bien v. LifeLock Inc.*, No. CV–14–00416–PHX–SRB, 2014 WL 7641546 (D. Ariz. Dec. 17, 2014) ("[S]tock price data is a matter of public record and is not subject to reasonable dispute."), *aff'd sub nom. Gray v. LifeLock Inc.* (*In re LifeLock Inc. Sec. Litig.*), 690 F. App'x. 947 (9th Cir. 2017); *Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328 (C.D. Cal. 2014) ("Because publically [sic] traded companies historical stock prices can be readily ascertained and those prices are not subject to reasonable dispute, courts routinely take judicial notice of them."). onsemi's share prices are objectively factual, and sources like Yahoo! Finance are universally accepted to be accurate and reliable for reviewing stock price history. *See, e.g.*, *In re NVIDIA Corp. Sec. Litig.,* No. 08–CV–04260–RS, 2010 WL 4117561, at \*2 n.3 (N.D. Cal. Oct. 19, 2010) (taking "judicial notice of the daily closing prices of NVIDIA's common stock as reported by Yahoo! Finance and provided by defendants"); *Smilovits*, 119 F. Supp. 3d at 1010 (taking judicial notice of stock prices from Yahoo! Finance).

*Second*, onsemi's stock prices are relevant, even if not critical for resolution of the MTD. Plaintiff's case is predicated on a stock drop. And he presents a chart that suggests that the drop never recovered. The reality is that the temporary drop undercuts the idea that there was some fraud here. The Court has every reason to know what happened as it holistically considers the fraud allegations here as *Tellabs* instructs.

## CONCLUSION

Accordingly, Defendants respectfully request that the Court deem Exhibits 1-12 to the Foster Declaration to be incorporated by reference and/or subject to judicial notice.

/ / /

/ / /

10

DATED this 20th day of December, 2024.

OSBORN MALEDON, P.A.


By _s/ Joseph N. Roth_____
    David B. Rosenbaum
    Joseph N. Roth
    Alexandria N. Karpurk
    2929 North Central Avenue, Suite 2000
    Phoenix, Arizona 85012

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
    Mark R.S. Foster (admitted *pro hac vice*)
    525 University Avenue
    Palo Alto, California 94301

*Attorneys for Defendants*

11