LEVI & KORSINSKY, LLP
Shannon L. Hopkins (admitted *pro hac vice*)
(State of Connecticut Juris No. 435545)
Gregory M. Potrepka (admitted *pro hac vice*)
(State of Connecticut Juris No. 437326)
1111 Summer Street, Suite 403
Stamford, CT 06905
shopkins@zlk.com
gpotrepka@zlk.com
Telephone: 203-992-4523

*Lead Counsel for Lead Plaintiff Jeffery S. Lew*

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffery S. Lew, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>ON Semiconductor Corporation; Hassane El-Khoury; and Thad Trent,<br><br>Defendants. | No. CV-24-00594-PHX-SMB<br><br>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE THIRD AMENDED COMPLAINT |

DATED this 10th day of November, 2025.

*/s/ Gary A. Gotto*

Gary A. Gotto
Liaison Counsel for Lead Plaintiff

**Table of Contents**

Table of Contents..................................................................................................................ii

Table of Authorities ...........................................................................................................iii

Table of Abbreviations ........................................................................................................ix

ARGUMENT ......................................................................................................................... 3

I.      Defendants' Motion to Strike Should Be Denied...................................................... 3

II.     The TAC is Not a Puzzle Pleading ........................................................................... 4

III.    The TAC Adequately Alleges Defendants Made Material Misstatements................ 5

  A.    Defendants Misled Investors Regarding the Increasing Occurrence and Effect of
        LTSA Noncompliance and Fostered a Misimpression of LTSAs' Ability to Curb
        Financial Dilution from LTSA Amendments .......................................................... 5

  B.    The Misstatements Are Not Puffery and Do Not Lack Objectivity..................... 10

  C.    The PSLRA Safe Harbor Does Not Apply to Present-Looking Statements ........ 12

IV.    The TAC Alleges a Strong Inference of Scienter ...................................................... 13

  A.    Defendants Shared Information Undermining Their Misstatements in Board,
        Audit Committee, and Executive Risk Committee Meetings............................... 13

  B.    Defendants' Post-Class Period Admissions Support Scienter ............................. 14

  C.    Defendants' Roles in Negotiating, Signing, Executing, Monitoring, and
        Providing Detailed Updates about the LTSAs Support Scienter ......................... 15

  D.    The Core Operations Doctrine Supports Scienter ............................................... 16

  E.    A Holistic Analysis Supports a Strong Inference of Scienter ............................. 17

CONCLUSION .................................................................................................................... 17

**Table of Authorities**

**Cases**

*Aesthetic Eye Assocs., P.S. v. Alderwood Surgical Ctr., LLC*,

2023 WL 8828690 (W.D. Wash. Dec. 21, 2023) ......................................................... 3

*Alich v. Opendoor Techs. Inc.*,

2024 WL 839146 (D. Ariz. Feb. 28, 2024), *vacated in part*, 2024 WL 2153529 (D.

Ariz. May 14, 2024)...................................................................................................... 10

*Askins v. U.S. Dept. of Homeland Sec.*,

899 F.3d 1035 (9th Cir. 2018)..................................................................................... 10

*Attia v. Google LLC*,

2018 WL 2971049 (N.D. Cal. June 13, 2018) ............................................................... 4

*Berson v. Applied Signal Tech., Inc.*,

527 F.3d 982 (9th Cir. 2008)....................................................................................... 17

*Brodsky v. Yahoo! Inc.*,

630 F. Supp. 2d 1104 (N.D. Cal. 2009) ......................................................................... 5

*Brody v. Transitional Hosps. Corp.*,

280 F.3d 997 (9th Cir. 2002)......................................................................................... 7

*City of Miami Gen. Emps'. & Sanitation Emps'. Ret. Tr. v. RH, Inc.*,

302 F. Supp. 3d 1028 (N.D. Cal. Feb. 26, 2018) ........................................................ 12

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,

81 F.4th 918, 937 (9th Cir. 2023)......................................................................... 10, 15

*Evanston Police Pension Fund v. McKesson Corp.*,

411 F. Supp. 3d 580 (N.D. Cal. 2019) .................................................................... 3, 16

*Flynn v. Sientra, Inc.*,

2016 WL 3360676 (C.D. Cal. June 9, 2016) .............................................................. 14

*Forsyth v. HP Inc.*,

2020 WL 6081719 (N.D. Cal. Oct. 15, 2020)...............................................................3

*Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*,

63 F.4th 747 (9th Cir. 2023)............................................................... 5, 6, 8, 10

*Glazing Emps. & Glaziers Union Local #27 Pension & Ret. Fund v. iRhythm Techs., Inc.*,

2025 WL 1569421 (N.D. Cal. June 3, 2025) ................................................. 11

*Howard v. Arconic Inc.*,

2021 WL 2561895 (W.D. Pa. June 23, 2021) ............................................... 10

*In re AGNC Inv. Corp.*,

2019 WL 464134 (D. Md. Feb. 6, 2019) .......................................................3

*In re Alphabet, Inc. Sec. Litig.*,

1 F.4th 687 (9th Cir. 2021)........................................................................ 13

*In re Amgen Inc. Sec. Litig.*,

2014 WL 12585809 (C.D. Cal. Aug. 4, 2014) ............................................. 13

*In re Apollo Grp. Inc. Sec. Litig.*,

395 F. Supp. 2d 906 (D. Ariz. 2005).............................................................9

*In re Apollo Grp., Inc. Sec. Litig.*,

2011 WL 5101787 (D. Ariz. Oct. 27, 2011) ..................................................4

*In re Apple Inc. Sec. Litig.*,

2020 WL 6482014 (N.D. Cal. Nov. 4, 2020)...................................... 9, 13, 14

*In re Connetics Corp. Sec. Litig.*,

2008 WL 3842938 (N.D. Cal. Aug. 14, 2008)............................................ 3, 4

*In re Cylink Sec. Litig.*,

178 F. Supp. 2d 1077 (N.D. Cal. 2001) .........................................................4

*In re Facebook, Inc.*,

87 F.4th 934 (9th Cir. 2023)....................................................................... 6, 7

iv

*In re Fastly, Inc. Sec. Litig.*,
  2025 WL 2721693 (N.D. Cal. Sep. 24, 2025) ..................................................... 9, 10, 12

*In re Green Dot Corp. Sec. Litig.*,
  2024 WL 1356253 (C.D. Cal. Mar. 29, 2024) ............................................................... 5

*In re Immune Response Sec. Litig.*,
  375 F. Supp. 2d 983 (S.D. Cal. June 7, 2005)..................................................... 11, 13, 15

*In re January 2021 Short Squeeze Trading Litig.*,
  620 F. Supp. 3d 1231 (S.D. Fla. 2022) ....................................................................... 14

*In re Mylan N.V. Sec. Litig.*,
  2023 WL 3539371 (W.D. Pa. May 18, 2023) ................................................................ 4

