David B. Rosenbaum (009819)
Joseph N. Roth (025725)
Allie Karpurk (037029)
OSBORN MALEDON PA
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 640-9000
drosenbaum@omlaw.com
jroth@omlaw.com
akarpurk@omlaw.com

Mark R.S. Foster (*pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
(650) 470-4500
Mark.Foster@skadden.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey S. Lew, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ON Semiconductor Corporation; Hassane El-Khoury; and Thad Trent,<br><br>Defendants. | **CLASS ACTION**<br><br>CASE NO.: 2:24-cv-00594-SMB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS & MOTION TO STRIKE THIRD AMENDED COMPLAINT**<br><br>Oral Argument Requested |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................ii

TABLE OF ABBREVIATIONS ............................................................................iii

I.  PRELIMINARY STATEMENT ................................................................ 1

II.  PLAINTIFF IMPROPERLY SEEKS RECONSIDERATION..................... 1

III.  THE COPIED ALLEGATIONS SHOULD BE STRICKEN OR
IGNORED .................................................................................................. 2

IV.  PLAINTIFF FAILS TO STATE A SECTION 10(b) CLAIM .................... 3

A.  The TAC Is A Puzzle Pleading Lacking Particularity ...................... 3

B.  The Challenged Statements Are Not Actionable As A Matter
Of Law ............................................................................................. 3

C.  Plaintiff Does Not Show Any Statement Was Misleading By
Omission .......................................................................................... 5

D.  Plaintiff Does Not Plead A Strong Inference Of Scienter ................. 8

1.  Plaintiff's Failure to Plead Motive Undermines
Scienter....................................................................................... 9

2.  The TAC Fails to Raise a Strong Inference of Scienter ......... 9

V.  CONCLUSION ........................................................................................ 11

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Apple Inc. Sec. Litigation*,
No. 19-CV-02033-YGR, 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020)............... 11

*In re Connetics Corp. Sec. Litigation ("Connetics II")*,
No. C 07-02940 SI, 2008 WL 3842938 (N.D. Cal. Aug. 14, 2008) ........................ 2

*In re Connetics Corp. Sec. Litigation ("Connetics I")*,
542 F. Supp. 2d 996 (N.D. Cal. 2008) .................................................................... 2

*Forsyth v. HP Inc.*,
No. 5:16-CV-04775-EJD, 2020 WL 6081719 (N.D. Cal. Oct. 15, 2020) ............. 2

*Glazer Capital Management, LP v. Forescout Technologies, Inc*,
63 F. 4th 747 (9th Cir. 2023)................................................................................... 4

*Police Ret. Sys. of St. Louis v. Intuitive Surgical*,
759 F.3d 1051 (9th Cir. 2014).............................................................................. 10

*Joyce v. Amazon.com, Inc.*,
No. 2:22-CV-00617, 2023 WL 8370101 (W.D. Wash. Dec. 4, 2023) ................. 10

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008).............................................................................. 10

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020).......................................................................... 10, 11

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
575 U.S. 175 (2015) ................................................................................................ 4

*Prodanova v. H.C. Wainwright & Co.*,
993 F.3d 1097 (9th Cir. 2021)........................................................................... 9, 11

*Safety Dynamics Inc. v. General Star Indemnity Co.*,
No. CV0900695TUCCKJDTF, 2014 WL 11281291 (D. Ariz. Mar. 5, 2014) ........ 2

*United Association National Pension Fund v. Carvana Co.*,
759 F. Supp. 3d 926 (D. Ariz. 2024).................................................................... 3