*In re PETsMART, Inc. Sec. Litig.*,
  61 F. Supp. 2d 982 (D. Ariz. 1999)............................................................................. 5

*In re Qualcomm Inc. Sec. Litig.*,
  2019 WL 1239301 (S.D. Cal. Mar. 18, 2019)............................................................. 16

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ............................................................................. 10, 12

*In re QuantumScape Secs. Class Action Litig.*,
  580 F. Supp. 3d 714 (N.D. Cal. 2022) ....................................................................... 16

*In re Stable Rd. Acquisition Corp., Sec. Litig.*,
  2022 WL 2762213 (C.D. Cal. July 13, 2022)................................................................ 6

*In re SunPower Corp. Sec. Litig.*,
  769 F. Supp. 3d 1042 (N.D. Cal. Mar. 6, 2025)........................................................... 14

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002).................................................................................... 7

*In re VeriFone Holdings, Inc., Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012)..................................................................................... 13

*Ind. Pub. Ret. Sys. v. Rivian Auto., Inc.*,

    2025 WL 2426714 (C.D. Cal. Aug. 20, 2025) ............................................................. 11

*Karinski v. Stamps.com, Inc.*,

    2020 WL 281716 (C.D. Cal. Jan. 17, 2020) .......................................................... 5, 7

*Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*,

    2024 WL 3708800 (D. Ariz. Aug. 7, 2024) ........................................................ 16, 17

*Longo v. OSI Sys., Inc.*,

    2021 WL 1232678 (C.D. Cal. Mar. 31, 2021) ..................................................... 13, 16

*Luo v. Spectrum Pharms., Inc.*,

    2024 WL 4443323 (D. Nev. Oct. 7, 2024) ............................................................... 17

*Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*

    39 F. 4th 1092 (9th Cir. 2022) ................................................................................. 10

*Maverick Fund, L.D.C. v. First Solar, Inc.*,

    2018 WL 6181241 (D. Ariz. Nov. 27, 2018) ........................................................... 10

*Nguyen v. Endologix, Inc.*,

    962 F.3d 405 (9th Cir. 2020) .................................................................................... 13

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,

    380 F.3d 1226 (9th Cir. 2004) .................................................................................. 15

*Orbis Glob. Equity Fund Ltd. v. NortonLifelock Inc.*,

    2023 WL 1800963 (D. Ariz. Feb. 7, 2023) ............................................................. 10

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*,

    2023 WL 4418886 (N.D. Cal. May 24, 2023) ........................................................... 4

*Police Ret. Sys. of St. Louis, v. Intuitive Surgical, Inc.*,

    759 F.3d 1051 (9th Cir. 2014) .................................................................................. 15

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,

    845 F.3d 1268 (9th Cir. 2017) .................................................................................. 11

*Robb v. Fitbit Inc.*,

2017 WL 219673 (N.D. Cal. Jan.19, 2017) ............................................................ 14, 15

*Ronconi v. Larkin*,

253 F.3d 423 (9th Cir. 2001) ...................................................................................... 9

*Scheller v. Nutanix, Inc.*,

2020 WL 5500422 (N.D. Cal. Sep. 11, 2020) ............................................................ 16

*Schulein v. Petroleum Dev. Corp.*,

2012 WL 12884851 (C.D. Cal. June 25, 2012) ........................................................... 8

*SEB Inv. Mgmt. AB v. Symantec Corp.*,

2019 WL 4859099 (N.D. Cal. Oct. 2, 2019) ............................................................... 3

*Sherman v. Abengoa, S.A.*,

2025 WL 2825369 (2d Cir. Oct. 6, 2025) ................................................................... 3

*Tellabs, Inc. v. Makor Issues & Rts. Ltd.*,

551 U.S. 308 (2007) ............................................................................................ 13, 15

*United Ass'n Nat'l Pension Fund v. Carvana Co.*,

759 F. Supp. 3d 926 (D. Ariz. 2024) ....................................................................... 4, 6

*Utesch v. Lannett Co.*,

385 F. Supp. 3d 408 (E.D. Pa. 2019) ......................................................................... 4

*Xiaojiao Lu v. Align Tech., Inc.*,

417 F. Supp. 3d 1266 (N.D. Cal. 2019) ..................................................................... 5

*Zelman v. JDS Uniphase Corp.*,

376 F. Supp. 2d 956 (N.D. Cal. 2005) ...................................................................... 13

*Zhu v. Taronis Techs. Inc.*,

2020 WL 1703680 (D. Ariz. April 8, 2020) ................................................................ 9

**Statutes**

15 U.S.C. § 78j ......................................................................................................... 2

15 U.S.C. § 78t(a) ..................................................................................................... 2

**<u>Rules</u>**

Fed. R. Civ. P. 11 ..................................................................................................................3

Fed. R. Civ. P. 11(b)(3) ........................................................................................................3

Fed. R. Civ. P. 12(f) .............................................................................................................3

Fed. R. Civ. P. 9(b) ..............................................................................................................4

**Table of Abbreviations**

| Abbreviation or Acronym | Definition |
|---|---|
| ¶ | Paragraphs in the Third Amended Complaint (ECF No. 63) |
| *Balsam-Respler* Complaint | Complaint, *Balsam-Respler v. El-Khoury, et al.*, No. 2:25-cv-01672-PHX-SMB (D. Ariz. filed Jun. 16, 2025), ECF No. 17-1 |
| Board | The Board of Directors for Defendant OnSemi |
| Class | All persons or entities who purchased or otherwise acquired Onsemi common stock during the Class Period (¶1) |
| Class Period | May 1, 2023 through October 27, 2023, inclusive |
| Company | ON Semiconductor Corporation |
| CW | Confidential Witness |
| El-Khoury | Defendant Hassane El-Khoury, CEO of Onsemi |
| ERM | Enterprise Risk Management |
| KPI | Key Performance Indicator |
| Lead Plaintiff or Plaintiff | Lead Plaintiff Jeffery S. Lew |
| LTSA | Long Term Supply Agreement |
| Motion or DB | Defendants' Motion to Dismiss and Strike Third Amended Complaint, filed September 25, 2025 (ECF No. 67) |
| OEM | Original Equipment Manufacturer |
| Onsemi | ON Semiconductor Corporation |
| Order | The Court's July 11, 2025 Order (ECF No. 62) Granting Defendants' Motion to Dismiss Second Amended Complaint, filed October 10, 2024 (ECF No. 43) |
| SAC | Plaintiff's Second Amended Complaint, filed on September 6, 2024 (ECF No. 39) |

| SEC | U.S. Securities and Exchange Commission |
| --- | --- |
| SiC | Onsemi's Silicon Carbide products, which were sold entirely pursuant to LTSAs |
| TAC | Plaintiff's Third Amended Complaint, filed on August 11, 2025 (ECF No. 63) |
| Trent | Defendant Thad Trent, CFO of Onsemi |