**STATUTES**

15 U.S.C. § 78u-5 .................................................................................................... 4

**RULES**

Local Rule of Civil Procedure 7.2(g) ...................................................................... 2

ii

## TABLE OF ABBREVIATIONS

| Abbreviation | Unabbreviated Term |
|---|---|
| ¶ | TAC paragraph number, unless otherwise specified |
| 1Q23 | First Quarter (1Q23 is the first quarter of FY23 ending March 30) |
| 2Q23 | Second Quarter (2Q23 is the second quarter of FY23 ending June 30) |
| Class Period | Between May 1, 2023 and October 27, 2023 |
| CW | Confidential Witness |
| Defendants | onsemi, El-Khoury, and Trent |
| Doc. | Document filed on PACER in this action |
| El-Khoury | Individual Defendant Hassane El-Khoury |
| FY | Fiscal Year |
| Lew | Lead Plaintiff Jeffrey S. Lew |
| LTSA | Long-Term Supply Agreement |
| Motion | onsemi's Motion to Dismiss & Strike the TAC (Doc. 67) |
| onsemi | ON Semiconductor Corporation |
| Opposition | Plaintiff's Opposition to onsemi's Motion (Doc. 68) |
| Order | This Court's July 11, 2025 Order Dismissing the SAC (Doc. 62) |
| PSLRA | Private Securities Litigation Reform Act |
| SAC | Second Amended Complaint (Doc. 39) |
| SEC | Securities and Exchange Commission |
| SiC | Silicon Carbide |
| TAC | Third Amended Complaint (Doc. 63) |
| Trent | Individual Defendant Thad Trent |

iii

## I.      PRELIMINARY STATEMENT

Plaintiff's Opposition does not squarely respond to most of Defendants' arguments. Instead, it mashes together decontextualized soundbites from the challenged statements, the Copied Allegations, and an avalanche of inapt case law.  Plaintiff also repeats arguments, already rejected, from the last round of briefing.  This exposes the TAC for what it is: a redo without any fixes.

Plaintiff fails to connect the dots between the Copied Allegations and the challenged statements.  He also fails to link the Copied Allegations to his fraud theory.  Plaintiff filed this case after onsemi announced on October 30, 2023, that it was reducing its FY23 SiC revenue guidance by $200 million to account for a "recent reduction" by one automotive customer.  (¶ 14).  But a customer's purchase reductions reveals no fraud.  As this Court held, Plaintiff "conflates breach or cancellation of an LTSA with a permissible modification and has not established a coherent theory" (Order 29:11), particularly given Plaintiff's failure to show any LTSA modification left onsemi with an "ultimate loss." (Order 26:2.)  Nothing has changed.

Notwithstanding his allegations about an increasing number of LTSA amendments and LTSA "risks," Plaintiff still fails to identify a specific LTSA amendment that was not a win-win.  So Plaintiff resorts to asserting that onsemi's sales estimates were "negatively influenced" by LTSA amendments (¶¶ 112, 122, 131, 136) and that "financially-dilutive amendments antithetical to win-wins were swelling." (Opp. 6:7-8.)  Plaintiff's conclusory assertions lack factual support.  Fabrication, conflation, and speculation do not cure the defects the Order detailed.  These flaws warrant dismissal—this time with prejudice.

## II.     PLAINTIFF IMPROPERLY SEEKS RECONSIDERATION

Plaintiff recycles many of the same allegations and arguments the Court rejected last time around—on puffery, objectivity, and opinion statements (Opp. 10-12; ECF 45 at 8-10; Order 14-15, 17-19, 21, 25, 29), on forward-looking statements (Opp. 12; ECF 45 at 12; Order 16, 23, 26-27, 30), on Defendants' alleged "admissions" (Opp. 14-16; ECF 45 at 15-16; Order 29), and on the core operations inference and Defendants' roles negotiating

LTSAs (Opp. 15-17; ECF 45 at 14-17; Order 30-32).  The Opposition's reconsideration attempt is procedurally improper under LRCiv 7.2(g) and further fails because Plaintiff does not point to any "manifest error" or "new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence."  *Safety Dynamics Inc. v. Gen. Star Indem. Co.*, 2014 WL 11281291, at *1 (D. Ariz. Mar. 5, 2014); LRCiv 7.2(g).