The Court dismissed the SAC finding it insufficiently alleged Defendants' statements concerning LTSAs were materially misleading and made with scienter.[1] Plaintiff responded with a groundswell of particularized facts, partially based on Onsemi's internal Board and Audit Committee documents, revealing Defendants knew before and throughout the Class Period that LTSA noncompliance exposed Onsemi to order and revenue instability and immovable inventory threatening the Company's $1 billion SiC 2023 revenue goal. By February 2023, the Board learned of a SiC loss that (after a partial offset) left a $280 million loss. Moreover, throughout the Class Period, LTSA compliance was "drop[ping,]" including with customers delaying orders and lowering volumes (corroborating CW1), such that obtaining amendment offsets were "***Key***" to "***Clos***[***ing***] ***the Gap***" on Onsemi's "***2023 Recovery Plan***[.]" But Onsemi only had a 50% chance of securing at least one such offset and Defendants' concerns about "customer retention" and "negotiating amendments" that preserved "revenue/margin/inventory goals" were keeping them "***awake at night***[.]" Rightfully so, as LTSA amendments surged in ERM risk in 2022 and 2023—facts Defendants admittedly reviewed "more than once a week." These LTSA "decommits" were so financially dilutive, El-Khoury wrote a memo to the Board acknowledging Onsemi was "***losing more revenue***[,]" than expected and had over $2 billion "of inventory that we built ***for customers who are no longer in need of it.***"

Nonetheless, Defendants, who had championed LTSAs nonstop for two years, responded to analysts' inquiries by continually: denying any order volume "pressure" (rather—El-Khoury represented LTSAs generated "very, very predictable" revenues from "very, very stable" orderss to be supplied); touting LTSAs' purportedly "ironclad" and "legally binding" nature, and the "win-wins" they ensured during renegotiations (including to "offset the gap" in revenue from decreasing orders); and posing "influence[s]" to

---

[1] Capitalized terms and abbreviations have the same meaning as set forth in the Table of Abbreviations above and the TAC. Unless otherwise stated, all emphasis is added and all internal citations, quotation marks, brackets, ellipses, and footnotes are omitted.

"revenue estimates" and "sales estimates" from LTSA "modifications" as mere speculation.

Ultimately, Defendants admitted a SiC OEM customer canceled $200 million in 2023 orders "outside of" a win-win, and disclosed that Onsemi's 2024 revenue and profit shrunk by ~$1.2 billion and ~$670 million, respectively, reflecting LTSAs' inability to avoid financially dilutive repercussions. ¶¶159, 162. The LTSAs offered so little protection that after the Class Period Defendants discussed LTSAs as a potential "unsustainable business strategy" due in part to "fluctuating and difficult-to-forecast customer demand" and "excess inventory, creating financial liability" (¶158), which had already materialized.

Thus, the TAC squarely addresses the Order and adequately alleges Defendants omitted that customers were "indefinitely misalign[ing] their purchasing amounts without a corresponding benefit" such that Defendants knew the LTSAs "were not operating according to how" Defendants portrayed them publicly. Order at 19. The TAC also alleges a "contemporaneous definition" of "win-win" that provides objective criteria to assess the facts in Defendants' possession (*id.* at 21), namely whether amendments: maintained capacity utilization; prevented inventory buildup; and, as a "***guiding principle***[,]" ensured "any flexibility offered" was not financially "dilutive[.]" ¶5.

The Motion fails to contend with many of the TAC's new allegations, in favor of swinging for the fences. For example, Defendants request the Court strike allegations that rely on the *Balsam-Respler* Complaint for lacking a reliable basis—despite that these allegations were sourced ***from Onsemi's own books and records***. Defendants also insist the Court's puffery and PSLRA safe harbor findings can never be revisited despite amendment. But where a new complaint adds context bearing on a statement's materiality or the information available to Defendants when their statements were made (as the TAC clearly does), the new context must be considered. Adopting Defendants' legal grasping would be error. Because Defendants only challenge the misrepresentation and scienter elements of Plaintiff's Section 10(b) claim, and such elements are well-pled in the TAC (and the 20(a) claim is derivative thereof (Order at 33)), the Motion should be denied.

## ARGUMENT

### I.      Defendants' Motion to Strike Should Be Denied

Courts "should deny" Rule 12(f) motions unless "no evidence in support of the allegation would be admissible, or those issues could have no possible bearing on the issues in the litigation." *Forsyth v. HP Inc.*, 2020 WL 6081719, *3 (N.D. Cal. Oct. 15, 2020). Defendants made no such showing—so denial is required. *Aesthetic Eye Assocs., P.S. v. Alderwood Surgical Ctr., LLC*, 2023 WL 8828690, *2-3 (W.D. Wash. Dec. 21, 2023).

Further, there are no grounds to strike TAC allegations under Rule 11. Rule 11 requires a "reasonable" inquiry and that "factual contentions have" or "will likely have evidentiary support after … further investigation or discovery[.]" Fed. R. Civ. P. 11. Courts "regularly permit[] plaintiffs to incorporate allegations" from "other complaints[.]" *Sherman v. Abengoa, S.A.*, 2025 WL 2825369, *8 (2d Cir. Oct. 6, 2025); *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 593 (N.D. Cal. 2019) (relying on regulatory complaint allegations) (citing Ninth Circuit cases). Doing so depends on what is "reasonable" in context. *In re Connetics Corp. Sec. Litig.* ("*Connetics II*"), 2008 WL 3842938, *4 (N.D. Cal. Aug. 14, 2008). It suffices that Plaintiff "corroborate[s] some, though not all, of the allegations from the [*Balsam-Respler* C]omplaint." *Id*.

Plaintiff's allegations are based, in part, "upon information and belief" (¶2), "such that additional evidentiary support may be forthcoming after further investigation and discovery." *Connetics II*, 2008 WL 3842938, *4; Rule 11(b)(3). The TAC does not rely on, *e.g.*, unknown witnesses' statements. Rather, discovery "will likely" adduce "evidentiary support" because the *Balsam-Respler* Complaint is a "**Verified** Stockholder Derivative Complaint" based on **Onsemi's** "internal documents[.]" ¶¶2, 95; Rule 11(b)(3); *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2019 WL 4859099, *2 (N.D. Cal. Oct. 2, 2019) (proposed complaint based on "verified stockholder derivative" allegations pled securities fraud); *In re AGNC Inv. Corp.*, 2019 WL 464134, *7 (D. Md. Feb. 6, 2019) (considering allegations from another's "Section 220 review" where "no reason to believe" they "lack evidentiary

3

support"); *c.f., In re Mylan N.V. Sec. Litig.*, 2023 WL 3539371, *8 n.3 (W.D. Pa. May 18, 2023) (no need to "conduct a ***separate*** investigation") (emphasis kept).[2]  Defendants do not dispute any allegation's authenticity. *See In re Cylink Sec. Litig.,* 178 F. Supp. 2d 1077, 1080 (N.D. Cal. 2001) (incorporating allegations where "authenticity" not challenged).