**III.      THE COPIED ALLEGATIONS SHOULD BE STRICKEN OR IGNORED**

Plaintiff misconstrues the law and offers a litany of inapt cases that do not overcome the fact that Rule 11 prohibits Plaintiff's counsel from simply cutting and pasting allegations without independent corroboration.  (Mot. 4.)  From the outset, Plaintiff's reliance on *Forsyth v. HP Inc.* is misguided because *Forsyth* did not involve copied allegations or Rule 11.  2020 WL 6081719, at *2-3, 5 (N.D. Cal. Oct. 15, 2020).  The pertinent question is whether Plaintiff's attorneys met their Rule 11 obligation to personally validate the truth and legal reasonableness of every allegation.  They did not.

Because Plaintiff's attorneys "did not personally investigate their claims against defendants," the Court may strike the uncorroborated copied allegations using Rule 12(f).  *In re Connetics Corp. Sec. Litig.* ("*Connetics I*"), 542 F. Supp. 2d 996, 1005-06 (N.D. Cal. 2008); (Mot. 4:7-13).  For example, Plaintiff's counsel asserts that certain materials were "escalated" to the board (Opp. 6:22, 8:12), but the Copied Allegations do not quote that verbiage—it is merely dramatic editorializing by someone who has not seen the documents.

Plaintiff's cases do not save him.  Plaintiff relies on "*Connetics II*," (Opp. 3) but those plaintiffs cured a deficient complaint from *Connetics I* only after they "explained what other sources they rely on to formulate their [copied] factual allegations," and demonstrated their efforts to corroborate with other witnesses.  *In re Connetics Corp. Sec. Litig.*, 2008 WL 3842938, at *4 (N.D. Cal. Aug. 14, 2008).  Plaintiff says that the Copied Allegations are "corroborated by CW1 and public sources." (Opp. 4:5-7)  But neither CW1 nor "public sources" corroborate the Copied Allegations and Plaintiff does not match any of the Copied Allegations to either "source."  The failure to independently corroborate the Copied Allegations warrants striking them. (Mot. 4.)  They fail to show fraud in any case.

## IV.   PLAINTIFF FAILS TO STATE A SECTION 10(b) CLAIM

### A.   The TAC Is A Puzzle Pleading Lacking Particularity

Defendants showed that the TAC is an impermissible puzzle pleading.  (Mot. 5.) Plaintiff resists that conclusion (Opp. 4) but cannot escape that the TAC remains nothing more than "'lengthy statements attributed to the defendants, followed by … a general list of omissions that were required to make the statements not misleading.'"  (Order 34:11-16 (quoting *United Ass'n Nat'l Pension Fund v. Carvana Co.*, 759 F. Supp. 3d 926, 949 (D. Ariz. 2024).)  Defendants and the Court are "left putting together the pieces of Lew's puzzle as he hides under a cloud of vagueness and imprecision."  (Order 34:10-11.)

Far from offering "bespoke" reasons of falsity (Opp. 5 n.3), the TAC (and the Opposition) "hide[] under a cloud of vagueness and imprecision" (Order 34:11) by making a host of arguments that do not track to the list of alleged omissions, are not specific to each challenged statement, and are completely disconnected from Plaintiff's fraud theory.

### B.   The Challenged Statements Are Not Actionable As A Matter Of Law

Four of the challenged statements are copied from the SAC.  (Mot. 6; *Compare* ¶¶ 116, 125, 138-39, 144 *with* SAC ¶¶ 78, 81, 83-84, 87.)  The Court held that all of those challenged statements are not actionable as a matter of law—either because they were non-actionable puffery that were "incapable of objective verification," or they were protected by the Safe Harbor for forward-looking statements.  (Mot. 5-6; Order 17, 21, 25, 28-29.) The unchanged challenged statements remain non-actionable.