The *Balsam-Respler* Complaint is also corroborated by CW1 and public sources. ¶¶2, 96; *Connetics II*, 2008 WL 3842938, *4 (crediting SEC allegations because plaintiffs' "reasonable" inquiry corroborated them in part). CW1's observations that a customer did not comply with LTSA minimums corroborate ongoing LTSA compliance issues. *E.g.,* ¶98. Onsemi's public statements corroborate Defendants' involvement in ERM evaluations, including assessing top risks. *E.g.*, ¶¶63-73, 103. Such corroboration warrants accepting allegations relying on the *Balsam-Respler* Complaint. *Utesch v. Lannett Co.*, 385 F. Supp. 3d 408, 419 n.7 (E.D. Pa. 2019) (AG complaint supported "[p]laintiffs' core allegations").

## II.    The TAC is Not a Puzzle Pleading

The Order's "puzzle" warning sought "precision" on whether statements were false or misleading by omission. Order at 12-13, 34. The TAC specifically addressed this through paragraphs clarifying how each actionable statement omitted material information making it misleading. ¶¶112, 117, 122, 126, 131, 136, 140, 145. As in *United Ass'n Nat'l Pension Fund v. Carvana Co*., 759 F. Supp. 3d 926, 949 (D. Ariz. 2024), these amendments suffice. The Motion shoehorns another issue—the purported repetition of facts supporting Plaintiff's theory of liability—into the "precision" concern. DB5. This equivocation fails. The alleged facts describe "the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Further, the TAC's facts coincide with or precede the misstatements. ¶¶113, 118, 123, 127, 132, 137, 141, 146. Alleging a common nucleus of facts does not equate to puzzle

---

[2] *Contra Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2023 WL 4418886, *1, *4 (N.D. Cal. May 24, 2023) (concerning unconfirmed third-party testimony); *In re Apollo Grp., Inc. Sec. Litig.*, 2011 WL 5101787, *10 n.5 (D. Ariz. Oct. 27, 2011) (similar); *Attia v. Google LLC*, 2018 WL 2971049, *14 (N.D. Cal. June 13, 2018) (alleging a pattern of predicate RICO acts solely from the "existence of six lawsuits").

pleading—what matters is that such facts share a "connection" with each alleged misstatement. *In re Green Dot Corp. Sec. Litig.*, 2024 WL 1356253, *2 (C.D. Cal. Mar. 29, 2024). Defendants' ability to parse out the TAC's allegations defeats their argument. *See Karinski v. Stamps.com, Inc.*, 2020 WL 281716, *9 (C.D. Cal. Jan. 17, 2020).[3]

### III.    The TAC Adequately Alleges Defendants Made Material Misstatements

The TAC is well-pleaded because it alleges a "*reasonable inference*" Defendants omitted material facts necessary to make their statements not misleading, with particularity. *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 778 (9th Cir. 2023) ("*Glazer II*") (original emphasis). By touting "positive" LTSA benefits, Defendants were "bound" to disclose "adverse information that cut[]" against their statements. Order at 19.

### A.    Defendants Misled Investors Regarding the Increasing Occurrence and Effect of LTSA Noncompliance and Fostered a Misimpression of LTSAs' Ability to Curb Financial Dilution from LTSA Amendments

Throughout the Class Period, Defendants sought to tamp out investor curiosity "regarding [Onsemi's] ability to sustain margin (and pricing)" and manufacture "confiden[ce]" in Onsemi's $1 billion SiC revenue target (¶¶97, 100), by mispresenting the Company's demand risk and the LTSAs' ability to mitigate such risk. For instance, on May, 1, 2023, Defendants assured investors that the LTSAs inherently provided "very, very predictable" revenues, "very, very stable" order volumes, and that Onsemi had experienced "no pressure on that." ¶116. Thereafter, Defendants responded to analysts' questions about order stabilization, end-market demand, and LTSA enforceability, by touting that Onsemi only permitted amendments which guaranteed "a win for both companies[,]" including by "offset[ting] the [revenue] gap" caused by a product order decrease. ¶¶125, 138, 143-44.

---

[3] The TAC alleges: misleading portions with emphasis (¶108), bespoke reasons for each statement's misleadingness (*e.g.*, ¶112 concerning ¶111), and fact support. *Contra Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1275 (N.D. Cal. 2019) (misstatements not "articulate[d]"); *In re PETsMART, Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 991 (D. Ariz. 1999) (court had to "play connect-the-dots"); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1113 (N.D. Cal. 2009) ("allegations of falsity" were "not particular" to the statements).

Defendants further stressed that the LTSAs were "ironclad[,]" "legally binding agreement[s]" that their "structure" always generated "win-wins" during renegotiations (such that Onsemi could never "lose") and "net-net," "forced" Onsemi to "land in a much better spot than we would have otherwise been" prior to an amendment. ¶¶138, 144; ¶139 (similar). Indeed, given the "legally binding" LTSAs, El-Khoury affirmed that "net of" negotiating a "win-win" Onsemi was "not going to be left holding the bag." ¶144.

Defendants' statements misled by omitting that LTSAs were not insulating Onsemi from softening demand—instead, financially-dilutive amendments antithetical to win-wins were swelling. *See In re Facebook, Inc.*, 87 F.4th 934, 948 (9th Cir. 2023) (misleading omissions "create an impression" materially differing from reality).[4] Indeed, the alleged misstatements omitted that customers had "misalign[ed] their purchasing amounts without a corresponding benefit" risking the 2023 SiC revenue target. Order at 19; *id.* (TAC "show[s] adverse information" or "alternative and contrary reality").

Further, Onsemi's hypothetical warnings claiming "total sales estimates" (¶¶111, 120, 129, 134) and "total revenue estimates" (¶¶121, 135) "could be influenced" by "modifications to customer agreements" notwithstanding the LTSAs' purportedly "firmly committed amounts," were misleading because the risks materialized ***before the Class Period*** and persisted throughout. *In re Stable Rd. Acquisition Corp., Sec. Litig.*, 2022 WL 2762213, *9 (C.D. Cal. July 13, 2022) (waring risks "might occur" when "already materialized or very likely would materialize" misleading); *Facebook*, 87 F.4th at 948-49.[5]

The TAC robustly alleges undisclosed revenue risks and LTSA noncompliance. For instance, on February 20, 2023, El-Khoury and Trent escalated concerns to the Board

---

[4] Omissions-based liability is separate from the falsity-based "directly contradicts" test envisioned by Defendants. DB6-7, 11, 13; *see Facebook*, 87 F.4th at 948 (the tests are disjunctive); *Glazer II*, 63 F.4th at 764 (same); Order at 13 (same).