Plaintiff does not dispute the TAC adds only three new challenged statements—one from May 1, 2023 describing LTSAs as "very, very stable" (¶ 116); another "win-win" statement from August 30, 2023 (¶ 139); and the repeated Risk Disclosure Statement that warned "sales estimates … could be influenced by" among other things, "modifications to customer agreements" (¶¶ 111-12, 115, 119-22, 129-31, 133-36); (Mot. 3.)

The Opposition does not squarely respond to Defendant's showing that the first two new statements ("very, very stable" and "win win") are substantially identical to the puffing statements that this Court previously held are non-actionable because they are

3

"incapable of objective verification."  (Mot. 6 (quoting Order 17, 21).)  Instead of addressing these new statements, Plaintiff invites the Court to reconsider its puffery holding.  In doing so, the Opposition recycles the same rejected arguments and same inapt case law from the last round of briefing.  (*Compare* Opp. 10 *with* ECF. 45 at 8.)

Plaintiff's backdoor reconsideration attempt is improper and meritless in any case.  Plaintiff argues that new "context"—namely, "unflattering facts in Defendants' possession"—renders the statements actionable.  (Opp. 10:7-11.)  Putting aside that Plaintiff does not allege any unflattering facts inconsistent with the challenged statements, "context" does not save the TAC from dismissal.  The context courts consider are the statements themselves in light of "facts [a defendant] did provide …, as well as any other hedges, disclaimers, or qualifications it included in its [] statement."  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 196 (2015).  Thus, "context" is what was said to investors, which has not changed from the SAC to the TAC.

Plaintiff's cited case law accords.  As this Court previously recognized, the distinguishing "context" in the Ninth Circuit's *Glazer II* decision (Opp. 5, 6, 8, 10) was that the "'statements went beyond mere optimism by providing a concrete description of the past and present."  (Order 17:27 (quoting *Glazer Cap. Mgmt., LP v. Forescout Techs, Inc,*, 63 F 4th 747, 770-71 (9th Cir. 2023).)  Plaintiff points to no "concrete descriptions" here relating to the challenged puffing statements.  This remains fatal.

As for the Risk Factor Disclosure Statement, it matches the others that the Court previously considered with some non-forward looking elements (Order 23, 26), but clearly focused on what "could" happen with LTSA modifications.  (*E.g.*, ¶¶ 111-12.)  That means it is protected by the PSLRA's Safe Harbor—because it was accompanied by meaningful cautions and Plaintiff does not show that Defendants had actual knowledge of the statement's falsity.  (Mot. 3, 12-13.) The Safe Harbor, therefore, renders the statements non-actionable as a matter of law.  15 U.S.C. § 78u5-(c)(1)(B)(i); (Order 16, 23, 26-28).

Because no challenged statement is actionable, the TAC fails to state a claim.  And, the TAC also fails for the additional reasons discussed below.

C.     **Plaintiff Does Not Show Any Statement Was Misleading By Omission**

Even if the Risk Factor Statement or any other statements were actionable, Plaintiff does not show that any statement was materially misleading by omission.  (Mot. 6-12.) Defendants addressed every alleged omission and showed why the allegation does not show the falsity of the new Risk Disclosure Statement (or any of the other statements for that matter).  (*Id.*)  The Opposition's scatter-shot response fails.

**LTSAs Subject To Mutual Modification.**   The challenged Risk Disclosure Statement warned investors that onsemi's "sales estimates … could be influenced by," among other things, "modification to customer agreements."  (Mot. 7; ¶¶ 111-12, 115, 119-22, 129-31, 133-36.)   Plaintiff insists this was misleading because of alleged (but unidentified) LTSA modifications and the risk of LTSA amendments.  (Opp. 6:14-7:13.) But onsemi made clear in the same SEC filings that "LTSAs were not cancellable unless otherwise mutually agreed," a disclosure that cut against Plaintiff's fraud theory, as this Court previously held.  (Mot. 8.)  The Opposition ignores this disclosure and how it exposes the emptiness of Plaintiff's fraud claim, as before.  (Order 31-32.)