[5] Onsemi's hypothetical statement that cancellations *could* occur by mutual agreement (DB8), and Defendants' allegedly misleading risk factors (DB10), fail to immunize Defendants for the same reason. *Carvana*, 759 F. Supp. 3d at 953, 955; *Glazer II*, 63 F.4th at 779, *see also id.* at 781 (known "likelihood" of risk materialization negated caution).

6

about: Onsemi's ability to manage "revenue long-term in a stable supply/demand with LTSAs"[6] amid the Power Solutions Group sustaining $480 million in (only partially offset) SiC losses; rising LTSA amendment frequency; and at-risk gross margin expectations necessitating "true-up[.]" ¶¶97, 99. Corroborating El-Khoury and Trent, CW1 confirmed that, as of 4Q2022, a military customer had not yet placed the bulk of its orders (valued at ~$6-7 million) scheduled for 1Q2023—orders that were *still* not placed by July 2023. ¶¶89-92, 98. Onsemi's ERM team (reporting to El-Khoury and Trent) viewed "LTSA Customer Compliance" risk as rising nearly 60% in priority from 2021 to 2022. ¶¶65, 103.[7] These facts ran counter to Defendants' claims that for all LTSAs ("not just in automotive") revenues were "very, very predictable" and order volumes were "very, very stable[,]" such that Onsemi had seen "no pressure on" demand. ¶116. By making such positive claims, Defendants "had a duty to disclose adverse information that cut against" the positive statements. *Karinski*, 2020 WL 281716, *12.

Moreover, the underlying challenges misrepresented by Defendants only grew. As of May 18-19, 2023 (*i.e.*, mid-2Q), demand was "softening in most markets" (¶101) and LTSA amendments had surged to "38 in process" from 15 signed in 1Q2023.[8] ¶¶101, 105. Onsemi saw "90 amendments" signed by 2Q2023's end, and "another 110-in process" by mid-August: *a 500% and 189% 1-quarter increase*, respectively.[9] ¶¶104-05. Per the May

---

[6] Given Defendants' increasingly active revenue management throughout the Class Period due to LTSA amendments (¶¶97, 100-01, 103-04, 106), their claim that "sales and revenue estimates" were not even "influenced" by LTSA "modifications" is specious. DB1-2, 8, 14. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1091 (9th Cir. 2002) (DB8) is inapt as it concerned an alleged revenue recognition accounting scheme not at issue here.

[7] Defendants did not "ensure" compliance. DB2. By February 2022 and after, "ensur[ing]" compliance was a mere "Initiative[]" and "Goal[.]" ¶97; ¶104 (noting "drops"); ¶158.

[8] Defendants' claim that no misstatement concerned LTSA "frequency" or "volume" (DB9) is wrong. *E.g.*, ¶116 ("no pressure" on orders). Also, risks evidenced by LTSA infirmity (amendments) can make statements touting LTSA benefits misleading, even if the risk's *harm* (negative financial impact) is not determined. *See Facebook*, 87 F.4th at 949-50.

[9] *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (DB9), analyzed

7

18 Audit Committee materials, Onsemi needed to obtain amendment offsets—but only had a 50% probability of obtaining at least one such offset—to "Close the Gap" on the Company's "2023 Recovery Plan." ¶100. The Motion ignores these allegations (DB11 n.2), but they "provide a reasonable inference" (Order at 22) to support, *e.g.*, that Trent's promise just days later in response to an analyst question that "both companies" get a "win-win" was misleading. ¶125. Defendants admitted that "offsets" refer to revenue impacts (¶84), the "Gap" was discussed by the Audit Committee whose purview is financial risk (¶¶73, 100), and the allegations surfaced while the Board was simultaneously concerned about (i) preserving "revenue/margin/inventory goals" in LTSA renegotiations and (ii) customer retention, which kept Defendants "***awake at night***[.]" ¶101.

By July and August 2023, "Q'3" LTSA noncompliance rose in ERM priority, requiring Board and Audit Committee escalations. ¶¶102-04.[10] Onsemi viewed revenue "non-linearity" (*i.e.*, forecast deviation) caused by "LTSA amendments" as a key risk. ¶104. Far from "net-net [] a win-win" (¶138) or "offset[ting] the gap" (¶144), the Board discussed the case study of Kodiak (a customer who lowered volumes), and was warned of similar amendments "as compliance drops." ¶104. The Order found the SAC did not allege any customer cut demand and left Onsemi "with the ultimate loss." Order at 25-26. But the TAC's new facts support a reasonable inference this exact scenario transpired with Kodiak and with other customers at severe risk of doing the same.[11] *Contra* DB8-9 (asserting TAC does not identify any "amendment" or "modification"). Indeed, a SiC customer's $200

statements that did not "intimate[]" "state[]" or "impl[y] anything" regarding the omitted information. *Brody*'s "weak facts" present an "exception to the general rule" that omitted information's "materiality is an issue for the factfinder" not a "motion to dismiss." *Schulein v. Petroleum Dev. Corp.*, 2012 WL 12884851, *6 (C.D. Cal. June 25, 2012).

[10] Defendants suggest this "escalation" is unsupported. DB9. Wrong. The head of Onsemi's ERM was clear "***top*** risks" get funneled to Board members (¶66), not trivial ones.

[11] Regardless, the TAC need not allege terms of specific LTSA amendments to state a claim. DB8-9; *see Glazer II*, 63 F.4th at 770 (plaintiff need not allege "*specific* misclassified deals" where defendants' statements were not about specific deals) (original emphasis).

8

million pull-back of 2023 revenue occurred, admittedly, "outside of" a win-win. ¶150-52.[12] Misstatements, made as concern mounted that LTSAs were not preserving financial goals (¶¶129, 134-35, 138-39, 144), "painted a picture" that was "contrary to the facts[.]" *In re Apollo Grp. Inc. Sec. Litig.*, 395 F. Supp. 2d 906, 921 (D. Ariz. 2005); *In re Fastly, Inc. Sec. Litig.*, 2025 WL 2721693, *11 (N.D. Cal. Sep. 24, 2025) (misleading to omit known "negative impacts" on dealmaking when statements downplayed inability to close deals).

On September 9, 2023, El-Khoury presented the Board a memo advocating a new initiative to counter LTSA "decommits" because "***we are losing more revenue***" than expected and Onsemi had amassed $2 billion of "stranded inventory" "built for customers who are no longer in need of it[.]" ¶106. This memo belied El-Khoury's statement two days earlier that if customers were "not interested in a win-win, but a win/lose," the LTSAs were "ironclad" and that net of a "win-win," Onsemi would not be "left holding the bag." ¶144; *Zhu v. Taronis Techs. Inc.*, 2020 WL 1703680, *4 (D. Ariz. April 8, 2020) (actionable misstatement gave impression of "a more significant agreement" than was reached). Defendants seek cover from the 2-day span. DB11.[13] This falls flat because El-Khoury's pre-written memo spoke about an ongoing problem in need of management. *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, *6, 10 (N.D. Cal. Nov. 4, 2020) (4-day span between statement and action was contemporaneous at the "ordinary speed of a large company").