**Failure To Show Sales Estimates "Negatively Influenced."**   The crux of the TAC's theory is that Defendants misled investors by not disclosing that "sales estimates were already being negatively influenced by LTSA amendments."  (¶¶ 112, 122, 131, 136.) Plaintiff does not address Defendants' argument that this fabricated assertion rests on impermissible "conclusory allegations … and unwarranted inferences," this Court already held are "not sufficient to defeat a motion to dismiss."  (Mot. at 8:9-11 (quoting Order 5).)

The Opposition, like the TAC, does not identify any "sales estimates" as of any time that were "negatively influenced."  Nor does it explain what "negatively influenced" even means.  As before, Plaintiff's vague, imprecise pleading is insufficient under the PSLRA and Ninth Circuit precedent (Mot. 8:16) that he wishes away in a footnote.  (Opp. 7 n.6.)

**No LTSA Amendments Specified.**  Defendants also showed that the TAC does not identify a single LTSA amendment that did not achieve a "win-win upon renegotiation." (Mot. 8:18.)  Plaintiff does not dispute this.  Instead, the Opposition doubles down on

5

conclusory assertions, arguing that "Defendants' statements misled by omitting that LTSAs were not insulating Onsemi from softening demand—instead financially-dilutive amendments antithetical to win-wins were swelling." (Opp. 6:7-9.)  Similarly, he asserts that there were "product order decreases" (Opp. 5:22) and that "customers were delaying or lowering orders" and "diluting revenue" (Opp. 11:18).  Plaintiff does not cite any factual allegations backing these or similar assertions.  The factual void is fatal.

**Increased Number Of Amendments.**  Plaintiff relies heavily on the Copied Materials showing an increase in LTSA amendments between 1Q23 and 2Q23 as of August 18, 2023—after most of the challenged statements were made.  (¶¶ 101, 104, 105; Opp. 7, 7 n.8.)  Yet the Opposition has no answer to the fundamental questions asked: What was modified?  Delivery times?  Quantities?  Was more ordered?  Less?  Different products?  Did the amendments affect revenue or forecasts?  Positively?  Negatively?  (Mot. 9.)  Plaintiff expects this Court to infer the negative without any factual support for the inference.   This Court previously rejected Plaintiff's invitation to draw "unwarranted inferences" based on conflation.  (Order 5, 18, 28, 31.)  It should reject the invitation again.

Beyond baseless, Plaintiff's speculation conflicts with his core fraud theory.  The alleged fraud supposedly revealed at the Class Period's end was that one automotive customer's "recent reduction" in demand required lowering onsemi's annual guidance for its SiC products by $200 million.  (¶ 148.)  No other reduction was announced.  No other LTSA amendment was announced.   No other compliance issue, breach or other modification was revealed, and no failure to achieve a "win-win" was reported.  Plaintiff fails thereby to link the alleged omission of increased LTSA amendments with any business, operational, or revenue impact, much less a materially negative one.  This is fatal, as the Court previously recognized.  (*E.g.*, Order 25:27-26:1-17.)

In a footnote, Plaintiff claims its missing link is "irrelevant" and says that onsemi "later admitted LTSA amendments contributed to approximately $1.2 billion in 2024 losses." (Opp. 9 n.12 (citing ¶¶ 17, 162-63.)  There was no such "admission."  On February 10, 2025—472 days after the end of the 179-day Class Period—onsemi announced that its

2024 revenue was lower than 2023 revenue and attributed it to "lower sales volumes across all segments." (¶ 162.) Nothing about that update blames LTSAs or LTSA amendments (let alone from 2023). Plaintiff's logical leaps, chronological jumps, and baseless speculation do not substitute for contemporaneous facts showing falsity. (Mot. 6-7.)