There is no question Defendants misled investors when comparing analysts' positive Class Period view of LTSA benefits (¶¶97, 100), to after the corrective disclosures (¶¶154-55, 216-20)—including when one mocked El-Khoury's "iron-clad" statement (¶154). *Alich*

---

[12] The Motion does not challenge loss causation, so the misstatements' "nexus" with the corrective disclosures (DB10-11) is irrelevant. Yet, the Board admitted the obvious link to the LTSAs' "[e]nforceability and predictability." ¶157. In fact, the TAC alleges the Q3 2023 SiC LTSA amendment signaled only the "tip of the spear" and Onsemi later admitted LTSA amendments contributed to approximately ***$1.2 billion*** in 2024 losses. ¶¶17, 162-63.

[13] *Ronconi v. Larkin*, 253 F.3d 423, 431-33 (9th Cir. 2001) (DB11) is inapt as it analyzed an April 1996 disclosure that allegedly made a January 1996 statement misleading, and the disclosure paled to El-Khoury's complaints of lost revenue and "stranded inventory." ¶106.

9

*v. Opendoor Techs. Inc.*, 2024 WL 839146, *7 (D. Ariz. Feb. 28, 2024) (analysts' "perceptions" showed market understanding), *vacated in part*, 2024 WL 2153529 (D. Ariz. May 14, 2024); *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 937, 942-43 (9th Cir. 2023) (post-disclosure reports citing misstatements supported misleadingness).

### B.    The Misstatements Are Not Puffery and Do Not Lack Objectivity[14]

**Puffery**: Defendants assert the Order cements the TAC's misstatements as incurable puffery. DB5.[15] Not so. The Court must consider each statement "in context" (Order at 15), including new allegations. *Howard v. Arconic Inc.*, 2021 WL 2561895, *13 (W.D. Pa. June 23, 2021) (amendment's "new context" gave claims "vitality" negating puffery). Given the TAC's detail about increasing LTSA noncompliance, revenue/margin/inventory goal risks, and other "unflattering facts" in Defendants' possession, their choice to tout LTSAs' benefits in response to analyst questions about how the LTSAs "squared" with market conditions was actionable. Order at 17-18 (citing *Glazer II*, 63 F.4th at 770 (response to analyst not puffery in context)); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1136-37, 1143-44 (9th Cir. 2017) ("nothing slowing down" "very robust" and "very consistent" not puffery); *Orbis Glob. Equity Fund Ltd. v. NortonLifelock Inc.*, 2023 WL 1800963, *18 (D. Ariz. Feb. 7, 2023) ("strong business activity" not puffery); *Maverick Fund, L.D.C. v. First Solar, Inc.*, 2018 WL 6181241, *8 (D. Ariz. Nov. 27, 2018) (similar).[16]

The Motion's sole use of "opinion" quotes the Court's analysis of whether "win-wins" were "amorphous" (DB2 citing Order at 29) and thus Defendants' "opinion"

---

[14] "Law of the case" (DB6) cannot shortcut consideration of the TAC's "own merits[.]" *Askins v. U.S. Dept. of Homeland Sec.*, 899 F.3d 1035, 1042-43 (9th Cir. 2018).

[15] The Motion does not challenge the risk factor statements or the statement that Onsemi saw "no pressure" on order volumes as puffery. ¶116. It was objective—a reasonable inference of **any** pressure renders it misleading. *See Fastly*, 2025 WL 2721693, *7-*8.

[16] In *Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.* (DB6), the alleged misstatements were consistent with the undisclosed facts. 39 F. 4th 1092, 1098 (9th Cir. 2022).

argument (if any) is a puffery challenge (Order at 15) and likewise fails.[17] Moreover, Defendants' win-win guarantees are unlike the "inherently aspirational" "code of conduct" statements in *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017) (Order at 15, 17, 19, 21, 25).

**Objectivity**: The TAC also cures the Order's finding that "win-win" was "incapable of objective verification" by supplying Defendants' "contemporaneous definition" of "win-win." Order at 21. Before the Class Period, Defendants defined "win-wins" to require an "offset" to revenue reductions, such that amendments: were not financially "dilutive"; maintained utilization of Onsemi's LTSA-committed manufacturing capacity; and ensured Onsemi was not "left holding the bag" of inventory. ¶¶74-85; *Glazing Emps. & Glaziers Union Local #27 Pension & Ret. Fund v. iRhythm Techs., Inc.*, 2025 WL 1569421, *6-7 (N.D. Cal. June 3, 2025) ("high risk" was not "too vague" given company defined it). Defendants persistently conveyed LTSA amendments as "win-win" despite knowing (and omitting) Onsemi had a 50% chance of obtaining an offset and Board-level concern that Onsemi could not obtain LTSA amendments preserving "revenue/margin/inventory goals[.]" ¶¶100-01, 125. Defendants repeated the "win-win" mantra and doubled down by claiming LTSAs were "ironclad" despite evidence that noncompliance was rising as customers were delaying or lowering orders, diluting revenue and saddling Onsemi with $2 billion in inventory because they were "no longer in need of it."[18] ¶¶103-06, 138-39,

_____

[17] Defendants may not expand any "opinion" arguments (*e.g.*, to discuss the *Omnicare* prongs) on reply. Regardless, Defendants' statements are actionable because they omitted material known facts. *See* §III.A, *supra*.; *Ind. Pub. Ret. Sys. v. Rivian Auto., Inc.*, 2025 WL 2426714, *5 (C.D. Cal. Aug. 20, 2025) (opinion actionable "where [d]efendants omitted facts regarding [] reliability" of backlog (an indicium of demand)).

[18] Interpreting LTSA "viability" as existing when the memo was written, rather than a pre-Class Period state (DB11), ignores that LTSAs needed to be "put …back under control[,]" Onsemi had let customers "move share" elsewhere, was "losing more revenue than" expected, and was left with over $2 billion of "stranded" inventory that customers no longer needed. ¶106; *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 995 (S.D. Cal. June 7, 2005) (ambiguities must be resolved in plaintiff's favor "at this stage").

144. Defendants' statements thus created a misimpression of Onsemi's state of affairs compared to "the one that actually exist[ed]." *City of Miami Gen. Emps'. & Sanitation Emps'. Ret. Tr. v. RH, Inc.*, 302 F. Supp. 3d 1028, 1042 (N.D. Cal. Feb. 26, 2018).

Defendants argue the El-Khoury's memo regarding inventory (¶106) is irrelevant because Onsemi disclosed its inventory value during the Class Period. DB11-12. They miss the point. Onsemi's inventory figures did not inform investors that "customers [were] no longer in need of it." ¶106. Moreover, Plaintiff does not allege the inventory figures as a basis for the "win-win" statements' misleadingness. But that does not mean inventory is somehow incapable of factoring into objective criteria of what a "win" required.