That onsemi never spoke of the number or frequency of LTSA amendments further belies Plaintiff's reliance on the increase in LTSA amendments between 2Q23 and 3Q23. (Mot. 9:4-9.) There is, therefore, no inconsistency between the increase in amendments and the challenged statements. (*Id.*) The Opposition counters this by saying Defendants spoke about there being "no pressure" on LTSA supply. (Opp. 7 n.8 (citing ¶ 116).) Yet, Plaintiff still cannot show how a statement about "no pressure" on supply relates to the number of LTSA amendments.

**Risk Of LTSA Compliance.** Defendants also showed how Plaintiff improperly relies upon the Copied Materials' discussion of LTSA risk, as if monitoring and managing risk is somehow bad, instead of a baseline expectation for a company and its directors. (Mot. 10.) Instead of responding, Plaintiff sprinkles out-of-context soundbites from the Copied Materials about risk management without linking any of it to the challenged statements or Plaintiff's fraud theory. (*E.g.*, Opp. 1, 8.) Plaintiff merely conflates the concept of risk with a negative outcome. This Court held this sort of conflation is improper. (Order 18, 19, 31-32.)

Doubling down on distortion, Plaintiff claims to have addressed the Court's concern that the "SAC did not allege any customer cut demand and left Onsemi 'with the ultimate loss.'" (Opp. 8:16-17 (quoting Order 25-26).) He suggests that one customer, Kodiak, "cut demand" resulting in an "ultimate loss," (*id.*) but what the TAC actually alleges from the Copied Materials is that "an LTSA with Kodiak had 'lower volumes' and concluded that there was an '***increasing risk*** of [LTSA] amendments as compliance drops.'" (¶ 104 (emphasis added).) An LTSA is not an LTSA amendment, and an "increasing risk" is just that. Neither provides a factual basis to infer that "lower volumes" had anything to do with LTSA amendments (as contrasted with new business in the face of new market conditions).

It is not just that Plaintiff conflates risk of amendments with actual amendments, Plaintiff goes so far as to argue that onsemi's Risk Disclosure Statement misled in warning that "sales estimates" could be influenced by "customer agreements" when, according to Plaintiff, that was already happening. (Opp. 12:21-23; 6:14-18.)  When, and in what ways, did such risks materialize as actual impacts on sales estimates?  The Opposition, like the TAC, does not provide any answers.  (Mot. 10:22-25.)

The Copied Allegations mention an initiative to "Close the Gap," but do not explain what the "Gap" was or what it related to, let alone the reference obtaining "offsets" (¶ 101), though Plaintiff seizes upon those ambiguous phrases to speculate these references necessarily establish some type of negative financial impact.  (Opp. 8:1-3, Mot. 11 n.2.)

**September 9, 2023 Memo.**  Plaintiff latches on to the Copied Allegation's reference to a September 9, 2023 memo to the board from El-Khoury.  (Opp. 1:16, 9:7.)  Not only does the memo post-date all of the challenged statements (Mot. 11:9-13), it is prefaced with the statement that the initiative being discussed relates to a focus "on the renewal of the LTSA as we have multiple set to expire in 2024."  (Mot. 11:14-15; ¶ 106.)  "Renewals" are not "amendments," so these do not map to challenged statements about LTSA modifications, "win-wins," "sales estimates," or the "ironclad" nature of LTSAs.  The initiative referenced was goal oriented "to extend the viability of our LTSAs," which underscores the internal view that LTSAs were viable, matching the external statements made.  And that El-Khoury remarked that "everyone assures me" that the company did not amend LTSAs with "stranded inventory" reflects consistency with his statements about his belief about only modifying LTSAs if doing so yielded a "win-win." (¶ 106.)