**C.    The PSLRA Safe Harbor Does Not Apply to Present-Looking Statements**

The Motion requests safe harbor for the risk factors and three others. DB5-6, 13-14. Like statements concerning LTSAs' structure, legal liability, and "ironclad" nature (Order at 26, 30), the statements in Paragraphs 125, 138, and 139 misled because they conveyed a *present* policy and position of strength during *current* renegotiations of *existing* LTSAs, while omitting *known* LTSA instability. *See e.g.*, ¶125 ("If we can create a win-win with that customer" "there's got to be a win for both companies"), *see also id.* ("*we're getting* [] call[s] quarters in advance"; "think about the visibility *we have*"; "*Now* we're getting that call in advance"); ¶138 (discussing "conversations we're having" to "have a win-win" and that LTSAs "forced" renegotiations "to land in a much better spot" for Onsemi); ¶139 (current LTSAs dictate customers "have a small bag to carry also, not just ON Semi").

Defendants' misleading risk factors were present-looking too: conveying "total sales estimates" and "total revenue estimates" based on supposedly "committed" orders that "could be influenced by" order "modifications" when such risks had materialized. ¶¶111, 120-21, 129, 134-35; *see* §III.A, *supra*; *Fastly*, 2025 WL 2721693, *14 (warnings not forward-looking if risk materialized). Even if forward-looking, the alleged misstatements are actionable. Defendants **knew** the facts making their statements misleading (§IV, *infra*) and the Motion does not assert any cautionary language. *Quality Sys.*, 865 F.3d at 1141.

12

## IV.    The TAC Alleges a Strong Inference of Scienter

Scienter is alleged by facts of actual knowledge or of "[r]ecklessly turning a blind eye to impropriety[.]" *In re VeriFone Holdings, Inc., Sec. Litig.*, 704 F.3d 694, 708 (9th Cir. 2012); *see also* Order at 15-16. "[M]otive" is not required. *Tellabs, Inc. v. Makor Issues & Rts. Ltd.*, 551 U.S. 308, 325 (2007); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 707 (9th Cir. 2021) ("stock sales" unnecessary).[19] Allegations must be "taken collectively" and "holistically." *Tellabs, Inc.*, 551 U.S. at 326. A scienter inference "need not be irrefutable," and is "strong" if it is "at least as likely" as opposing ones. *Id*. at 324, 328-29.

### A.    Defendants Shared Information Undermining Their Misstatements in Board, Audit Committee, and Executive Risk Committee Meetings

Defendants regularly (often just days or weeks before misstatements) presented or received Board and Audit Committee information concerning LTSA amendments and risks to Onsemi's revenue/margin/inventory goals starkly contrasting their public portrayal of the LTSAs as providing stable order volumes and offsetting negative financial impact during a period of market softness. *See Longo v. OSI Sys., Inc.*, 2021 WL 1232678, *9 (C.D. Cal. Mar. 31, 2021) (scienter where defendants monitored and specifically discussed financial results and operational status related to the fraud during board meetings); *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, *10 (C.D. Cal. Aug. 4, 2014) (similar); *Immune Response*, 375 F. Supp. 2d at 1022 (publishing statements though defendants "knew facts suggesting the statements" were misleading "is classic evidence of scienter"); *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 971 n.17 (N.D. Cal. 2005) (relevant scienter facts "ordinarily precede the alleged misstatements").

El-Khoury's September 9, 2023 pre-written memo to the Board was intended to commission a new initiative aimed at curbing LTSA "decommits" and their negative

---

[19] In fact, a dismissal's heavy reliance on motive's absence presents the "unusual case[.]" *Apple*, 2020 WL 6482014, *12-*13 (distinguishing *Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020) (DB16) from established Supreme Court and Ninth Circuit law).

revenue and inventory impact. ¶¶106, 172. The memo undisputably refers to LTSA issues existing prior to Defendants' misstatements and, thus, supports Defendants' state of mind and is not undercut by a 2-day difference. *Flynn v. Sientra, Inc.*, 2016 WL 3360676, *15 (C.D. Cal. June 9, 2016) ("[t]emporal proximity" between misstatement and a later disclosure or admission supports scienter) (collecting cases).

Defendants also knew LTSAs were not promoting compliance before the Class Period since in Q1 2023 CW1 "trac[ed] the" orders not being placed to an executive who "reported" to El-Khoury. *Robb v. Fitbit Inc.*, 2017 WL 219673, *6 & n.6 (N.D. Cal. Jan.19, 2017); *see* ¶¶89-92, 178, 191. Likewise, Defendants' receipt of quarterly ERM reports and attendance at monthly Executive Risk Committee meetings support scienter because they discussed trying to mitigate "top tier risks" and to elevate the most problematic risks to the Board, including LTSA amendments and their negative impact. ¶¶66-72; *In re SunPower Corp. Sec. Litig.*, 769 F. Supp. 3d 1042, 1054 (N.D. Cal. Mar. 6, 2025) (participating in meeting where risks discussed sufficient for scienter).

### B.    Defendants' Post-Class Period Admissions Support Scienter

El-Khoury's post-class period admissions revealed that Defendants knew when making their earlier misstatements that Onsemi's LTSA amendments did not guarantee wins because customers could indefinitely delay or cancel orders without offset, rendering their promises of "win-wins" illusory. For instance, after the Class Period, El-Khoury admitted for the first time that LTSAs could be renegotiated in a way that permitted the "win" achieved for Onsemi to be pushed out over an indefinite "longer term" horizon. ¶153; *Apple*, 2020 WL 6482014, *6, *9-10 (post-class period admission supports scienter); *In re January 2021 Short Squeeze Trading Litig.*, 620 F. Supp. 3d 1231, 1256 (S.D. Fla. 2022) (even "subtle admission" yielded "particularized" scienter inference). Defendants' fact dispute that Onsemi obtained a win by pushing the $200 million 2023 forecast shortfall into 2024 (DB14) is wrong. Onsemi "derisk[ed]" its 2024 forecast, which was "not assuming" an increase of $200 million to make up the lost 2023 revenue. ¶¶159-60. The

TAC's facts must be accepted. *Immune Response*, 375 F. Supp. 2d at 995.

The TAC also alleges an inference Defendants knew the automotive OEM would cut $200 million in 2023 orders without a corresponding offset given Defendants' representation (and CW1's corroboration) that clients called 6 to 9 months in advance of softening demand.[20] ¶¶206-211; *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1232-33 (9th Cir. 2004) (reasonable to "infer from these admissions that," even while making misstatements "Oracle had known" omitted facts).