**Analyst Report Reaction.**  Finally, Plaintiff has merely recycled arguments about analyst reactions from the last round of briefing, which are not contemporaneous facts of falsity.  (Mot. 12:5-10.)  Plaintiff does not respond, other than to improperly rehash the same points and case law as last time.  (*Compare* Opp. 9:19-10:4 *with* ECF 45 at 7:10-15.)

### D.    Plaintiff Does Not Plead A Strong Inference Of Scienter

Plaintiff barely engages with Defendants' scienter arguments, addressing most in

8

footnotes (Opp. 13, 15 nn. 19-21) while repeating arguments that the Court rejected.

### 1. Plaintiff's Failure to Plead Motive Undermines Scienter

Conceding his failure to plead motive, Plaintiff asserts "[m]otive is not required." (Opp. 13.) True, but the Ninth Circuit has held that courts should only "overlook the failure to allege a plausible motive" if the "complaint otherwise asserts **compelling** and particularized facts showing fraudulent intent or deliberate recklessness." *Prodanova v. H.C. Wainwright & Co. LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) (emphasis added) (Mot. 13:1-11 (citing cases)). Plaintiff wishes away this high standard and falls far short of it.

### 2. The TAC Fails to Raise a Strong Inference of Scienter

**Managing Risk.** Plaintiff wants the Court to extrapolate that Defendants' efforts to address LTSA amendments and manage potential risks somehow show that Defendants concealed the truth about "LTSAs issues." (Opp. 13-14.) But nothing in the TAC or the Opposition demonstrates that Defendants knew during the Class Period that any of these "LTSA issues" were unresolvable or a "win" was objectively unachievable. In fact, as Defendants pointed out in the Motion, despite Plaintiff's conclusory mantra that "sales estimates were already being negatively influenced by LTSA amendments," (¶¶ 112, 122, 131, 136), Plaintiff still cannot point to any allegations about specific LTSA amendments or their impact on pricing, quantity, delivery times, or anything else. (Mot. 14:26-27.)

Instead, at most, the various meeting materials indicate management was attempting to implement LTSAs in an evolving market with shifting demands. For example, the Board memo discussing how to curb LTSA "decommits" (Opp. 13:24) shows that onsemi was taking steps to reduce that risk—and Plaintiff fails to allege facts showing Defendants failed to reduce those risks, or knew that their efforts would fail. That Defendants received ERM reports listing "top tier risks" with LTSAs (Opp. 14:11) only raises an inference that Defendants were doing their jobs to prioritize and address issues efficiently.

**Role Negotiating LTSAs.** Plaintiff also re-argues that the Court can infer scienter based on Defendants' roles in negotiating and signing LTSAs. (Opp. 15-16.) But the Court held that "being involved in negotiating LTSAs ... provides no basis to infer [Defendants]

9

knew [their] statements were false or misleading." (Order 27:9-11); (Mot. 15:2-3).[1] "Without more, the Court would have to assume [LTSAs] were not operating according to how El-Khoury understood them." (Order 19:22-23.) Plaintiff has not added "more."

**CW1.** Plaintiff's CW allegations are unchanged. (*Compare* ¶¶ 27, 87-94, 177-80, 191-93 to SAC ¶¶ 20, 65-74, 105-08, 119-21; *see also* ECF 64-1 ("Redline") 13, 42-44, 101-02, 108.) Scienter cannot be inferred from witnesses who "lack first hand knowledge regarding what the individual defendants knew or did not know." *Police Ret. Sys. of St. Louis v. Intuitive Surgical Inc.*, 59 F.3d 1051, 1063 (9th Cir. 2014); (Mot. 15:26-28).

**Receipt Of Reports.** Defendants' alleged receipt of KPIs and reports (Opp. 15:17-20) is not enough. "Negative characterizations of reports relied on by insiders, without specific reference to the contents of those reports, are insufficient to meet the heightened pleading requirements of the PSLRA." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020). Even when contents of reports are referenced, they must show "specific information conveyed to management and related to the fraud." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008). The TAC fails to do this.