### C. Defendants' Roles in Negotiating, Signing, Executing, Monitoring, and Providing Detailed Updates about the LTSAs Support Scienter

Defendants knew LTSAs did not ensure financial predictability, stability, or "win-win" amendments because they were personally involved in every facet of the LTSA process.[21] El-Khoury and Trent admit they negotiated and signed the LTSAs and amendments, fielded customer calls regarding LTSA amendments, and participated in "true-up" to account for amendments. ¶¶167, 174-75, 206-208. CW1 confirmed El-Khoury managed the LTSAs through business heads. ¶178. Further, Defendants regularly attended and spoke at post-quarter-end "all-hands" meetings where, per CW1, El-Khoury only "really spoke about" LTSAs. ¶179. Defendants also personally "triangulate[d] the health of the business" through reviews of ~30 pages of KPIs (some tied to their 2023 compensation), at least weekly and some (like LTSA amendments) "more than once a week" such that they "don't miss anything." ¶¶183-85; *NVIDIA*, 81 F.4th at 940 ("access to detailed data" undermining misstatements, and "admitted" monitoring supported

---

[20] Defendants' suggestion that the absence of an allegation in the TAC that they were told of the OEM's order reduction during the Class Period permits the Court to assume no such communication exists (DB9-10, 14) is improper. *Tellabs*, 551 U.S. at 314 (court can only consider inferences "from the facts alleged"); *id.* at 324 (no "smoking-gun" required); *see also* Order at 8 (inappropriate to view the term "recent" in Defendants' favor).
[21] The TAC's allegations of Defendants' admitted actions "go beyond" mere claims of executive involvement. *Robb*, 2017 WL 219673, *5 (distinguishing *Police Ret. Sys. of St. Louis, v. Intuitive Surgical, Inc.*, 759 F.3d 1051 (9th Cir. 2014) (DB16)).

15

scienter); *McKesson*, 411 F. Supp. 3d at  601-02 (scienter pled given CEO and CFO's "positions" where they "touted intimate knowledge" and tracked relevant data); *Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 2024 WL 3708800, *15-16 (D. Ariz. Aug. 7, 2024) (similar); *Scheller v. Nutanix, Inc.*, 2020 WL 5500422, *10 (N.D. Cal. Sep. 11, 2020) (bonuses' ties to metrics supported defendants "aware[ness] of" same).

Throughout the Class Period, Defendants also discussed and answered analysts' questions about LTSAs in detail during at least 27 investor calls and conferences. ¶188; *See In re Qualcomm Inc. Sec. Litig.*, 2019 WL 1239301, *10-11 (S.D. Cal. Mar. 18, 2019) (repeated touting supported scienter). Defendants' repeated messaging during said events aimed to shore up LTSAs' credibility to stave off concern about Onsemi's "ability to sustain margin (and pricing)" while instilling "confiden[ce]" in its ability hits the $1 billion revenue target. ¶¶97, 100; *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 741 (N.D. Cal. 2022) (repeated statements "at odds with reality" supported scienter).

### D.    The Core Operations Doctrine Supports Scienter

While the Order found the core operations was inapplicable because the SAC had not alleged facts making "obvious" that statements guaranteeing a "win-win" during renegotiations was "objectively" misleading (Order at 32), Onsemi's internal documents reveal Defendants' palpable concern over revenue "non-linearity" risk stemming from LTSA noncompliance and on securing amendments aimed to preserve "quarterly commit[ments]" in the face of a 50% chance of securing an offset. ¶¶100,104. In fact, customer flight was keeping Defendants "awake at night." ¶¶97, 101. It "would be absurd to suggest" Defendants lacked a culpable state of mind. *Longo*, 2021 WL 1232678, *9.

Moreover, the TAC sufficiently alleges Defendants' "primary focus" and "core business" was "obtaining" SiC LTSAs from "automotive" and "industrial" customers. ¶¶200-02. Indeed, LTSAs represented 77% of Onsemi's 2023 revenue coverage. ¶199. Further, Defendants also knew of, *e.g.*, a $480 million SiC loss (¶97), concerns that amendments could not preserve financial goals (¶101), the "lower volumes" from a major

16

LTSA customer (¶104), and that Onsemi was "losing [] revenue" and lacked customers to absorb its $2 billion inventory stockpile (¶106). Given the LTSAs' import to Onsemi and Defendants' deep involvement with, and close monitoring of, LTSA compliance, it would be absurd to suggest they were not aware of amendments severely impacting Onsemi's financial results and goals. *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 988 (9th Cir. 2008) ("hard to believe" defendants did not know issue impacting "tens of millions"); *Sea*, 2024 WL 3708800, *16 (admitted involvement in core business sufficed).

### E.    A Holistic Analysis Supports a Strong Inference of Scienter

The TAC alleges that on the heels of a years-long campaign of extolling LTSAs as Onsemi's secret sauce to mitigate risk from market fluctuations—the big market downturn that would test LTSAs' mettle arrived and investors repeatedly sought clarity on Onsemi's "ability to sustain margin (and pricing)" through LTSAs. ¶¶46-57, 97, 100. Understanding this information was material to investors (¶45), Defendants knowingly or recklessly made statements regarding the LTSAs and their purported benefits (including guaranteed "wins" during renegotiations), while omitting information regarding runaway LTSA amendments that significantly impacted Onsemi's financial performance and goals, in hopes a market upturn would spare the blowback from admitting LTSAs' non-viability. "[C]oncealing bad news in the hope that it will be overtaken by good news" presents a strong inference of scienter. *Luo v. Spectrum Pharms., Inc.*, 2024 WL 4443323, at *15 (D. Nev. Oct. 7, 2024). The competing inference—that in the face of shifting demand Defendants made an "honest mistake" (Order at 33) describing LTSAs and the "win-win" solutions promised—is belied by analysts' reactions (¶¶154-55, 157), Onsemi documents reflecting mounting LTSA noncompliance and amendment risk at every turn (¶¶68, 97-106), customers' purchase patterns (¶¶90-92, 104), Defendants' admissions that LTSAs did not work as previously described (¶¶150-53, 158), and staggering financial fallout (¶¶148, 159-162).

### CONCLUSION

Wherefore, the Motion should be denied.

17

DATED: November 10, 2025

Respectfully submitted,

*/s/ Gary A. Gotto*

**KELLER RORHBACK L.L.P**
Gary A. Gotto
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: 602-484-0088
Lax: 602-284-2822
ggotto@kellerrohrback.com

*Local Counsel for Lead Plaintiff*
*Jeffery S. Lew and the Class*

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
(State of Connecticut Juris No. 435545)
Gregory M. Potrepka (admitted *pro hac vice*)
(State of Connecticut Juris No. 437326)
Morgan M. Embleton (to be admitted *pro hac vice*)
(State of Louisiana Juris No. 35769)
David C. Jaynes (to be admitted *pro hac vice*)
(State of California Juris No. 338917)
P. Cole von Richthofen (to be admitted *pro hac vice*)
(State of Connecticut Juris No. 444159)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com
Email: membleton@zlk.com
Email: djaynes@zlk.com
Email: cvrichthofen@zlk.com

*Lead Counsel for Lead Plaintiff*
*Jeffery S. Lew and the Class*

18