**Responding To Analysts.** The Opposition points out that Defendants "discussed and answered analysts' questions about LTSAs." (Opp. 16:6-7.) For good reason, these "generalized allegations" provide no factual basis to infer anything about Defendants' mental state. *Prodanova*, 993 F.3d at 1109 (9th Cir. 2021). That is why the law rejects conflating speaking with scienter: "if the mere decision to speak on a topic were indicative of scienter, there would be no distinction between the element of scienter and the requirement to plead a false statement." *Joyce v. Amazon.com, Inc.*, 2023 WL 8370101, at *13, *14 (W.D. Wash. Dec. 4, 2023) (citing *Prodanova*).

**Core-Operations Inference.** Plaintiff's attempt to re-raise the core-operations inference fails. (Mot. 15.) The Opposition appropriately concedes that the Court already found this theory inapplicable. (Opp. 16:15). This remains true even accepting Plaintiff's

---

[1] *See also* Order 20 ("Involvement in negotiating the LTSAs … does not provide a basis to infer that El-Khoury intentionally or was deliberately reckless in touting the predictability that the LTSAs provided Onsemi.")

10

alarmist allegations about "Defendants' palpable concern over revenue 'non-linearity'" and that "LTSAs represented 77% of [o]nsemi's 2023 revenue." (Opp. 16:18-25.) The Ninth Circuit does not credit allegations that are "high on alarming adjectives" but "short on the facts." *Endologix*, 962 F.3d at 416. Regardless of the LTSAs importance or whether they kept Defendants "awake at night" (Opp. 16:21) (yes, running a public company is stressful), Plaintiff has still failed to show that it would be "obvious to corporate management that the possibility of failing to recognize projected revenues for a product during a quarter or fiscal year would render a statement that renegotiations of LTSAs ensure a 'win-win' objectively false." (Order 32:10-13.)

**Alleged Post-Class Period Admissions.** Defendants' post-Class Period statements still do not raise an inference of scienter and are nothing like the "'I knew it all along' type of admission" in *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *10 (N.D. Cal. Nov. 4, 2020) (Opp. 14:19-22). Plaintiff accuses Defendants of introducing a "fact dispute" about obtaining a "win" after the $200 million announcement. (Opp. 14:24-15:7.) This ignores that this Court already rejected Plaintiff's contention that a $200 million adjustment shows Defendants "somehow knew that some renegotiations would not result in a 'win-win.'" (Order 27:20-28:1); (Mot. 14:5-6). In fact, Plaintiff cites the *exact same* quote in the TAC, (*Compare* ¶ 159 *with* SAC ¶ 98); (*see also* Redline at 93-94) and tries to argue that Defendants' post-Class Period adjustments to "derisk" onsemi's 2024 revenue forecasts somehow raise an inference of scienter during the Class Period. This irrelevant allegation changes nothing because it does not relate to what Defendants knew when the challenged statements were made. Plaintiff has simply copied and pasted his scienter argument that Defendants would receive a call 6 to 9 months in advance of softening demand. (Opp. 15); (*Compare* ¶¶ 206-212 *with* SAC ¶¶ 138-144); (*see also* Redline at 114-15.) The Court also rejected this argument because it "conflat[es] projected revenues and whether renegotiations achieve a 'win-win.'" (Order 32:8-10.) That holding still applies.

## V.    CONCLUSION

For all of these reasons, the Court should grant Defendants' motions.

RESPECTFULLY SUBMITTED this 10th day of December, 2025.

OSBORN MALEDON, P.A.


By  s/ David B. Rosenbaum
   David B. Rosenbaum
   Joseph N. Roth
   Allie Karpurk
   2929 North Central Avenue, Suite 2000
   Phoenix, Arizona 85012

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
   Mark R.S. Foster (*pro hac vice*)
   525 University Avenue
   Palo Alto, California 94301

*Attorneys for Defendants*

12